1  Stephanie Van Marter
2  Acting United States Attorney
   Eastern District of Washington
3  Lisa C. Cartier Giroux
4  Assistant United States Attorney
   Post Office Box 1494
5  Spokane, WA 99210-1494
6  Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | 2:25-CR-00113-RLP-3 |
|---|---|
| Plaintiff, | |
| vs. | United States' Supplement to Motion for Detention (ECF No. 55) |
| MIKKI PIKE HATFIELD, | |
| Defendant. | |

Plaintiff, United States of America, by and through Stephanie Van Marter, Acting United States Attorney for the Eastern District of Washington, and Lisa C. Cartier Giroux, Assistant United States Attorney for the Eastern District of Washington, submits this Supplement to the United States' Motion for Detention (ECF No. 55) in advance of the hearing currently scheduled for 10:00 am on July 17, 2025.

I. Background

On July 9, 2025, Defendant and eight of his co-conspirators were indicted by a federal grand jury sitting in the Eastern District of Washington. ECF No. 1. Defendant was charged in the indictment with *Conspiracy to Impede or Injury Officers*, in violation of 18 U.S.C. § 372. Defendant was also charged with *Assault*

United States' Supplement to Motion for Detention – 1

*on a Federal Officer and Employee and Person Assisting* (physical contact/intent to cause another felony), in violation of 18 U.S.C. § 111(a)(1) and (b). The Defendant was arraigned on the indictment on July 15, 2025. *See* ECF No 69. The United States filed a motion seeking detention, arguing that Defendant was both a flight risk and a danger, and invoked the right to seek detention pursuant to both 18 U.S.C. § 3142(f)(1) and (2). *See* ECF No. 55. Pretrial Services recommended that Defendant be detained as both a flight risk and danger. *See* ECF Nos. 60, 113. The Defendant requested a detention hearing which was set by the Magistrate Judge for July 18, 2025. *See* ECF No. 94.

The United States continues to oppose release.

## II.     Argument

The United States is entitled to a request that a defendant be detained in a case that involves "any felony that is not otherwise a crime of violence that involves … the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon …" 18 U.S.C. § 3142(f)(1)(E). The United States is similarly entitled to request detention in a case that involves "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror". 18 U.S.C. § 3142(f)(2)(B). A detention hearing is appropriate under 18 U.S.C. § 3142(f) if the United States presents "some evidence" of one of the enumerated factors. While opinions analyzing § 3142(f)(2) have generally applied a preponderance of the evidence standard, *see, e.g., United States v. Fanyo-Patchou*, 426 F. Supp. 3d 779 (W.D. Wash. 2019), neither Ninth Circuit precedent nor the statute compel this result. Holding the United States to a preponderance of the evidence standard to demonstrate both a "serious risk of flight" under § 3142(f)(2) and whether "no condition or combination of conditions will reasonably assure the appearance of the person as required" under § 3142(e) collapses the

United States' Supplement to Motion for Detention – 2

analysis into one – if the United States can demonstrate that a defendant poses a "serious risk of flight" by a preponderance of the evidence, the Government necessarily has demonstrated that no conditions will reasonably assure the defendant's appearance by the same standard. As such an outcome would render the distinction between § 3142(f)(2) and § 3142(e) meaningless, it follows that a lower evidentiary standard should apply to the threshold question of whether a detention hearing is appropriate under § 3142(f)(2), especially in a case where the United States is also requesting detention under the prong that a defendant presents a danger to the community, which must be proved by a lower standard of clear and convincing evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1406-1407 (9th Cir. 1985).

Once the United States has demonstrated it is entitled to a detention hearing, the specific factors a court considers in determining whether conditions exist that will reasonably assure the appearance of a defendant and the safety of the community pending trial are set forth in 18 U.S.C. § 3142(g). Those factors include:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

United States' Supplement to Motion for Detention – 3

sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g).

The second factor—the weight of the evidence against the defendant—is the least important factor, considering the risk of assessing guilt at the pre-trial stages of the prosecution. *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir. 1991).

Here, one of the charged offenses alleges the use of a dangerous weapon. The United States is thus entitled to seek detention pursuant to 18 U.S.C. § 3142(f)(1)(E).

The underlying conduct for the charged offenses in this case also involves the intimidation and obstruction government officials. Defendant's conduct here demonstrates that there is a serious risk that Defendant may attempt to further obstruct justice in this matter. Therefore, the United States is also entitled to seek detention pursuant to 18 U.S.C. § 3142(f)(2)(B).

A. <u>Nature and circumstances of the charged offenses</u>

The Court may consider the possible punishment and the incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, the nature and circumstances of the offense favor detention as the possible punishment provides an incentive to flee. Defendant, as did other co-conspirators, also made efforts to conceal his identity in the underlying offense by wearing large goggles to avoid prosecution. The nature and circumstances of the offense weigh in favor of detention.

B. <u>Weight of the evidence</u>

While the least important factor to consider, the case against the Defendant is strong as much of the activity was captured on video and audio recordings, as well as documented through social media.

United States' Supplement to Motion for Detention – 4

Briefly, in sum, the evidence shows that on June 11, 2025, between approximately 1:00 PM and 2:00 PM, multiple CO-CONSPIRATORS[1] surrounded a white transport vehicle that was being used by U.S. Immigration and Customs Enforcement (ICE) and Homeland Security Investigations (HSI) for transport of detainees to their hearings in front of an immigration judge in Tacoma, WA. The transport vehicle was parked on the north side of the HSI Field Office located at 411 W Cataldo Avenue, Spokane Washington. An individual who identified themself to local news reporters as "Benjamin Stuckart" ("STUCKART") sat aside the white transport vehicle with CO-CONSPIRATORS, physically blocking entry into the vehicle to prevent HSI and ICE from placing detainees into the vehicle for transport.

Federal Bureau of Investigation ("FBI") Special Agents reviewed several local news articles from KHQ and KREM 2 where STUCKART identified himself and stated his express intent to impede federal law enforcement from leaving the federal facility with the detainees.

On June 12, 2025, FBI Special Agents interviewed Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Deportation Officer (DO) who was on site on June 11, 2025. The DO reported that on June 11, 2025, at approximately 12:15 PM, he was letting an individual out of the HSI facility

---

[1] The United States acknowledges that there were protestors present who were lawfully exercising their First Amendment rights. The reference to CO-CONSPIRATORS does not include those protestors; it applies only to those who were engaged in actions that constitute violations of federal law.

United States' Supplement to Motion for Detention – 5

when he identified two adult males for whom there were active arrest warrants[2][3]. The DO referred to the two males he observed on June 11th as "Cesar" and "Joswar". "Cesar" and "Joswar" approached the entrance of the building with an individual the DO identified as STUCKART and two other unknown individuals. "Cesar" and "Joswar" were arrested pursuant to the warrant when they were brought into the facility. The DO reported that he informed STUCKART that "Cesar" and "Joswar" would see an immigration judge for their hearings in Tacoma, Washington.

Based upon FBI's investigation and information from other law enforcement officers, after "Cesar" and "Joswar" were taken into custody, STUCKART disseminated a call on social media for others to come to the federal facility to stop federal officers from leaving the federal facility with "Cesar" and "Joswar". Following STUCKART's Facebook post at 12:52 PM, individuals began to arrive at the facility. Defendant Mikki Pike HATFIELD ("HATFIELD") was identified as one of the individuals who appeared to respond to STUCKART's call. Several acts committed by HATFIELD were captured on bodycamera video, and by media video, as well as drone video. HATFIELD is seen blocking the white transport bus and the

---

[2] There has been widespread inaccurate reporting regarding the legal immigration status of "Cesar" and "Joswar". According to immigration authorities, both "Cesar" and "Joswar" entered the United States unlawfully without documents. Once unlawfully present in the United States, they each made a claim for asylum. With few exceptions, the prior administration paroled similarly situated individuals and assigned hearing dates, sometimes years in the future. Such was the case with "Cesar" and "Joswar". Warrants were issued to bring them into custody after the current administration ended parole in such cases. "Cesar" and "Joswar" were then taken into custody to be transported to Tacoma, WA to have their hearings on any and all claims in front of an immigration judge.

[3] Homeland Security Investigations (HSI) personnel have advised that records reveal that "Cesar's" and "Joswar's" Employment Authorization Documents (EADs) had been cancelled on May 29, 2025. Further, the Department of Homeland Security (DHS) had publicly announced in March 2025 that the prior administration's parole program allowing the temporary parole of undocumented persons such as "Cesar" and "Joswar" in the United States was terminated, and those whose parole had not already expired by April 24, 2025, would terminate on that date (April 24, 2025) unless the Secretary of Homeland Security made an individual determination to the contrary.

United States' Supplement to Motion for Detention – 6

red transport van, and at the southern secure vehicle gate physically blocking the convoy's exit. HSI building surveillance video captured HATFIELD placing items which appear to be sand/cement bags, and other objects in front of the HSI secured parking facility's north pedestrian egress to block the exit. HATFIELD briefly met with, and appeared to coordinate with, an individual later identified as indicted co-conspirator, Collin James MUNCEY ("MUNCEY"), who similarly placed objects around the secured parking area's egress points to block them. HATFIELD was later observed on a bicycle after the dispersal order was given. HATFIELD was depicted in pictures and video around incendiary crowd control devices. A media video shows HATFIELD picking up some type of incendiary device and throwing it in the direction of Spokane Police Department and/or Spokane County Sheriff's Office deputies. In a media article about the 6/11 protests, a section was filled with quotes from individuals, titled, "Why people were willing to be arrested." The following quote was included which investigators were able to link to HATFIELD: "I like my ICE crushed and I'm here to show white men what it means to do the bare fucking minimum." – Mickey Pike. At the time of his arrest, the clothing items he wore and the bicycle, helmet, and googles he used on June 11, 2025, all captured on video, were recovered[4].

    Thus, this factor weighs in favor of detention.

C. <u>History and characteristics of the defendant</u>

    The history and characteristics of the defendant weigh in favor of finding the Defendant is a risk of flight and a danger to the community. While Defendant has minimal criminal history, the Pretrial Services Report reveals a lack of familial, residential, economic, and employment ties to the community. Additionally, there appears to be a substance abuse history.

---

[4] The United States has filed an unscannable Exhibit A containing a video and photos in support of this factor.

United States' Supplement to Motion for Detention – 7

This factor weighs in favor of detention.

D. <u>The nature and seriousness of the danger to any person or the community that would be posed by the person's release</u>

The Defendant represents a danger to the community. Defendant engaged in deliberate actions to intimidate law enforcement, threaten and coerce them, and the use of force. Defendant's conduct was relentless and occurred over hours -- almost 9 hours. His open declaration about how he "likes his ICE crushed", an obvious reference to the acronym for Immigration, Customs, and Enforcement, demonstrates a willingness to commit acts of violence, and a lack of care for the consequences of his actions.

This factor weighs in favor of detention.

## II.   Conclusion

For the reasons set forth herein, the United States submits that the Defendant's motion should be denied and the Defendant remain detained, as there are no conditions or combination of conditions that can be fashioned to assure his appearance or the safety of the community.

Dated: July 18, 2025.

Stephanie Van Marter
Acting United States Attorney

*s/ Lisa C. Cartier Giroux*
Lisa C. Cartier Giroux
Assistant United States Attorney

United States' Supplement to Motion for Detention – 8

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David Partovi

*s/ Lisa C. Cartier Giroux*
Lisa C. Cartier Giroux
Assistant United States Attorney

United States' Supplement to Motion for Detention – 9