S. Peter Serrano
United States Attorney
Eastern District of Washington
Lisa C. Cartier Giroux
Rebecca R. Perez
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 0 9 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>ERIN NICOLE LANG,<br><br>                    Defendant. | Case No.: 2:25-CR-113-RLP-4<br><br>Plea Agreement |

Plaintiff United States of America, by and through S. Peter Serrano, United States Attorney the Eastern District of Washington, and Lisa C. Cartier Giroux and Rebecca R. Perez, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Erin Nicole Lang ("Defendant"), both individually and by and through Defendant's counsel, Sandy D. Baggett, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on July 9, 2025, which charges Defendant with *Conspiracy to Impede or Injure Officers*, in violation of 18 U.S.C. § 372, a Class D felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

a.    a term of imprisonment of up to 6 years;

b.    a term of supervised release of up to 3 years;

c.    a fine of up to $250,000;

d.    restitution; and

e.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C or D felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b.  the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.  the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.  the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.  the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.  the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.  Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.  pleading guilty in this case may have immigration consequences;

b.  a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.  removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.  no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

b.    the right to see, hear and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Admissibility of Facts and Prior Statements</u>

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

PLEA AGREEMENT - 4

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court.

7.    Elements of the Offense

The United States and Defendant agree that in order to convict Defendant of Conspiracy to Impede or Injure Officers, in violation of 18 U.S.C. § 372, the United States would have to prove the following beyond a reasonable doubt.

    a.    *First*, on or about June 11, 2025, in the Eastern District of Washington, there was an agreement between two or more persons to commit the crime of obstructing or impeding officers of the United States;

    b.    *Second*, Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

    c.    *Third*, the object of the conspiracy was to prevent by force, intimidation, or threat an officer of the United States from discharging their official duties, or to injure an officer of the United States in his person or property on account of his lawful discharge of his official duties or while engaged in the lawful discharge therefore, or to injure the property of an officer of the United States so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

8.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the Defendant agrees that the United States could prove the facts set forth below beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

PLEA AGREEMENT - 5

1   The United States and Defendant agree that this statement of facts does not
2   preclude either party from presenting and arguing, for sentencing purposes,
3   additional facts that are relevant to the Sentencing Guidelines computation or
4   sentencing.

5       On June 11, 2025, in the Eastern District of Washington, Co-Conspirator
6   Benjamin Stuckart ("STUCKART") arrived at the Homeland Security
7   Investigations (HSI) Field Office located at 411 W Cataldo Ave, Spokane
8   Washington along with two adult males who had immigration appointments for
9   which they had received notification through their "myUSCIS" accounts.

10      The two adult males had been provided notice that their Employment
11  Authorization Documents had been cancelled on May 29, 2025. The notices stated:
12  "DHS records indicate that your parole has expired or been terminated. In response
13  to the Notice of Intent to Revoke Parole-Based Employment Authorization, you
14  did not submit any evidence showing that your parole was renewed or extended."

15      Because their parole had not been renewed or extended, the two adult males
16  had active arrest warrants and were taken into custody by Immigration and
17  Customs Enforcement officers when they arrived at the HSI Field Office. Officers
18  advised STUCKART that the two adult males would be transported that same day
19  from Spokane to Tacoma, Washington for hearings before an immigration judge.

20      After the two adult males were taken into custody on the warrants,
21  STUCKART disseminated a communication on social media platform Facebook at
22  approximately 12:52 pm requesting that others come to the HSI Field Office to
23  help STUCKART stop federal officers from leaving the federal facility and
24  transporting the two adult males. A screenshot of STUCKART's post is below:

25
26
27
28

PLEA AGREEMENT - 6

1
2
3
4
5
6
7
8

**Ben's Post**                                                          ✕

**Ben Stuckart**                                                      •••
June 11 at 12:52 PM · ⊘

ACTION ALERT: Three weeks ago I became the legal guardian to a young man from Venezuela seeking asylum. He has turned in all paperwork and has a future court hearing. I went with him to ICE check in today. They detained him and are shipping him to Tacoma.

I am asking that if you care at all about these illegal detainers you meet me at 411 West Cataldo by 2pm. I am going to sit in front of the bus. Feel free to join me.......

The Latino community needs the rest of our community now. Not tonight, not Saturday but right now!!!!

👋💙😮 748                                        237 comments  300 shares

👍 Like                                                    ↗ Share

Most relevant ▾

9    Following STUCKART's Facebook post at 12:52 pm, Defendant and Co-

10  Conspirators, including the charged Co-Defendants, began to arrive at the facility.

11  Co-Conspirator Justice FORRAL ("FORRAL") parked his red Toyota Yaris with

12  Oregon plates in front of a white federal transport bus to physically block its path

13  from leaving the facility. Defendant and FORRAL released the air from two of the

14  tires of the white bus to flatten them to render the bus inoperable. Another

15  unindicted Co-Conspirator placed white paint across the windshield of the bus to

16  prevent a driver from being able to safely operate it. Co-Conspirators STUCKART

17  and Jac Dalitso ARCHER ("ARCHER"), and other unindicted Co-Conspirators

18  physically blocked the pathway and door to the white transport bus to prevent entry

19  with the detainees, disregarding orders to disperse made by federal officers. While

20  at the bus, using a megaphone, ARCHER directed the Co-Conspirators to come

21  together to discuss further tactics to impede the officers, saying, "… [F]or folks

22  who are willing to risk arrest, we might want to do a huddle, because we want to

23  know how many of us there are, so we can keep track of each other, and just do a

24  quick debrief to make sure that we are all prepared the way we need to be."

25    Federal officers soon determined that the white transport bus could not be

26  used to transport the detainees because the federal officers could not enter into the

27  bus and Defendant and the Co-Conspirators had rendered it unsafe to drive.

28

PLEA AGREEMENT - 7

1    Because the HSI Field Office did not have the facilities to house detainees
2    long term, federal officers needed to devise a plan to transport the detainees to
3    Tacoma that same day. They developed a plan to exit with the detainees through
4    the secure parking lot and vehicle gate located on the south end of the premises.
5    Federal officers prepared to exit in a convoy of approximately three vehicles;
6    however, as soon as the gate was opened, Co-Conspirators ARCHER, Mikki Pike
7    HATFIELD ("HATFIELD"), Collin James MUNCEY ("MUNCEY"), Bobbi Lee
8    SILVA ("SILVA"), Bajun Dhunjisha MAVALWALLA, II ("MAVALWALLA"),
9    and other unindicted Co-Conspirators physically blocked the exit by standing in
10   front of the driveway at the gate and linking arms, thereby preventing the convoy
11   from leaving. ARCHER is captured on video again instructing the Co-
12   Conspirators, "If you're risking arrest, this is what we talked about, linking arms."
13   ARCHER then linked arms with Co-Conspirators to block the exit gate. Even after
14   being physically moved back by federal officers in an effort to allow the vehicles
15   to leave the facility, the Co-Conspirators returned to the driveway area to resume
16   blocking the federal vehicles from exiting. SILVA was captured on video striking
17   an HSI officer from behind as he was attempting to clear the pathway for the
18   transport vehicles to safely exit the facility. MAVALWALLA was also captured
19   on video just inside of the secured parking on HSI property shoving into one of the
20   federal officers with his body. Despite repeated lawful orders to give access for the
21   convoy to proceed and to remove themselves from the facility driveway, Co-
22   Conspirators did not move back but continued to scream at the federal officers and
23   physically block egress from the facility. Being outnumbered by the Co-
24   Conspirators and concerned over their safety because of the aggression of the
25   crowd, as well as the safety of the detainees, and not wanting to drive through the
26   crowd and cause physical harm to any civilians, the federal officers retreated back
27   inside the facility.
28

1    FORRAL, MUNCEY, HATFIELD, and other unindicted Co-Conspirators

2   also worked to block exits of the federal facility to trap federal officers and

3   detainees inside the facility by piling objects in front of exits and gates, including

4   signs, Lime scooters, sand/cement bags, trash cans, and benches.

5    At approximately 2:48 pm STUCKART began contacting the City of

6   Spokane Mayor Lisa Brown. STUCKART stated in a subsequent Facebook post on

7   June 13, 2025, that he had texted Mayor Brown requesting that police not be sent:

8

9   

20    At approximately 3:14 pm on June 11, 2025, ARCHER shared on their

21   Facebook page STUCKART's "ACTION ALERT". ARCHER re-posted and

22   commented on the post calling for more people to come to the HSI Field Office to

23   prevent federal officers from transporting the detainees and to force federal officers

24   to release the detainees. A screenshot of ARCHER's post is below:

At approximately 6:00 pm, Border Patrol Agents (BPA) devised an alternate plan to allow federal agents to safely transport the detainees to Tacoma for their hearings. A red transport van was driven in a vehicle convoy to the southeast side of the facility. Spokane Police Department ("SPD") marked patrol vehicles parked in front and behind the red transport van to prevent the Co-Conspirators from again placing vehicles in the van's exit path. This time, SPD tried to keep the Co-Conspirators separated from the federal officers and the detainees. The federal officers and the detainees, however, were not able to safely access the public space to get to their transport van. Co-Conspirators placed objects, to include Lime scooters, in front of the marked patrol vehicles to block the exit path of the red van. The red van was also quickly surrounded by Defendant and STUCKART, HATFIELD, SILVA, Thalia Marie RAMIREZ ("RAMIREZ") and other unindicted Co-Conspirators, who used their bodies to physically block access to the van and its movement. Co-Conspirators also placed themselves between the

PLEA AGREEMENT - 10

1  SPD vehicles to prevent the red van from being able to pull away without the

2  possibility of injury, in addition to surrounding the red van and linking arms

3  around the van. Co-Conspirators began to become increasingly aggressive in their

4  physical resistance to law enforcement despite law enforcement's repeated

5  warnings that force could be used if the crowd did not comply with commands. As

6  a result of the Co-Conspirators actions, the federal agents inside the van were

7  unable to exit the vehicle, and federal officers were also unable to enter the van

8  with the detainees. Further, Co-Conspirator RAMIREZ, armed with a boxcutter,

9  slashed the tires of the red van, rendering it unsafe to drive.

10      The Spokane County Sheriff's Office (SCSO) had indicated a willingness to

11 respond and intervene to disperse the Co-Conspirators when the first calls came

12 from the federal facility requesting aid after STUCKART's original Facebook

13 callout. At approximately 6:30 pm, SCSO deputies were ordered by the Sheriff to

14 respond to the scene to assist the federal officers, civilian employees, and detainees

15 still inside the facility. After approximately 30 minutes of dispersal orders and

16 notifications to the crowd, SPD command approved the use of smoke to control the

17 hundreds of individuals in the crowd who had by then joined the original Co-

18 Conspirators blocking the facility and the surrounding roadways. After the smoke

19 cannisters were deployed, multiple individuals, including HATFIELD, who was

20 captured on video, picked up the smoke cannisters and threw them back at SCSO

21 deputies and SPD officers. At least one canister hit an officer, and another hit a

22 patrol vehicle.

23      At approximately 9:00 pm, the Spokane SWAT team arrived, and those

24 SWAT officers and SCSO Deputies were finally able to escort agents, detainees,

25 and civilian employees safely from the federal facility. The detainees were

26 transported for their immigration hearings in Tacoma by federal agents at that time.

27      Defendant stipulates and agrees that Defendant entered into a conspiracy

28 with the charged Co-Defendants, as well as other unindicted Co-Conspirators, to

PLEA AGREEMENT - 11

obstruct and impede officers of the United States. Defendant further stipulates and agrees that the object of the conspiracy was to prevent by force, intimidation, or threat an officer of the United States from discharging their official duties, and to injure an officer of the United States in his person or property on account of his lawful discharge of his official duties or while engaged in the lawful discharge therefore, and to injure the property of an officer of the United States so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

9. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

Specifically, the United States agrees not to bring additional felony charges against Defendant for *Depredation of Property of the United States in an Amount Exceeding $1000*, in violation of 18 U.S.C. §§ 1361 and 2.

10. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a. Base Offense Level

The United States and Defendant agree that the base offense level is 10. U.S.S.G. §§ 2X1.1, 2A2.4.

b. Special Offense Characteristics

The United States and Defendant agree that Defendant's base offense level is increased by 3 levels because the offense involved physical contact. U.S.S.G. § 2A2.4(b)(1)(A).

PLEA AGREEMENT - 12

    c.    <u>Zero Point Offender</u>

Defendant may be eligible for a reduction pursuant to U.S.S.G. § 4C1.1. The United States and Defendant are free to argue for or against the application of U.S.S.G. § 4C1.1 at sentencing.

    d.    <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    e.    <u>Agreements Regarding Representations to the Court</u>

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant,

PLEA AGREEMENT - 13

on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

  i.   The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

  ii.   The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

  iii.   The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

  iv.   The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

  v.   The United States and Defendant may each respond to any arguments presented by the other;

  vi.   In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis,

PLEA AGREEMENT - 14

including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

f. <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

PLEA AGREEMENT - 15

1

    g.   <u>Criminal History</u>

2    The United States and Defendant have no agreement and make no

3 representations about Defendant's criminal history category, which will be

4 determined by the Court after the United States Probation Office prepares and

5 discloses a Presentence Investigative Report.

6    11.   <u>Incarceration</u>

7    At the time of Defendant's original sentencing in the District Court, the

8 United States agrees to make a sentencing recommendation to the Court that is

9 consistent with this Plea Agreement.  The United States' agreement to make such a

10 recommendation is limited exclusively to the time of Defendant's original

11 sentencing in the District Court.  The United States' agreement to make such a

12 recommendation does not prohibit or limit in any way the United States' ability to

13 argue for or against any future sentencing modification that takes place after

14 Defendant's original sentencing in the District Court, whether that modification

15 consists of an amendment to the Guidelines, a change to a statutory minimum or

16 maximum sentence, any form of compassionate release, any violation of

17 Supervised Release, or any other modification that is known or unknown to the

18 parties at the time of Defendant's original criminal sentencing.  In this Plea

19 Agreement, the United States makes no promises or representations about what

20 positions the United States will take or recommendations the United States will

21 make in any proceeding that occurs after Defendant's original sentencing in the

22 District Court.

23    The United States and Defendant may each recommend any legal sentence.

24    12.   <u>Supervised Release</u>

25    The United States and Defendant each agree to recommend 3 years of

26 supervised release.  Defendant agrees that the Court's decision regarding the

27 conditions of Defendant's Supervised Release is final and non-appealable; that is,

28 even if Defendant is unhappy with the conditions of Supervised Release ordered by

PLEA AGREEMENT - 16

the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and any treatment program as ordered by the Court

Defendant shall complete mental health evaluations and treatment if directed by the Probation Officer; and any treatment as ordered by the Court. Defendant shall take any non-psychotrophic medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13.   <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14.    <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15.    <u>Restitution</u>

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664. Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a.    <u>Restitution Amount and Interest</u>

The United States and Defendant stipulate and agree that the Court should order restitution in an amount of $10,873.39, and that interest on this restitution amount, if any, should be waived. The United States and Defendant stipulate and agree that this restitution amount should be joint and several with any restitution ordered for any other Defendants in this case.

b.    <u>Payments</u>

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c.    <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or

PLEA AGREEMENT - 18

all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets.  18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

        d.   <u>Obligations, Authorizations, and Notifications</u>

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office.  Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

PLEA AGREEMENT - 19

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(1)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

16.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

//

PLEA AGREEMENT - 20

17.    <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds, unless the Court exceeds the statutory maximum.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.   <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

        a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

        b.    The United States may prosecute Defendant on all available charges;

        c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

        d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.   <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant. This Plea Agreement, accompanied by the concurrently filed Deferred Sentencing

PLEA AGREEMENT - 22

Agreement constitutes the entire agreement between the parties, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

S. Peter Serrano
United States Attorney

_____          12/9/2025
Lisa C. Cartier Giroux                    Date
Assistant United States Attorney

_____          11/9/25
Rebecca R. Perez                          Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained

PLEA AGREEMENT - 23

in this Plea Agreement.  No one has threatened or forced me in any way to enter into this Plea Agreement.  I agree to plead guilty because I am guilty.

_____          12-9-25
Erin Nicole Lang                                          Date
Defendant


I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          12/9/25
Sandy D. Baggett                                        Date
Attorney for Defendant

PLEA AGREEMENT - 24