Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Jac Dalitso Archer*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAC DALITSO ARCHER, *et al.*,<br><br>Defendants. | No. 2:25-CR-00113-RLP-9<br><br>**DEFENDANT ARCHER'S MOTION TO DISMISS INDICTMENT UNDER THE FIRST AMENDMENT**<br><br><u>**Motion Hearing:**</u><br>April 14, 2026 at 2:30 pm<br>Spokane, WA |

COMES NOW Defendant Jac Archer, by and through their counsel of record, and hereby submits the following Motion to Dismiss under the First Amendment of the Constitution of the United States.

## I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

The right to condemn and confront our government without fear of punishment is the foundation of the First Amendment. The unprecedented and novel manner in which the Government seeks to apply 18 U.S.C. § 372 in this

Defendant Archer's Motion to
Dismiss Indictment—Page 1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1    case runs afoul of this bedrock principle. The Indictment violates the First

2    Amendment by wrongfully (1) treating a constitutionally protected protest as a

3    conspiracy and (2) characterizing nonviolent civil disobedience as "force,

4    intimidation, or threat." These issues of law—both of which provide

5    independent grounds for dismissal—do not turn on factual disputes and are ripe

6    for determination as a matter of law.

7        On the first point, the Supreme Court has established that individuals

8    cannot be held liable for the unlawful acts of others merely because they

9    associated with a group or participated in the same protest. Instead, a conspiracy

10   requires both an agreement to commit unlawful acts and specific intent to further

11   those unlawful acts. The Indictment alleges only that the named Defendants

12   "answered the call" to attend an impromptu protest and provides no facts, or

13   even allegations, to suggest that attendees coordinated or had specific intent to

14   commit unlawful acts. An Indictment based on this untenable ground violates

15   the First Amendment by infringing on the rights of association and protest.

16       Second, the unlawful acts alleged—blocking exits and vandalism of

17   vehicles—do not, as a matter of law, amount to "force, intimidation, or threat"

18   under 18 U.S.C. § 372. These actions were directed at a bus, not human beings.

19   Instead of prosecuting individuals for property damage, the Government

20   characterizes nonviolent civil disobedience as a violent conspiracy. This is an

21   absurd and unconstitutional attempt to punish political opponents. It is essential

22   that this case be dismissed to prevent further chilling of free speech.

Defendant Archer's Motion to
Dismiss Indictment—Page 2

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## II. <u>FACTUAL BACKGROUND</u>

On June 11, 2025, U.S. Immigration and Customs Enforcement (ICE) illegally abducted Joswar Rodriguez Torres and his friend, Cesar Alvarez Perez. The illegality of this abduction is not a matter of opinion, but rather the holding of U.S. District Judge James Robart in the Western District of Washington, who granted Mr. Rodriquez Torres' Writ of Habeas Corpus after seven months in detention. *Rodriguez Torres v. Noem et al.,* 2:25-cv-02697, 2026 WL 234076 (W.D. Wash. Jan. 29, 2026).[1]

As set forth in Judge Robart's ruling, Mr. Rodriguez Torres is a legal immigrant who arrived under the Venezuelan Humanitarian Parole Program, which allows for immigrants facing persecution to legally live and work in the United States "under parole." *See Torres,* 2026 WL 234076, at *1. Rodriguez Torres sought entry in 2024, was granted his parole, and later filed an asylum claim with the Seattle Immigration Court. *Id.* He "diligently complied with all conditions ICE imposed upon him as a parolee." *Id.* When the two legal immigrants went to their routine check-in with ICE on June 11, 2025, they were summarily arrested and detained in violation of the Fifth Amendment's Due Process Clause and the Administrative Procedures Act. *Id.* at *1-4.

Former Spokane City Council President Ben Stuckart, one of the sponsors of the two illegally detained men, had no adequate and immediate legal remedy

---

[1] The ruling only applies to Mr. Rodriguez Torres because Mr. Alvarez Perez chose to self-deport rather than remain in detention for an indeterminate period.

Defendant Archer's Motion to Dismiss Indictment—Page 3

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

1   to stop ICE's illegal conduct and obtain the release of the two abductees, as

2   evidenced by the fact that it took seven months to release one of them, and the

3   other self-deported to escape ICE's illegal confinement. Stuckart's only remedy

4   lay in his First Amendment rights.

5   As alleged in the Indictment, Stuckart publicly posted on Facebook that he

6   was the legal guardian of a young asylum seeker who was illegally arrested at

7   his ICE check-in and called on "others to come and join him as he blocked a bus

8   designated to transport all of the federal detainees in the facility to Tacoma,

9   Washington for their immigration hearings." (ECF No. 1 at 3.) The social media

10  post states in full:



16  (Wagley Decl., Ex. A.) As is apparent by the face of the social media post,

17  Stuckart did not express an intent to use force, intimidation, or threats towards

18  any officers, but only to passively "sit in front of the bus." (*Id.*)

19  The Indictment alleges that Jac Archer and other co-conspirators "arrived

20  in response to the call" from Stuckart to sit in front of a bus. (ECF No. 1 at 3.)

21  This arrival "in response to the call" is the full extent to which the Indictment

Defendant Archer's Motion to
Dismiss Indictment—Page 4

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

alleges the Defendants interacted with each other. (*See id.* at 2-5.) There is not a single factual assertion in the Indictment to suggest that any of the defendants agreed upon any tactics, goals, or strategy. (*Id.*) Indeed, it is not alleged that they even spoke to each other. (*Id.*)

The Indictment states that Defendant Archer "posted on social media a call for others to come and join noting the intent was to 'risk arrest to block the exits to ICE.'" (ECF No. 1 at 5.)  This social media post states in full:



(Wagley Decl., Ex. B.) The Indictment conspicuously and misleading omits the clearly stated intention of the call to action, which was to "WAIT OUT ICE" so that ICE may choose to "FREE THIS MAN." (*Id.*) Although the post notes that "*some* contingents are choosing to risk arrest to block the exits to ICE," there is clearly no indication of any agreement or consensus regarding tactics. (*Id.*)

Defendant Archer's Motion to
Dismiss Indictment—Page 5

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

1    The Indictment alleges that Defendant Archer and others arrived on scene

2    and "blocked the pathway and door to the transport bus." (ECF No. 1 at 3.) The

3    Indictment further alleges that others parked a vehicle so as to block the bus,

4    released the air from the tires of the bus, and painted the windshield of the bus.

5    (*Id*.) There are no allegations or evidence that any of these actions alleged in the

6    Indictment were done pursuant to any agreement to commit these acts. (*See id.*

7    at 2-5.) All the listed actions are nonviolent and were directed at a bus, not at

8    any human beings, with the stated intention of waiting out ICE in the hopes that

9    ICE would choose to release the illegally detained men. (*Id*.)

10    According to the Indictment, "while federal officers attempted to exit the

11    federal facility through the secure parking lot and vehicle gate located on the

12    south end of the premises," Defendant Archer and others "physically blocked

13    the driveway of the federal facility and/or pushed against the officers, despite

14    orders to disperse and efforts to remove them from the property." (ECF No. 1 at

15    3-4.) This incident, in which ICE officers violently shoved protesters who had

16    their arms linked, is well documented and beyond dispute. (Wagley Decl., Ex.

17    C.) While it is true that Archer and others stood in front of the driveway and did

18    not disperse, there are no allegations or evidence that any of these protesters

19    used force, intimidation, or threats against the officers. Instead, they simply

20    attempted to remain in place while being shoved. (*See id*.)

21    The Indictment next alleges several actions by other named Defendants to

22    disable or block ICE transport vehicles. (*See* ECF No. 1 at 4-5.) These alleged

Defendant Archer's Motion to
Dismiss Indictment—Page 6

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1  actions do not constitute force, threat, or intimidation of people, and there are no

2  allegations or evidence that any of these actions were done pursuant to any

3  agreement to commit these acts. (*See id*.)

4  Finally, the Indictment alleges that "[f]ederal agents, civilian employees,

5  and the detainees were unable to leave the facility as the result of the actions" of

6  the nine Defendants "until approximately 9:00 PM, and only with the assistance

7  of the Spokane Police Department S.W.A.T. team." (ECF No. 1 at 5.) This claim

8  is belied by other allegations in the Indictment that federal officers did in fact

9  leave the facility and engaged in physical contact with protesters. (ECF No. 1 at

10  2-5; *see also* Wagley Decl., Ex. C.) This inconsistency aside, the Indictment

11  explicitly attempts to hold Defendants criminally responsible for the

12  community's response to the Government's illegal abductions; nine unarmed

13  protesters cannot prevent heavily armed federal agents from exiting a building.

14  The broader context of the present Indictment is relevant to this motion.

15  According to Reuters news service, on June 12, 2026, the day after this protest,

16  the U.S. Department of Justice ("DOJ") sent an email to all U.S. Attorney's

17  offices ordering them to prioritize criminal prosecution of protesters and to

18  make sure every case they bring gets publicized. (Wagley Decl., Ex. D.)

19  On July 7, 2026, after only five months in office, Acting U.S. Attorney for

20  the Eastern District of Washington Richard Barker abruptly resigned from the

21  DOJ, stating: "I am grateful that I never had to sign an indictment or file a brief

22  that I didn't believe in." (*Id*, Ex. E.) His resignation occurred only two days

Defendant Archer's Motion to
Dismiss Indictment—Page 7

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

1  before the filing of this Indictment on July 9, 2026, and relieved him from

2  having to sign it. (*See id*.)

3       On July 15, 2025, the U.S. Attorney's Office, as directed by the DOJ,

4  issued a press release publicizing the charges against Defendants. (*Id*., Ex. F.)

5       Since the filing of this Indictment, the Government has continued to

6  escalate its crackdown on those who protest its immigration enforcement tactics,

7  using both bullets and lawyers. In addition to the killing of Renee Good and

8  Alex Pretti in Minneapolis and countless other documented acts of violence

9  against protesters, this crackdown includes hundreds of arrests in cities across

10  the country on charges that have later been dismissed because government

11  agents who perpetrated senseless violence falsely claimed to be victims. (*See*

12  Wagley Decl., Ex. G.) The DOJ has also initiated an investigation of Minnesota

13  Governor Tim Walz and Minneapolis Mayor Jacob Frey for allegedly violating

14  18 U.S.C § 372 by speaking out against immigration enforcement tactics in their

15  communities. (*Id*., Ex. H.) The present Indictment thus fits squarely into the

16  Government's broad and concerted effort to stamp out all forms of opposition to

17  its actions through vindictive and baseless prosecutions, with no regard for First

18  Amendment rights.

19                          **III.  STANDARD OF REVIEW**

20       Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant

21  may move to dismiss an indictment if it "fail[s] to state an offense."

22  Additionally, dismissal of an indictment is appropriate when charges are based

Defendant Archer's Motion to
Dismiss Indictment—Page 8

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1    on "a statute that is unconstitutional on its face or as applied." *United States v.*
2    *Mayer*, 503 F.3d 740, 747 (9th Cir. 2007) (citing *United States v. Lopez*, 514
3    U.S. 549 (1995)). In considering a motion to dismiss, the Court must accept the
4    allegations in the indictment as true and "analyz[e] whether a cognizable offense
5    has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).
6    Although the Court is typically bound by the four corners of an indictment, "[a]
7    motion to dismiss an indictment can be determined before trial 'if it involves
8    questions of law rather than fact.'" *United States v. Castaneda-Nicolas*, 535 F.
9    Supp. 3d 1059, 1067 (E.D. Wash. 2021) (quoting *United States v. Shortt*
10   *Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)).

11        The Court may "make preliminary findings of fact necessary to decide the
12   pre-trial motion so long as the court's findings do not 'invade the province of the
13   ultimate finder of fact.'" *Castaneda-Nicolas*, 535 F. Supp. 3d at 1067 (quoting
14   *Shortt Accountancy Corp.*, 785 F.2d at 1452). The Court may consider
15   "uncontested allegations" and "may take judicial notice of matters of public
16   record" on a motion to dismiss an indictment. *United States v. Pitt-Des Moines,*
17   *Inc.*, 970 F. Supp. 1346, 1349 (N.D. Ill. 1997). In other words, the Court may
18   rule upon a motion to dismiss "if the 'trial of the facts surrounding the
19   commission of the alleged offense would be of no assistance in determining the
20   validity of the defense.'" *United States v. Caldera-Lazo*, 535 F. Supp. 3d 1037,
21   1047 (E.D. Wash. 2021) (quoting *Shortt Accountancy Corp.*, 785 F.2d at 1452).

22

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1

## IV. <u>POINTS & AUTHORITIES</u>

2

Defendant Archer is charged with one count of Conspiracy to Impede or

3

Injure Officers in violation of 18 U.S.C. § 372, which provides:

4

> If two or more persons . . . conspire to prevent, by force,
5
> intimidation, or threat, any person from accepting or holding any
> office, trust, or place of confidence under the United States, or from
6
> discharging any duties thereof, . . . each of such persons shall be
> fined under this title or imprisoned not more than six years, or both.

7

The Government is required to prove beyond a reasonable doubt: "(1) a

8

conspiracy existed, (2) the [defendant] voluntarily entered into the conspiracy,

9

and (3) the members of the conspiracy conspired to prevent by force,

10

intimidation or threat, an officer of the United States from discharging her [or

11

his] duties." *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010).

12

Section 372 "'was designed to protect Federal officers by providing for

13

Federal prosecution whenever they were injured because of or in the course of

14

their duties.'" *United States v. Rhodes*, 610 F. Supp. 3d 29, 51 (D.D.C. 2022)

15

(quoting *Conspiracy to Impede or Injure an Officer of the United States, 18

16

U.S.C. § 372*, 1 Op. O.L.C. 274, 276 (1977)). It "'was enacted by a Congress

17

acutely aware of the massive and frequently violent resistance in the southern

18

states to federal Reconstruction after the Civil War.'"  *Rhodes*, 610 F. Supp. 3d

19

at 51 (quoting *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977)).

20

"'An as-applied challenge contends that the law is unconstitutional as

21

applied to the litigant's particular speech activity, even though the law may be

22

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

capable of valid application to others.'" *United States v. Rogers*, 2024 WL 4145135, at \*4 (D. Mont. 2024) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

> Notwithstanding that political speech and religious exercise are among the activities most jealously guarded by the First Amendment, one is not immunized from prosecution for such speech-based offenses merely because one commits them through the medium of political speech or religious preaching. <u>Of course, **courts must be vigilant to insure that prosecutions are not improperly based on the mere expression of unpopular ideas**</u>. But if the evidence shows that the speeches crossed the line into criminal solicitation, procurement of criminal activity, or conspiracy to violate the laws, the prosecution is permissible.

*United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999) (emphasis added).

As explained fully below, Defendant Archer did not conspire to impede a federal officer by force, intimidation, or threat. Additionally, the application of 18 U.S.C. § 372 to Defendant Archer's peaceful protesting activities violates the First Amendment. Dismissal is constitutionally mandated.

**A. Peaceful Protesting is First Amendment Protected Freedom of Speech.**

"Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Of all constitutional rights, the freedoms of speech and of assembly are the most perishable, yet the most vital to the preservation of American democracy. *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017). Under the First Amendment:

> "[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v.*

Defendant Archer's Motion to
Dismiss Indictment—Page 11

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1   *Greenmoss Builders, Inc.,* 472 U.S. 749, 758–759, 105 S.Ct. 2939,
2   86 L.Ed.2d 593 (1985) (opinion of Powell, J.) (quoting *First Nat.*
    *Bank of Boston v. Bellotti,* 435 U.S. 765, 776, 98 S.Ct. 1407, 55
3   L.Ed.2d 707 (1978)). The First Amendment reflects "a profound
    national commitment to the principle that debate on public issues
4   should be uninhibited, robust, and wide-open." *New York Times Co.*
    *v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686
5   (1964). **That is because "speech concerning public affairs is**
    **more than self-expression; it is the essence of self-government."**
6   *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 13
    L.Ed.2d 125 (1964). Accordingly, "speech on public issues
7   occupies the highest rung of the hierarchy of First Amendment
    values, and is entitled to special protection." *Connick v. Myers,* 461
8   U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

9   *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (emphasis added).

10      The First Amendment applies to not only speech, but expressive conduct

11  and association. *See White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) ("The

12  right to expressive association includes the right to pursue, as a group,

13  discriminatory policies that are antithetical to the concept of equality for all

14  persons."). "Activities such as demonstrations, protest marches, and picketing

15  are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d

16  1363, 1371 (9th Cir. 1996). Protesting peaceably is clearly protected by the First

17  Amendment. *See, e.g., Black Lives Matter Seattle-King Cnty. v. City of Seattle,*

18  *Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1211 (W.D. Wash. 2020) ("The First

19  Amendment guarantees that all citizens have the right to hold and express their

20  political beliefs through peaceful protests."). The government may not deny

21  constitutional rights simply because of hostility to their assertion or exercise.

22  *Cox v. State of Louisiana*, 379 U.S. 536, 551 (1965).

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

The First Amendment covers "'vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Watts v. United States*, 394 U.S. 705, 708 (1969) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)); *accord City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) (First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers"). The First Amendment does not permit government "to forbid or proscribe advocacy . . . of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). **<u>Nor can the government prohibit or criminalize speech simply because people feel threatened or intimidated by it</u>**. *United States v. National Treasury Employees Union*, 513 U.S. 454, 475 (1995) (fear of serious injury cannot alone justify suppression of free speech and assembly); *Cox*, 379 U.S. at 550 (bystander's fear of violence erupting does not justify convicting one of disturbing the peace when peacefully protesting).

**B. The Characterization of a Protest as a Conspiracy Violates the Right to Freedom of Association.**

Instead of responding to the isolated incidents of destructive conduct by arresting and charging those who engaged in it, the government has chosen to portray the entire protest as a conspiracy and selectively punish certain attendees. This approach has rendered the application of 18 U.S.C. § 372 unconstitutional as applied to this case.

Defendant Archer's Motion to
Dismiss Indictment—Page 13

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1   Law enforcement "cannot interfere with orderly, nonviolent protests

2 because they disagree with the content of the speech." *Black Lives Matter*, 466

3 F. Supp. 3d at 1211. "Courts have many times emphasized the importance of

4 government's permitting the public to engage in spontaneous First Amendment

5 activity, such as demonstrations, in response to controversial events." *Collins*,

6 110 F.3d at 1372. In this vein, "the unlawful activity by a few protestors does

7 not transform a peaceful assembly into an unlawful assembly." *Chicago*

8 *Headline Club v. Noem*, 2025 WL 3240782, at *77 (N.D. Ill. Nov. 20, 2025).

9 Further, "'the proper response to potential and actual violence is for the

10 government to ensure an adequate police presence, and to arrest those who

11 actually engage in such conduct, rather than to suppress legitimate First

12 Amendment conduct as a prophylactic measure.'" *Black Lives Matters*, 466 F.

13 Supp. 3d at 1211 (quoting *Collins*, 110 F.3d at 1372).

14   Political speech and lawful assembly do not lose First Amendment

15 protection because some members of a crowd chose to engage in disruptive or

16 destructive conduct. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S.

17 886, 920 (1982).

18   . . . [L]iability may not be imposed merely because an individual

19 belonged to a group, some members of which committed acts of
violence. For liability to be imposed by reason of association alone,

20 it is necessary to establish that the group itself possessed unlawful
goals and that the individual held a specific intent to further those

21 illegal aims. In this sensitive field, the State may not employ means
that broadly stifle fundamental personal liberties when the end can

22 be more narrowly achieved.

Defendant Archer's Motion to
Dismiss Indictment—Page 14

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1  *Claiborne*, 458 U.S. at 920. Similarly, "'guilt by association alone, without

2  [establishing] that an individual's association poses the threat feared by the

3  Government, is an impermissible basis upon which to deny First Amendment

4  rights.'" *Santopietro v. Howell*, 73 F.4th 1016, 1025 (9th Cir. 2023) (quoting

5  *Healy v. James*, 408 U.S. 169, 186 (1972)).

6      While *NAACP v. Claiborne* addressed civil liability, its prohibition on guilt

7  by association applies with more force to alleged criminal law violations:

8      Even outside the context of protected First Amendment expressive
       association, "a person's mere propinquity to others independently
9      suspected of criminal activity does not, without more, give rise to
       probable cause." . . . [T]he "more" cannot consist of inferences of
10     possible criminal involvement based solely on an individual's First
       Amendment-protected activities and associations.
11

12  *Santopietro*, 73 F.4th at 1025 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91

13  (1979)). A criminal defendant faces the potential loss of liberty and freedom, as

14  opposed to a mere civil monetary judgment. *See, e.g., In re Winship*, 397 U.S.

15  358, 363 (1970) ("The accused during a criminal prosecution has at stake

16  interest of immense importance, both because of the possibility that he may lose

17  his liberty upon conviction and because of the certainty that he would be

18  stigmatized by the conviction.").

19      This Indictment violates the First Amendment because it provides no

20  evidence or allegations of any conspiracy besides the mere presence of the

21  Defendants at the same protest. (*See* ECF No. 1 at 2-5.) Taking every allegation

22  in the Indictment to be true, the only association between any of the Defendants

Defendant Archer's Motion to
Dismiss Indictment—Page 15

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

is that they "responded to the call" of Stuckart to join him at the ICE office where he planned to sit in front of a bus. (*Id.*) There is no evidence, or even the allegation, that the Defendants agreed with each other to use force, threat, or intimidation against anyone. (*Id.*) Indeed, it is not even alleged that Defendants *spoke* to one another—the Government relies only on two public Facebook posts calling on people to join in protest, and then prosecutes people who attended the protest. (*Id.*) It is hard to imagine a more blatant violation of First Amendment right to free speech and association.

The entire premise of this Indictment is clearly barred by the First Amendment and requires that this case be dismissed. *See, e.g., Claiborne*, 458 U.S. at 920.

**C. The Government's Application of Section 372 to This Case Violates the First Amendment Because the Indictment Fails to Allege Specific Intent to Use Force, Intimidation, or Threats, or That a Reasonable Person Would Interpret a Serious Expression of Intent to Use Force, Intimidation, or Threats.**

  1. <u>To Comport with the First Amendment, an Indictment under Section 372 Must Allege Specific Intent to Use Force, Threat, or Intimidation.</u>

Despite the First Amendment's vast reach, not all speech is constitutionally protected. *See, e.g., United States v. Keyser*, 704 F.3d 631, 637 (9th Cir. 2012) ("Famously, the First Amendment does not protect someone who falsely cries 'fire' in a crowded theater."). "It is well established that the First Amendment does not prohibit the government from criminalizing speech that is integral to

Defendant Archer's Motion to
Dismiss Indictment—Page 16

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

criminal conduct." *United States v. Payne*, 2017 WL 8941311, at *5 (D. Nev. 2017), *report and recommendation adopted*, 2017 WL 480392 (D. Nev. 2017). The First Amendment does not protect threatening speech, harassment, blackmail, extortion, or other "true threats." *See, e.g., United States v. Hanna*, 293 F.3d 1080, 1084 (9th Cir. 2002). A statement is a "true threat" if: (1) "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault," and (2) "the speaker subjectively intended the speech as a threat." *United States v. Stewart*, 420 F.3d 1007, 1016-17 (9th Cir. 2005) (internal quotations omitted).

In this vein, Section 372 is facially valid because it "requires <u>proof of a defendant's intent to prevent a federal officer from discharging his or her duties by force, threat, or intimidation</u>." *Payne*, 2017 WL 8941311, at *7; *accord United States v. Bundy*, 2016 WL 3156310, at *3 (D. Or. 2016).

> The mens rea requirement of § 372 <u>prevents the statute from applying to mere hyperbole or criticism of government officials or to circumstances in which an official subjectively felt intimidated or threatened</u> because this type of conspiracy requires proof the defendant intended to prevent the officer from discharging his or her duties, and proof the defendant accomplished that objective by using force, intimidation, or threats.

*Payne*, 2017 WL 8941311, at *9. That is, § 372 "does not regulate or chill speech otherwise protected by the First Amendment" because "in order to run afoul of § 372 an individual must intend to agree with another person to prevent

a federal official from discharging his or her official duties by force, intimidation, or threat." *Bundy*, 2016 WL 3156310, at *3.

As with the "true threat" standard, § 372 includes both a subjective intent and objective standard: (1) "the speaker or actor must intend his or her words or conduct to intimidate or to be a threat," and (2) "those words or conduct [must be] such that a reasonable person hearing or observing them would foresee that they would be interpreted as a serious expression of intent to harm or assault." *United States v. Ehmer*, 87 F.4th 1073, 1120-21 (9th Cir. 2023) (italics removed). Both elements are required to pass constitutional muster.

2.    The Indictment Does Not Sufficiently Allege That Defendants Used, or Conspired to Use, Force, Intimidation, or Threats.

Neither the subjective or objective intent standards are present in this case. Under § 372, the terms force, intimidation, and threat "are not legal terms of art" and "[o]rdinary citizens can readily understand their meaning." *Payne*, 2017 WL 8941311, at *7. The ordinary meaning of "force" is "to achieve or win by strength in struggle or violence: such as . . . to break open or through." https://www.merriam-webster.com/dictionary/force (website last visited on February 19, 2026). Pursuant to its ordinary meaning, "intimidation" is defined as "the act of intimidating or the state of being intimidated." https://www.merriam-webster.com/dictionary/intimidation. In turn, "intimidate" means "to make timid or fearful . . . to compel or deter by or as if by threats." https://www.merriam-webster.com/dictionary/intimidate. Finally, "threat" is

Defendant Archer's Motion to
Dismiss Indictment—Page 18

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1   defined as "an expression of intention to inflict evil, injury, or damage."

2   https://www.merriam-webster.com/dictionary/threat.

3       Applying these definitions to the allegations in the Indictment reveals its

4   fundamental deficiency and failure to pass constitutional muster. The Indictment

5   plainly lays out the intent and object of Defendant Archer and others: It first

6   cites Defendant Stuckart's social media post stating his plan to "sit in front of

7   the bus" that was being used by ICE to transport a Venezuelan man to Tacoma

8   and alleges that Archer and others "arrived in response to [this] call." (ECF No.

9   1 at 3.) The Indictment then cites Defendant Archer's social media stating: "WE

10  NEED MORE BODIES. THERE IS A NON ZERO CHANCE WE CAN WAIT

11  OUT ICE AND THEY MAY FREE THIS MAN. . . . We are still here. Some

12  contingents are choosing to risk arrest to block the exit to ICE." (Wagley Decl.,

13  Ex. B.) Consistent with the social media posts, Defendant Archer is alleged to

14  have "blocked the pathway and door to the transport bus" and "blocked the

15  driveway" on the south end of the facility. (ECF No. 1 at 3-5.)

16      There is thus no evidence or even the allegation that any Defendant, and

17  certainly not Defendant Archer, subjectively intended their calls to protest and

18  civil disobedience to use violence, make people fearful, or inflict evil, injury, or

19  damage upon any human being. Nor would a reasonable person hearing these

20  words interpret them to be a serious expression of intent to do so. Rather, their

21  posts and alleged conduct make clear that the subjective intent was to bring

22  attention to the plight of the illegally abducted men and nonviolently block the

Defendant Archer's Motion to
Dismiss Indictment—Page 19

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

1  transport bus, in the hopes that they could wait out ICE and persuade it to

2  release the men. The tactics in the calls to action are time-worn and protected

3  methods of civil disobedience. Acts of civil disobedience are intended to get the

4  government's attention and perhaps be a nuisance. But the act of lying, sitting,

5  or standing in front of a government building does not, by any stretch of the

6  imagination, meet the definitions of force, threat, or intimidation.

7      Even if the Court were to consider the other alleged acts of codefendants—

8  to include the alleged vandalism of buses or blocking exits with objects—these

9  acts cannot, as a matter of law, constitute force, threat, or intimidation. Section

10  372 only prohibits violence and threats of violence directed at human beings.

11  The destruction of property simply does not meet this definition.

12      The Government's conclusory mischaracterization of nonviolent civil

13  disobedience and minor vandalism as a violent conspiracy does not make it so.

14  (*See* ECF No. 1 at 2-5.) Because the Indictment does not sufficiently allege

15  Defendant Archer engaged in a conspiracy to impede or injury a federal office

16  by force, intimidation, or threat, the Indictment must be dismissed. (*Id.*)

17              **V.  <u>CONCLUSION</u>**

18      Unfortunately, the Court cannot undo the many harms already caused by

19  the Government's violation of the First Amendment: simply by arresting and

20  charging peaceful protesters, the Government is able to impose immense

21  suffering, costs, and reputational harm on those it targets, while dramatically

22

Defendant Archer's Motion to
Dismiss Indictment—Page 20

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1  chilling the free speech of others. This harm is exponentially compounded by

2  subjecting a person to trial.

3       The right to peacefully protest is not just the bedrock of our freedom, it is

4  the foundation of our self-governance. The tactics of nonviolent civil

5  disobedience helped found our nation and sustain it through times of war,

6  oppression, and injustice. The judiciary is often the last line of defense when the

7  executive branch attempts to quash the use of this essential tool. Defendant

8  Archer respectfully invites the Court to join this legacy and grant this Motion to

9  Dismiss before more harm is done.

10       RESPECTFULLY SUBMITTED this 2nd day of March, 2026.

11                    ETTER, McMAHON, LAMBERSON,
                    VAN WERT & ORESKOVICH, P.C.
12

13            By:  /s/ Andrew M. Wagley
                 Carl J. Oreskovich, WSBA #12779
14                 Andrew M. Wagley, WSBA #50007
                 *Attorneys for Defendant Archer*
15

16

17

18

19

20

21

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 2nd day of March, 2026 in Spokane, WA.

By:   /s/ Jodi Dineen
Jodi L. Dineen, Paralegal

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100