Todd Blanche
Deputy Attorney General of the United States
Lisa Cartier-Giroux
Rebecca R. Perez
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAC DALITSO ARCHER,<br><br>Defendant. | Case No.: 2:25-CR-00113-RLP-9<br><br>United States' Response to Defendant's Motion to Dismiss Indictment Under the First Amendment (ECF Nos. 242 and 245) |

Plaintiff, United States of America, by and through Lisa Cartier-Giroux and Rebecca Perez Assistant United States Attorneys for the Eastern District of Washington, submits the following Response to Defendant Archer's Motion to Dismiss (ECF No. 242) which is joined by Defendant Forral (ECF No. 245). The United States responds as follows.

**INTRODUCTION**

This case is about the decisions of each of the charged defendants to impede law enforcement officers. The First Amendment guarantees the right to peacefully protest, to assemble, and as well freedom of speech. Hundreds of individuals exercised those rights in downtown Spokane on June 11, 2025. But 9 individuals, including Defendants Archer and Forral, chose to take deliberate actions which went beyond the expression of a constitutional right. They used force and intimidation to physically restrict the movement of officers from transporting

United States' Response to Defendant's Motion to Dismiss – 1

detainees to their scheduled court hearings. While many individuals chose to peacefully protest that day, and many have since for similar reasons, Defendant Archer chose to organize and lead conduct which, Defendant Archer explicitly acknowledged, would result in arrest. Defendant Archer chose to be a leader in not just expressing discontent with the actions of government but going far beyond that protected right to trapping officers, along with civilian employees and detainees, inside a building for hours in an effort to force the release of the detainees. Similarly, Defendant Forral, who joins in the motion, blocked a transport bus, deflated its tires, piled up objects in front of exits, and with Defendant Archer and other co-conspirators, blocked the exit gate to prevent officers from leaving the facility with the detainees to transport them to their hearings in Tacoma, Washington. Further Defendant Forral was charged in Spokane County with felony assault (in addition to other charges) on state law enforcement officers, acts Defendant Forral allegedly committed during the same incident that led to the federal charge.

The United States construes the motion to raise two legal issues: first, an as-applied constitutional challenge to the charge of conspiracy to impede or injure officers; and second, what essentially is a Rule 29 motion for failure to meet the elements of the offense. Interspersed in these arguments are generalized complaints about the policies of current administration and the Department of Justice (DOJ), as well as some factual inaccuracies about the principles of prosecution.

All these arguments fail. Defendants may have a false belief that the Constitution protects any and every action a citizen may wish to take if it is politically motivated, but that is not the case. No individual is permitted to block access to government buildings, pile up objects in front of exits, physically block officers from  safely escorting law vehicles from exiting a parking lot, and vandalize property with the overarching goal of impeding officers' execution of their duties and compelling them to comply with a defendant or defendants'

United States' Response to Defendant's Motion to Dismiss – 2

wishes. No individual is permitted to shove officers or refuse to comply with lawful commands simply because they disagree with the order. Such constitutional challenges fail based on the ample caselaw describing the limits of the First Amendment. And as for decisions of proof, or whether the United States can provide evidence on each of the elements of the charges, that is for the jury to decide.

The many complaints about current administration policy, as articulated by a few news articles appended by Defendant, have no legal bearing on this case. The ill-informed and false claims by a politically-ambitious and power-hungry former interim United States Attorney are not relevant, and neither are a few selected news articles about political events which occurred months after the indictment in this case.

Defendant Archer and Defendant Forral are political activists and presumably wish to make a statement on the current political climate. There are many appropriate venues to express such views. But the law and legal rules which govern this case, as well as all other federal cases, dictate that criminal cases are not the correct forum for activism or the use of irrelevant and inflammatory filings to impute ill intent to a party. This motion to dismiss should be denied as it fails to provide a legal basis supported by facts for its requested remedy of dismissal.

//
//
//
//
//
//
//
//

United States' Response to Defendant's Motion to Dismiss – 3

## FACTS[1]

On or about June 11, 2025, co-defendant/co-conspirator BENJAMIN THEODORE STUCKART, posted on social media a call for others to come and join him as he blocked a bus designated to transport all the federal detainees in the facility to Tacoma, Washington for their immigration hearings[2]. STUCKART posted the following:

**Ben's Post**                                                        ✕

**Ben Stuckart**
June 11 at 12:52 PM · 🌐

ACTION ALERT: Three weeks ago I became the legal guardian to a young man from Venezuela seeking asylum.  He has turned in all paperwork and has a future court hearing.  I went with him to ICE check in today.  They detained him and are shipping him to Tacoma.

I am asking that if you care at all about these illegal detainers you meet me at 411 West Cataldo by 2pm.  I am going to sit in front of the bus.  Feel free to join me.......

The Latino community needs the rest of our community now.  Not tonight, not Saturday but right now!!!!

😆👍❤️ 748                                        237 comments   300 shares

👍 Like                                          ➦ Share

Most relevant ▼

Defendants and other co-defendants and co-conspirators arrived in response to the call and along with STUCKART, blocked the pathway and door to the transport bus despite orders to disperse. Co-defendant JUSTICE FORRAL intentionally parked his vehicle to block the exit pathway of the transport bus and preclude its movement. Defendants JUSTICE FORRAL and ERIN NICOLE LANG released the air from the tires of the transport bus. Other co-conspirators

---

[1] The United States offers this as a summary only prepared by the assigned AUSA not the potential witnesses involved.  Although the summary was prepared from the discovery materials, the United States defers to the proposed exhibits which include the incident reports, sworn affidavits, body camera, and testimony as the best source as to the factual background.

[2] Defendant Stuckart along with several co-defendants have pled guilty and admitted that the government could prove the factual allegations appearing herein.

United States' Response to Defendant's Motion to Dismiss – 4

painted the windshield of the transport bus rendering it unsafe to operate. Images of FORRAL's red vehicle in front of the bus as well as letting air out of the tires are below:





Based on the Defendants and others' refusal to disperse and the coordinated effort to render the white transport bus inoperable, officers were unable to leave the facility on the north side of the facility.

Federal officers then attempted to exit the federal facility through the secure parking lot and vehicle gate located on the south end of the premises. Defendant ARCHER, along with co-defendants including FORRAL and other co-conspirators physically blocked the driveway of the federal facility by linking arms and refusing to leave the exit path, preventing exit through the south gate. Co-defendants/co-conspirators including FORRAL began placing trash cans, benches, and other

United States' Response to Defendant's Motion to Dismiss – 5

objects in front of the ingresses and egresses to block the exit of federal officers and detainees from the federal facility.

Defendant ARCHER posted the following, calling for others to join in the effort to block law enforcement efforts to engage in the transport of detainees and force them to release the detainees:



Due to the increasing crowd, the Spokane Police Department arrived and placed marked patrol vehicles in front of and behind a red transport van on the southeast side of the facility in another attempt for law enforcement to effectuate the transport of the detainees. The red van was quickly surrounded and blocked by co-defendants and other co-conspirators. The tires of the red van were slashed by co-defendant THALIA RAMIREZ, rendering the van inoperable.

The crowd including Defendants grew increasingly resistant and combative. Co-defendant MIKKI PIKE HATFIELD threw a deployed incendiary device in the

United States' Response to Defendant's Motion to Dismiss – 6

direction of Spokane Police Department officers and Spokane County Sheriff's Office deputies. Multiple calls for assistance were made by trapped federal law enforcement to local law enforcement agencies. Federal agents, civilian employees, and the detainees were unable to leave the facility as a result of the actions of Defendants, co-defendants, and other co-conspirators, until approximately 9:00 PM, and only then with the assistance of the Spokane Police Department S.W.A.T. team.

**ARGUMENT**

### 1.  Constitutional Challenges

A facial challenge to an arguable First Amendment restriction centers on "whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC,* 603 U.S. 707, 723 (2024). In contrast, "an as-applied challenge contends that the law is unconstitutional as applicated to the litigant's particular speech activity, even though the law may be capable of valid application to others." *See, eg Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir. 1998).

Here, Defendants seem to be making an as-applied challenge to 18 U.S.C. § 372 rather than a facial challenge. Therefore, Defendants claim that their conduct (impeding the ability of officers to leave a building, conspiring to prevent officers from doing their duties by stopping a transport bus through slashing tires, putting paint in the windshield of the transport bus, and other acts alleged in the indictment) is constitutionally protected behavior.

The Ninth Circuit and Supreme Court have consistently ruled that there are various ways in which the First Amendment may lawfully be restricted—the Constitution does indeed have limits: "The First Amendment does not guarantee the right to communicate one's views at all times or places or in any manner that may be desired." *Menotti  v. City of Seattle,* 409 F.3d 1113, 1138 (9th Cir. 2005)

United States' Response to Defendant's Motion to Dismiss – 7

(quoting *Heffron v. International Society for Krishna Consciousness, Inc., et al,* 452 U.S. 640 (1981)). The Ninth Circuit, while acknowledging that "debate should be uninhibited, robust, and wide-open…includ[ing] vehement, caustic, and sometimes unpleasantly sharp attacks on government…", stated that those rights cannot "automatically overcome the need of a city to maintain order and security for its residents and visitors, in the face of violence" *Menotti,* 409 F.3d at 1140.

As-applied challenges are analyzed by first determining whether the regulation or statute is content-neutral. If it is, then the analysis falls under intermediate scrutiny, meaning the restrictions must be "narrowly tailored to serve a significant government interest, and they must leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989), *see also Project Veritas v. Schmidt,* 125 F.4th 929, 940-49 (9th Cir. 2025).

"Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Ward,* 491 U.S. at 782. In other words, "the principal inquiry in determining content neutrality…is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Project Veritas,* 125 F.4th at 947 (quoting *Hill v. Colorado,* 530 U.S. 703, 719 (2000)).

Here, 18 U.S.C. § 372 criminalizes conspiring to impede federal law enforcement. As indicated in Defendant's brief, this section "was designed to protect federal officers by providing for federal prosecution whenever they were injured because of or in the course of their duties." *United States v. Rhodes,* 610 F.Supp.3d 29, 51 (D.D.C. 2022). The language of the statue itself gives no indication of any sort of content restriction—individuals may violate this statute through a host of conduct, completely aside from any possible political or other motive, if one even exists. Individuals could be charged with this offense based on violent conduct in support of one political issue, in opposition to that same issue,

United States' Response to Defendant's Motion to Dismiss – 8

or based on conduct completely independent of any expression of a viewpoint. Thus, 18 U.S.C. § 372 is content-neutral.

Therefore, the question is whether this statute is "narrowly-tailored to serve a significant government interest," and whether the statute leaves open alternative channels for the communication. Courts regularly refer to whether a regulation constitutes a reasonable "time, place, and manner" restriction. *See Ward*, 491 U.S. at 791 (government may impose reasonable restrictions on time, place, or manner of protected speech, even of speech in public forum, as long as restrictions are justified without reference to content of regulated speech, are narrowly tailored to serve significant governmental interest, and leave open ample alternative channels for communication of information).

Regarding what constitutes a "significant government interest," the Ninth Circuit has held that statutes preventing individuals from secretly recording conversations "easily" rose to the level of a significant government interest—it is important to let people know when they are being recorded. *Project Veritas,* 125 F.4th at 952. Similarly, governments may impose regulations which promote "the well-being, tranquility, and privacy of the home." *Frisby v. Schultz,* 487 U.S. 474, 484 (1988). The government may impose restrictions which protects citizens from "unwelcome noise." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806 (1984). Permissible restrictions also include those which maintain attractive and intact parks which are "readily available to the millions of people who wish to see and enjoy them." *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 296 (1984).

Additionally, in the criminal context, criminal statutes which restrict speech pertaining to threats or harassment have been upheld. *See eg United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014). Similarly, Courts have held that the First Amendment does not entitle a protestor to block traffic, even when the act is done as a form of political protest, and thus an officer may arrest or take other

United States' Response to Defendant's Motion to Dismiss – 9

action to stop such conduct. *Singleton v. Darby,* 605 Fed. Appx. 190, 193 (5th Cir. 2015); *see also Lone Star Security and Video, Inc. v. City of Los Angeles,* 827 F.3d 1192, 1201 (9th Cir. 2016) (stating that promoting the safe and convenient flow of traffic is a significant government interest). In sum, courts across the country have consistently recognized an interest in a peaceful and safe society. Therefore, the goal of preventing officers from injury or impediment in the discharge of their duties surely also rises to the level of a significant government interest. Preventing Defendants from engaging in the actions such as those listed in the Indictment rises even perhaps *above* the significant government interest in maintaining parks for all to enjoy or preventing unwelcome noise.

The final consideration is whether there are reasonable alternatives for expressing the regulated communication. Importantly, this does not mean that an exact substitute must exist. Rather, the alternative channel must be within "close proximity" to the intended audience and simply be an "adequate" channel for communication. *Marcavage v. City of New York,* 689 F.3d 98, 107 (2d Cir. 2012); *see also Ward,* 491 U.S. at 791. For example, restrictions on the location of protests for the Republican National Convention in New York City were upheld due to the creation of a "demonstration zone" in which protestors were free to protest within a specific area. *Marcavage v. City of New York,* 689 F.3d 98 (2d Cir. 2012). The security and logistics of the Convention meant restrictions had to be made, and the Court determined that such were reasonable time, place, and manner restrictions. *Id.* at 109. And the alternative location for protest was a large zone spanning a block, one avenue from the Convention, with a stage and sound amplification equipment. *Id.* at 108. This was not an exact substitute for protesting immediately outside the Convention, but the Court held it was a reasonable alternative which met the concerns of the First Amendment while also addressing the significant government interest in preserving the traffic flow and safety of the surrounding area. *Id.* at 108-110. *See also Lone Star Security and Video, Inc.,* 827

United States' Response to Defendant's Motion to Dismiss – 10

F.3d at 1202  (upholding a restriction on certain types of billboards because citizens were free to disseminate the same message through similar means including alternate billboards, flyers, newspapers, handbills, etc.).

Here, there are ample alternatives for the expression of speech. Defendants and others are free to protest the actions of the federal government across the street from the HSI office, alongside any of the federal facilities in Spokane, or pretty much anywhere that is not directly in front of the transport buses used to leave the HSI facility. Defendants and others are free to express their political or other opinions online, in newspapers, or pretty much anywhere as long as it does not invite crowds of people to physically restrict the movement of officers or impede them in their duties in such a way that those officers are actually prevented from carrying out those duties. Defendants and others may protest and yell and hold signs and any other form of peaceful protest, provided that protest does indeed remain peaceful and not impede traffic, safety, or the ability of law enforcement to do their job. In sum, Defendants have ample opportunities to engage in the expression of their opinion in ways other than intentionally blocking HSI transport buses, vandalizing them, blocking exits with objects, and physically preventing officers from doing their job. Therefore, there are adequate alternatives for the expression of speech.

There is no need to hypothesize as to adequate alternatives for the expression of speech—recent local events have shown that many citizens continue to express their views regarding Immigrations and Customs Enforcement. Protesters recently assembled to express their discontent with the actions of the federal government in the case of *United States v. Diaz-Amezcua*. They gathered in front of the federal courthouse for several hours over several days and could be heard by many employees inside the federal building. The protestors used signs and noisemakers—yet they permitted people to freely enter and exit the building, and no protestor ran afoul of 18 U.S.C. § 372. *See*

United States' Response to Defendant's Motion to Dismiss – 11

https://www.khq.com/news/spokane-protest-challenges-governments-decision-to-deny-motion-of-man-detained-by-ice/article_654bff77-47c8-4b2f-af66-99ce58e7ce96.html (last visited 5 March 2026). Similarly, a protest also occurred at the federal courthouse on March 1, 2026, with many people protesting near an entry to the building. Yet none violated 18 U.S.C. § 372, and none were arrested for impeding officers. *See* https://www.kxly.com/news/anti-ice-protesters-march-through-downtown-spokane/article_8db22daa-c052-4895-ba7e-ecc3b07e1cad.html (last visited 5 March 2026).

Thus, Defendants' as-applied challenge fails. 18 U.S.C. § 372 is content-neutral and is narrowly tailored to a significant government interest of maintaining order and preventing the injury or impediment of law enforcement officers. Defendants have ample alternatives to express their political views other than engaging in the conduct listed in the indictment. As one district judge noted in a decision: "Section 372 is straightforward: it prohibits individuals from conspiring to keep government employees from doing their jobs" and the statute therefore upheld. *United States v. Payne,* No. 216CR00046GMNPAL, 2017 WL 8941311, at *4 (D. Nev. Jan. 3, 2017), report and recommendation adopted, No. 2:16-CR-46-GMN-PAL, 2017 WL 480392 (D. Nev. Feb. 2, 2017).

### 2. Rule 29 Motion for Judgment of Acquittal

Defendant also essentially argues that a conspiracy did not exist, and that all conduct they engaged in surrounding the allegations in the indictment was simply a lawful peaceful protest. The United States of course disagrees and will present evidence in support of its position at trial. But at this point, prior to trial, zero evidence has been admitted. And therefore, this Court cannot make a determination that the United States will be unable to meet its burden.

As multiple circuits have noted, "there is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the

United States' Response to Defendant's Motion to Dismiss – 12

sufficiency of the evidence…the sufficiency of the indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute." *United States v. Salman,* 378 F.3d 1266, 1268 (11th Cir. 2004); *see also United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir. 2000); *United States v. Nabors,* 45 F.3d 238, 240-41 (8th Cir. 1995).

The Ninth Circuit has specifically stated that "a defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *United States v Jensen,* 93 F.3d 667, 669 (9th Cir. 1996). In that case, a district court's decision to dismiss an indictment was overturned because the judge had based its decision on evidence that should only have been presented at trial—essentially a motion under Criminal Rule 29. *Id.* The Court stated "this [referring to pretrial determination of evidence] it must not do" and therefore the decision was overturned. *Id.* In addition, "in determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged." *United States v. Santilli,* No. 216CR00046GMNPAL, 2017 WL 347590, at *6 (D. Nev. Jan. 6, 2017), report and recommendation adopted, No. 2:16-CR-0046-GMN-PAL, 2017 WL 343902 (D. Nev. Jan. 23, 2017).

Here, the United States will seek to admit evidence in support of every element of the conspiracy, including what is alleged in the speaking indictment. Since the statute is not unconstitutional (see above), and the indictment alleges the correct elements of the statute, there is no reason to dismiss. Defendants seem to acknowledge that this Court should not consider the evidence to be admitted in the case—but then immediately argue about the lack of evidence to be admitted in the case.

To be clear, further motion practice is anticipated regarding some of the not-remotely-relevant arguments made by Defendant, including news articles

United States' Response to Defendant's Motion to Dismiss – 13

surrounding incidents in Minnesota and elsewhere. As indicated above, there are times and spaces for political speech and rhetoric. But a jury trial is not one of them. And conduct by different law enforcement officers, in different areas of the country, working different investigations with specific orders in different circumstances, facing different dangers and having different concerns have zero bearing on this case and are simply being used a distraction from the facts of *this* case—most readily apparent as the specific events in news articles referenced by Defendants occurred months *after* the charged events on June 11th, 2025.

When the U.S. Attorney's Office learned, on June 11th, 2025, of non-peaceful protests and destructive acts occurring at a federal facility involving federal agents, the United States Attorney's Office did what it always does—it worked with its federal law enforcement partners to investigate. Based on the investigation, evidence was presented to a federal grand jury. The grand jury chose to return an indictment—the document which Defendant seeks to dismiss, which properly alleges all of the essential elements of the charged offense. As such, the motion to dismiss should be denied.

## CONCLUSION

A First Amendment constitutional argument fails here—the United States certainly has a significant interest in ensuring that federal officers are not impeded or injured in carrying out their duties. And arguments that the facts do not support a conviction also fail—that is a trial question for an empaneled jury, a question on which the United States expects to prevail. The motion to dismiss should therefore be denied.

Dated:  March 16, 2026.

Todd Blanche
Deputy Attorney General

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney

United States' Response to Defendant's Motion to Dismiss – 14

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have emailed the document to the following:

Andrew Wagley

Andrea George

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney

United States' Response to Defendant's Motion to Dismiss – 15