Todd Blanche
Deputy Attorney General of the United States
Lisa Cartier-Giroux
Rebecca R. Perez
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No.: 2:25-CR-113-RLP-2 |
|---|---|
| Plaintiff, | United States' Response to Defendant's Motion to Strike (ECF No. 245) |
| v. | |
| JUSTICE FORRAL, | |
| Defendant. | |

Plaintiff United States of America, by and through Lisa Cartier-Giroux and Rebecca Perez, Assistant United States Attorneys for the Eastern District of Washington, submits the following opposition to Defendant Justice Forral (Defendant)'s Motion to Strike (ECF No. 245).

**OVERVIEW**

In this case, the charged defendants conspired to impede and obstruct law enforcement officers by force, intimidation, and threat, by destroying property, by trapping officers, employees, and detainees inside the federal facility, and by attempting to injure officers, all to thwart federal law enforcement officers from discharging their official duties and transporting federal detainees. Another objective of the co-conspirators, including Defendant Forral, in conspiring to commit these acts and committing them was to force federal officers to release the detainees. In his motion, Defendant Forral has moved to dismiss Count 1 in its

United States' Response to Defendant's Motion to Strike – 1

entirety, or in the alternative, to strike two of the means and manners by which the co-conspirators violated the statute as alleged in the indictment at ECF No. 1. Defendant (1) (a) posits that federal law enforcement agents and officers of the Department of Justice (DOJ) Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Department of Homeland Security (DHS) Homeland Security Investigations (HSI), which includes Customs and Border Protection (CBP) and United States Immigration and Customs (ICE), are somehow not "officers of the United States"; (1) (b) claims the indictment lacks specificity as to the elements of the offenses and asserts that the "Objects" as set forth in the indictment are legally insufficient; and (2) asserts that the "property" element of the statute refers only to the personally owned property of the officer, and does not include property belonging to the United States that the officers possess and use for and in their official duties.  Defendant's motion is meritless and should be denied on all grounds.

First, the definition of "officer of the United States" under 18 U.S.C. § 372 covers federal law enforcement officers as Congress clearly intended the pertinent portions of § 372 to criminalize conspiracies to prevent an officer of the United States from discharging their duties – not just federal judges, cabinet appointees, and ambassadors whose authority derives directly from the Appointments Clause. *See Steele v. United States*, 267 U.S. 505, 507 (1925) (noting that the Court, "in consideration of the context, has sometimes given [the phrase] an enlarged meaning, and has found it to include others than those appointed by the President, heads of departments, and courts."). Federally-sworn law enforcement officers who take oaths to uphold the Constitution, including ATF or HSI officers, are officers in this context.

Second, the indictment provides sufficient specificity to include the "Objects" and the "Overt Acts" sections of the indictment, which provide notice of what Defendant and his co-conspirators did that allegedly violated the charged

United States' Response to Defendant's Motion to Strike – 2

statute. *See United States v. Payne*, 2017 WL 8941311, at *4 (D. Nev. Jan. 3, 2017) ("A criminal statute is not required to state a precise definition of prohibited conduct. It only requires fair notice of what is prohibited, and § 372 provides fair notice.") (report and recommendation by Magistrate Judge subsequently adopted by District Judge).

Indeed, in addition to the detail provided in the indictment itself, the United States has asked the FBI agent to provide the defense with an FBI report listing the names and identities of the 14 federal agents and employees – including the respective federal agencies for whom they carry out official duties – who were at the federal facility and/or involved with the attempts to transport the detainees on the date of the incident here. The names and agencies of these individuals were previously turned over in reports as were interviews of these federal law enforcement officers and federal employees inside and outside the facility. Most, if not all, of the acts relevant to the charges were also captured on video in some form, and relevant information regarding the acts and victims is otherwise documented in reports, all of which has likewise been provided in discovery. Thus, across the indictment and additional information the United States has provided, Defendant Forall cannot meaningfully claim that he lacks constitutionally adequate notice of the charges and evidence against which he must defend. *See James v. Borg,* 24 F.3d 20, 24 (9th Cir. 1994) (holding that in order to determine whether a defendant has received constitutionally adequate notice, the court looks first to the charging document); *United States v. Rojo,* 727 F.2d 1415, 1418 (9th Cir. 1983) (holding that charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet); *see Murtishaw v. Woodford,* 255 F.3d 926, 953-54 (9th Cir. 2001) (holding that sources other than the charges can be examined to determine whether a defendant received adequate notice).

Third, the term "his property" in § 372 necessarily includes property under officers' dominion and control, including property they possess or use to carry out

United States' Response to Defendant's Motion to Strike – 3

their official duties. Reading the statute to mean that "his property" can mean only an officer's personally purchased effects would produce ridiculous and nonsensical results that Congress could not have intended in a statute meant to protect officers of the United States in the execution of their official duties.  Defendant's reading would limit the use of § 372 to charges against those who commit personal property torts against officers.

Defendant's motion should be denied in all respects.

## FACTUAL SUMMARY[1]

On or about June 11, 2025, co-defendant/co-conspirator Benjamin STUCKART, posted on social media a call for others to come and join him as he blocked a bus designated to transport federal detainees from a federal facility in Spokane, Washington, to another federal facility in Tacoma, Washington, for their federal immigration hearings[2]. STUCKART posted the following:

**Ben's Post**   ✕

**Ben Stuckart**
June 11 at 12:52 PM · 🌐

ACTION ALERT: Three weeks ago I became the legal guardian to a young man from Venezuela seeking asylum.  He has turned in all paperwork and has a future court hearing.  I went with him to ICE check in today.   They detained him and are shipping him to Tacoma.

I am asking that if you care at all about these illegal detainers you meet me at 411 West Cataldo by 2pm.  I am going to sit in front of the bus.   Feel free to join me.......

The Latino community needs the rest of our community now.  Not tonight, not Saturday but right now!!!!

😲👍❤️ 748                            237 comments   300 shares

---

[1] The United States offers this as a summary prepared by the assigned AUSA for purposes of responding to Defendant's motion, and not as a proffer of the actual trial testimony of any potential witness.  Although this summary has been prepared from the discovery materials, the United States defers to the proposed exhibits, which include incident reports, sworn affidavits, body camera footage, and testimony, as the best sources regarding the facts of this case.
[2] Defendant Stuckart, along with several co-defendants, has pled guilty and admitted that the government could prove the factual allegations appearing herein.

United States' Response to Defendant's Motion to Strike – 4

Defendant and other co-defendants and co-conspirators arrived in response to the call and along with STUCKART.  They blocked the pathway to the white transport bus, despite orders to disperse. Defendant FORRAL intentionally parked his vehicle immediately in front of the white bus, in an obvious and intentional bid to block the exit pathway of the white bus and preclude its movement. Defendant FORRAL and co-defendant ERIN NICOLE LANG also took the affirmative steps of releasing the air from the tires of the white bus. Other co-conspirators painted the windshield of the white bus, rendering it unsafe to operate.

Based on the Defendants and others' refusal to disperse and the coordinated effort to render the white bus inoperable, officers were unable to execute their official federal duties, which included transporting several federally arrested detainees away from the federal facility, on the north side of the facility, using the white bus. Federal officers then attempted to exit the federal facility through the secure parking lot and vehicle gate located on the south end of the premises. Defendant FORRAL, along with co-defendants and other co-conspirators, physically blocked the driveway of the federal facility by linking arms and refusing orders to leave the exit path, which effectively and fully prevented the transport vehicles' ability to exit through the south gate. Co-defendants/co-conspirators including Defendant FORRAL began placing trash cans, benches, and other objects in front of the ingresses and egresses to block the exit of federal officers and detainees from the federal facility.

Co-defendant/co-conspirator Jac ARCHER posted the following, calling for others to join in the effort to block law enforcement efforts to engage in the transport of detainees and force them to release the detainees:

United States' Response to Defendant's Motion to Strike – 5

Due to the increasing crowd and the actions of the co-conspirators, the Spokane Police Department arrived and placed marked patrol vehicles in front of and behind a red transport van on the southeast side of the facility in another attempt for law enforcement to effectuate the transport of the detainees. The red van was quickly surrounded and blocked by co-defendants and other co-conspirators. The tires of the red van were slashed by co-defendant/co-conspirator Thalia RAMIREZ, rendering the van inoperable.

The crowd, including Defendants, grew increasingly resistant and combative. Co-defendant Mikki HATFIELD threw a deployed incendiary device

United States' Response to Defendant's Motion to Strike – 6

in the direction of Spokane Police Department officers and Spokane County Sheriff's Office deputies attempting to help the federal officers, employees, and detainees at the federal facility. Multiple calls for assistance were made by trapped federal law enforcement to local law enforcement agencies. Federal agents, civilian employees, and the detainees were unable to leave the facility as a result of the actions of Defendants, co-defendants, and other co-conspirators, until approximately 9:00 PM, and only then with the assistance of the Spokane Police Department S.W.A.T. team.

## LEGAL ARGUMENT

(1)(a) <u>Federal Law Enforcement Officers are United States Officers</u>

Defendant Forral is charged in Count 1 of the Indictment with a violation of 18 U.S.C. § 372, *Conspiracy to Impede or Injure Officers*:

> If two or more persons in any State, Territory, Possession, or District conspire to [(1)] prevent, by force, intimidation, or threat, any person [i] from accepting or holding any office, trust, or place of confidence under the United States, or [ii] from discharging any duties thereof, or [(2)] to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or [(3)] to injure him in his person or property [i] on account of his lawful discharge of the duties of his office, or [ii] while engaged in the lawful discharge thereof, or [(4)] to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both[3].

18 U.S.C. § 372.

---

[3] In his motion, Defendant uses the breakdown of the elements of the statute found in *United States v. Ehmer*, 87 F.4th 1073, 1117 (9th Cir. 2023). To avoid confusion, the United States adopts that breakdown in this response.

United States' Response to Defendant's Motion to Strike – 7

Defendant Forral is charged under clauses [(1)(ii)], [(2)], [(3)], and [(4)][4] for acts committed against federal law enforcement officers. In his motion, Defendant Forral asserts that to prove clauses [(2)], [(3)], and [(4)] of 18 U.S.C. § 372, the United States must prove that the victim was an "officer of the United States" within its meaning under the Appointments Clause of the United States Constitution and that federal law enforcement officers are not officers of the United States under Article 2, Section 2 of the Constitution.

Puzzlingly, Defendant Forral relies on two cases, *Steele* and *Ehmer*, for his preferred but incorrect definition of the term "officers." But both *Ehmer* and *Steele* do not support his position. In *Ehmer*, the defendants were indicted under [(1)][(ii)]. *Ehmer*, 87 F.4th at 1117. The Ninth Circuit addressed the defendants' claim on appeal that "the district court erred in declining to instruct the jury that the phrase 'person … holding any office, trust or, or place of confidence under the United States' refers only to those 'Officers of the United States' whose appointments are governed by the Constitution's Appointments Clause." *Id.* The defendants in *Ehmer* claimed that because the impacted federal workers were merely federal employees of the United States Fish and Wildlife Service, they were not "Officers of the United States" as defined by the Appointments Clause, and

_____

[4] In a footnote, Defendant Forral claims that the United States misquotes the statute in the indictment in charging clause [(1)(ii)]. That is not accurate. The United States identified that the persons who the co-conspirators conspired to prevent by force, intimidation, or threat from discharging their duties were federal law enforcement officers who were attempting to facilitate and execute the transport, not the federal civilian employees who were trapped in the federal building by Defendant Forral and his co-conspirators. Such actions against the trapped employees (who would in other circumstances qualify under clause [(1)]) would constitute a charge of false imprisonment or kidnapping, which upon information and belief, Defendant Forral was charged for in the pending state matter. The federal law enforcement officers also fall under "any person" of clause [(1)] and the United States is not taking on any additional burden other than specifying in the indictment that those persons were federal officers.

United States' Response to Defendant's Motion to Strike – 8

claimed the District Court erred in declining their requested jury instruction that (1) to prove clause [(1)] of the statute, the person prevented by force, intimidation, or threat must be an officer of the United States *and* (2) the definition of officer of the United States should be imported from the Appointments Clause. *Id.*

Defendant argues that *Ehmer* supports his position that sworn federal law enforcement agents and officers of ATF, DHS (which includes HSI, CBP), and ICE are somehow not "officers of the United States" for purposes of clauses [(2)], [(3)], or [(4)]. But in *Ehmer*, the Ninth Circuit did *not* come to the conclusion that clauses [(2)], [(3)], or [(4)] import the constitutional definition of "officer of the United States." To the contrary, in dismissing the defendant's claims that "officer of the United States" should be read into clause [(1)], the Ninth Circuit noted the distinction between "any person" and "officer of the United States" and restated the hornbook law that Congress is presumed to act intentionally and purposefully if it includes language in one section and omits it in another. *Id*. at 1118-1119. The Court then noted that the history of the phrase in clause [(1)] of "holding any office, trust, or place of confidence" and concluded that would include more victims than those set forth in the Appointments Clause. *Id*. The Court declined to determine if the term "holding any office" was the equivalent of the phrase "officer of the United States"[5], or if it included more than simply a federal law enforcement officer; it also did not hold that it would import the constitutional meaning of "officer of the United States" to clauses [(2)], [(3)], or [(4)]. The Ninth Circuit agreed with the District Court and ultimately found it did not err in declining the defendants' requested jury instruction. *Id.*

---

[5] The Ninth Circuit stated, "… even assuming that Patrick and Thorn [the defendants] are correct in contending that 'person ... holding any *office* ... under the United States' should be construed as being essentially equivalent to the phrase 'officer of the United States'—***a point we do not decide***—the language of this clause of § 372 contains additional terms that go beyond the holders of an 'office'." *Id.* at 1118 (emphasis added).

United States' Response to Defendant's Motion to Strike – 9

Like the defendants in *Ehmer*, Defendant also cites *Steele v. United States*, 267 U.S. 505 (1925) to support his claim that "officers of the United States" include only those specified by the Appointments Clause. But even in *Ehmer*, the Ninth Circuit noted that in *Steele*, the Supreme Court stated that "in consideration of the context, [the Court] has sometimes given [the phrase] an enlarged meaning, and has found it to include others than those appointed by the President, heads of departments, and courts." *See Id.* (quoting *Steele*, 267 U.S. at 507). *Steele* simply does not provide a basis to conclude that [2], [3], and [4], the clauses of 18 U.S.C. § 372 that impose the element of an "officer of the United States", be construed as an officer of the United States as defined under the Appointments clause.

At issue in *Steele* was the validity of a seizure warrant under the Espionage Act of 1917. *See Steele*, 267 U.S. at 505. The question before the Court was whether the prohibition agent was an employee and "not a civil officer of the United States duly authorized to enforce or assist in enforcing any law thereof" as required for warrants under the Act. *Id.* The argument by the defendant was that the agent was not a "civil officer of the government in the constitutional sense". The Supreme Court however found that the term "all other officers of the United States" in the National Prohibition Act did in fact include the prohibition agent, concluding "in favor of the broader construction which vests the power and duty to receive and serve a search warrant in prohibition agents appointed by the Commissioner of Internal Revenue". *Id.* In the decision, the Court noted that for example, "deputy marshals of the United States are appointed by the United States marshal under whom they serve … and he and his deputies have in each state the same power in executing the laws of the United States as the sheriffs and their deputies in such state in executing the laws thereof. The deputy marshal is not in the constitutional sense an officer of the United States, and yet marshals, and deputy marshals are the persons chiefly charged with the enforcement of the peace of the United States, as that is embraced in the enforcement of federal law." *Id.*

United States' Response to Defendant's Motion to Strike – 10

(citing *In re Neagle*, 135 U. S. 1, 68, 69 (1890)). In reading the statute to simply provide for persons under the Appointments clause, the Court reflected on the purpose of the statute, the persons who would actually be serving warrants on behalf of the Commissioner of Internal Revenue, and how such a reading as proposed by the defendant would constrain the procedure and the execution of the Act.

Defendant Forral is incorrect in trying to import a limited constitutional meaning to the term "officer of the United States" to not include sworn federal law enforcement officers in light of the history of § 372 arising out of the Enforcement Act of 1871. In *United States v. Nordean*, 2022 WL 17583799 (D.D.C. Dec. 11, 2022), a District Court addressed a similar claim where a defendant was charged with conspiring to prevent members of Congress and law enforcement officers from discharging their duties, in violation of 18 U.S.C. § 372 under clauses [(1)] and [(2)]. The defendant in *Nordean*, like Defendant Forral, argued that "officers of the United States" did not include persons outside of the Appointments Clause - members of Congress or Capitol Police officers under clause [(2)]. The District Court reviewed the history of 18 U.S.C. § 372 concluding that "officers of the United States" should not be limited to its constitutional meaning and held that "members of Congress occupy an "office, trust, or place of confidence under the United States" and so too are "officers of the United States." *Id.* at *11. The District Court in *Nordean* examined the legislative history of the phrase "officer of the United States" in the context of  §372, noting that clauses [(2)], [(3)], and [(4)] "first appeared as part of the Enforcement Act of 1871" which criminalized conspiring 'by force, intimidation, or threat to induce *any officer of the United States* to leave any State, district, or place *where his duties as such officer might lawfully be performed*, or to injure him in his person or property on account of his lawful discharge of the duties of his office". *Id.* at *11 (quoting the Enforcement Act of 1871, Act of Apr. 20, 1871, ch. 22, § 2, 17 Stat. 13, emphasis added). As

United States' Response to Defendant's Motion to Strike – 11

did the Ninth Circuit in *Ehmer*, the District Court in *Nordean* noted that the Supreme Court "has not uniformly imported the Appointments Clause meaning of the phrase 'officer' into statutes" and found that limiting "officer of the United States" exclusively to its constitutional meaning would "obstruct" the purpose of the Enforcement Act. *Id.* at *13-14. The District Court further looked to the Supreme Court's decision in *Lamar v. United States*, 240 U.S. 60 (1916) where the Court "construed the term ["officer of the government"] to include members of Congress"; the Supreme Court later noting that "the issue was 'not a constitutional one' as "[the statute] [was] penal … [and] not to be narrowed by construction so as to fail to give full effect to its plain terms as made manifest by its text and context." *Nordean*, 2022 WL at *14 (quoting *Lamar*, 241 U.S. at 111 (1916)).

Notably, Defendant Forral points to 18 U.S.C. § 111 to assert that Congress purposefully differentiated between the terms "officer of the United States" and "employee of the United States," and asserts that if "officer of the United States" included "employees of the United States," Congress would not have done so. *See* ECF No. 245 at 7-8. However, § 111 refers to 18 U.S.C. § 1114 which uses the exact same term "any officer of the United States" as 18 U.S.C. § 372. In § 111, the term "any officer of the United States" is not read by courts as being limited to the Appointments Clause as Defendant Forral requests § 372 to be read in his motion as it would subvert the purpose of the statute. *See* e.g., *United States v. Acosta-Sierra*, 690 F.3d 1111, 1115 (9th Cir. 2012) (concluding that an illegal alien who threw a baseball-sized piece of jagged concrete in the direction of a CBP Officer was properly convicted of "assault on a federal officer" in violation of 18 U.S.C. § 111, not assault on a federal employee). Rather, it is a term that includes sworn federal law enforcement officers, including the victims in this matter who were seeking to perform their lawful duties.

To limit the phrase "officer of the United States" in 18 U.S.C. § 372 only to include those persons listed explicitly under the Appointments Clause would

render clauses [(2)], [(3)], and [(4)] inapplicable to the men and women of federal law enforcement who are sworn to uphold the Constitution and authorized by the United States government to prevent, detect, investigate, and enforce violations of federal criminal law in the federal districts where their duties are lawfully performed. To do so would hinder the purpose of the statute, which Defendant does not and cannot dispute is intended to protect federal officers from violent or threatening acts designed to interfere with such duties.

(1) (b) <u>The Indictment is Sufficient as a Matter of Law</u>

Defendant Forral complains that the indictment "fails to lay out the objects of conspiracies under clauses [(3)] and [(4)]. *See* ECF No. 245 at 8-10. 18 U.S.C. § 372 is a specific conspiracy statute. Unlike 18 U.S.C. § 371, which is a general conspiracy statute, 18 U.S.C. § 372 criminalizes a conspiracy (the agreement between 2 or more persons) to commit the specific elements of the statute, with each clause defining a discrete crime and the object of the crime.

Here, the Indictment presents even more information than is required. It provides an additional section giving overreaching objects to include the use of force and intimidation against the federal law enforcement officers, which would include acts to injure the officer in his person or property and to impede and thwart the processing and transport of the federal detainees. Such acts of force and intimidation are further detailed in the "Overt Section" of the indictment which lists specific instances of conduct[6].

---

[6] The charges in the indictment make it plainly clear that the indictment charges a conspiracy against federal law enforcement officers under [(1)(ii)], [(3)], and [(4)]. That additional victims and acts included in the "Objects of the Conspiracy" and 'Overt Acts' sections, specifically acts by the co-conspirators against state law enforcement officers with Spokane Police Department and the Sheriff's Department assisting the federal officers, are relevant to what occurred and part of the overarching objectives of the co-conspirators and several of the means and manner in which the co-conspirators committed the offenses charged.

United States' Response to Defendant's Motion to Strike – 13

Defendant Forral has had notice of the 14 federal officers and employees, who were occupants of the Cataldo building on June 11, 2025, including their respective agencies. Additionally, most if not all the federal officers and federal employees were interviewed and the reports of those interviews have been disclosed in discovery. Furthermore, the United States has requested FBI to make a list of the names of the 14 individuals in one document for defense, which will be disclosed in serial number 215 which further includes the serial numbers relating to the respective interviews of each person - names, reports and interviews all previously turned over in discovery. This is well beyond what the United States is required to do in a criminal prosecution when the previously disseminated discovery already includes such information and provided the interviews of victims and witnesses of an incident occurring on one day at one location.

Rule 12 of the Federal Rules of Criminal Procedure governs pleadings and pretrial motions. Fed. R. Crim. P. 12(b)(1). A defendant in a criminal case may move to dismiss an indictment or information before trial for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). In determining whether a charging document fails to state an offense, the question is "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sampson*, 371 U.S. 75, 76 (1962). In deciding a motion to dismiss under Rule 12, the "district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The court must also accept the facts alleged in the indictment as true. *Id.* "The indictment either states an offense or it doesn't." *Id.*

"[A] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence..." While a pretrial ruling might conserve judicial resources, the court is not

authorized to address what is essentially a Rule 29 motion for judgment of acquittal under the guise of Rule 12. *See United States v. Nukida*, 8 F.3d 665, 670 (9th Cir. 1993) ("Inasmuch as Nukida's arguments before the district court challenged the government's ability to prove that her actions affected commerce, her motion to dismiss amounted to a premature challenge to the sufficiency of the government's evidence tending to prove a material element of the offense."); *see also United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (finding that the court may not invade the province of the jury and decide by pretrial motion matters "of the general issue.").  The court's role is merely to determine whether the indictment is facially valid – the language used to charge, and not whether either party is entitled to judgment on the pleadings. *See e.g.*, *United States v. Titterington*, 374 F.3d 453, 457 (6th Cir. 2004).

An indictment must simply contain a plain and concise statement identifying the essential facts constituting the charged offense(s). *See* Fed. R. Crim. P. 7(c)(1). The Ninth Circuit has repeatedly recognized that this liberal pleading standard is satisfied where an indictment sets forth the charged offense using the words of the criminal statute itself. *See e.g., United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) ("In cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense."); *accord, United States v. Ely*, 142 F.3d 1113, 1120 (9th Cir. 1997) (*citing United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1992)). And the indictment need not set forth the specific means by which the defendant violated the statute. *See United States v. Haines*, 2017 WL 923921, at *1 (D. Nev. Mar. 8, 2017). An indictment need only set forth the elements of the offense charged in adequate detail to inform the defendant of the charge and enable him to plead double jeopardy. *United States v. Award*, 551 F.3d 930, 935 (9th Cir. 2009).

This language of the Indictment mirrors the elements of a violation of 18 U.S.C. § 372 and is more than sufficient to provide Defendant with notice of the crimes for which he is accused and allow him to plead double jeopardy at a later date. Defendant complains that he cannot ascertain who the injured party is and what the injury is or what property was damaged. *See* ECF No. 245 at 13. But the statutory language of the indictment and the specification of the time and place of the offense give him fair notice of the charge against which he would need to defend himself. Furthermore, the indictment actually provides a fulsome description of many of the acts he and his co-conspirators engaged in. It provides a list of the damaged property to include what was done to the white transport van and the red transport van, the items that were piled up against the exits and entrances to the facility to trap people inside, a summary of the actions taken at the south gate of the facility, including the assaults on federal officers at the gate, the actions at the white bus, and at the red bus, the social media posts including the call for more bodies to arrive to force capitulation and release of the detainees, the throwing of the incendiary device at local law enforcement coming to help the trapped federal officers, employees, and detainees at the facility. Against this mountain of specific, detailed evidence, it is difficult to see how Defendant can state in good faith that he is meaningfully unable to ascertain the acts for which he was charged or the persons who are alleged to be the victims.[7]

---

[7] The United States did not identify the federal officers by name or by initial in the indictment for safety reasons because this pleading is in the public record. Those persons are readily identifiable in the discovery in this case, and the United States has not refused to provide names to counsel to Defendant under the protective order issued by this Court. As stated, the United States will provide a report that has the list of the 14 individuals and their agencies. However, if the Court deems this insufficient, the United States intends to supersede on this matter and request the Court order that the names of the victims on the face of the indictment be redacted from the public record.

United States' Response to Defendant's Motion to Strike – 16

Furthermore, an indictment does not have to state every specific act in a charge where individually and cumulatively, those acts combined tend to prove the charged offenses, but where none alone is essential to the finding of guilt. *Borg*, 24 F.3d at 25 (further citation omitted) (holding that a charging instrument is not constitutionally defective if it states "the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against"). While the indictment here does not contain every detail of what Defendant Forral's and his co-conspirators did to commit the charged offenses, there can be no question of the exact crimes which he is alleged to have committed.

(2) The "Property" Element of 18 U.S.C. § 372 Includes Government Property in the Possession or Control of the Federal Officer

Defendant Forral alleges that the "property" under clauses [(3)] and [(4)] must be to the officer's personal property, such as his wallet, his personal cellular device, or his personal vehicle, and cannot include any property possessed by him belonging to the federal government used to execute his duties. In other words, it cannot be property belonging to the United States or contracted by the United States for government use possessed and used for official duties by the officer. Under this theory, if the officer's duty weapon is removed from him by a perpetrator to prevent him from discharging his duty, the statute would not apply because it was not his personally owned firearm but was issued to him by the federal agency for which he serves for law enforcement purposes. This reading of the statute is absurd considering purposes of the statute. The relevant portions of § 372 read:

> [(3)] to injure [an officer of the United States] in his person or property [i] on account of his lawful discharge of the duties of his office, or [ii] while engaged in the lawful discharge thereof, or [(4)] to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties.

18 U.S.C. § 372.

United States' Response to Defendant's Motion to Strike – 17

Defendant Forral cites an unpublished out-of-Circuit case, *United States v. Hopper*, 436 Fed. Appx. 414 (6th Cir. 2011) in support of this assertion. In *Hopper*, a government employee, a mail carrier, in a mail uniform, driving a mail truck, was robbed at gunpoint. The defendant took the mail carrier's personal cell phone and wallet. The defendant and his co-defendants had also robbed other civilians that day. The defendant was charged with violations of 18 U.S.C. §§ 111 and 372. On appeal, the defendant asserted that the prosecution was "required to prove that the object of the conspiracy was specifically to rob a federal officer …. [and] since all of the other victims robbed during the course of the conspiracy were not federal employees and no mail was stolen during the robbery of Schafer, the government failed to prove that he conspired with Ridley to injure, specifically, a federal employee in his person or property while he was engaged in official duties." *Hopper*, 436 Fed. Appx. at 425. The Sixth Circuit rejected the argument citing that the clause of § 372 for which the defendant was convicted "simply requires an intent to injure an individual in his person or property, that the individual is an officer of the United States, and that the injury is planned to occur while the individual is engaged in the lawful discharge of his duties … [and] the statute also says '*his* person or property,' not government property such as the mail." *Id.* citing § 372. Defendant Forral interprets the statement by the court to mean that any government property in the possession of the obstructed federal officer is excluded. That is a plainly incorrect interpretation of what the court held in *Hopper*. The *Hopper* court did not indicate that government property (had he been robbed of mail) is *excluded* but simply that the statute is not limited to government property such as mail; it is *his* property meaning the possessor of the property or property in his custody or control. If a person is robbed and that person has in their possession their work cellular device on his or person, that property is

United States' Response to Defendant's Motion to Strike – 18

not any less his or her property for the purposes of the taking.[8] The word "ownership" rightfully does not appear in the statute. The United States government is not a physical person who can possess its property in the sense that Defendant Forral imputes to the relevant clause. Interpreting § 372 in such a manner obviously circumvents the purpose of the statute, which is to criminalize actions that interfere with official duties of federal officers by injuring property in their possession or custody and control – whether it is the officer's personally-purchased property or it belongs to the United States and is in the possession or custody and control of the officer to aid him in the discharge of his duties.

---

[8] A better example familiar to most of the use of a possessive pronoun is a teacher saying to elementary school children, "Put your belongings in your desk". It does not mean that the student owns the desk; it is the property of the school possessed by the student as an enrolled student at the school. While he uses it, he is a possessor of the desk despite the school being the owner of the desk. The English word "his" is a possessive pronoun sometimes referred to as a possessive adjective. Cambridge English dictionary defines "his" as "belonging to or connected with a man, boy, or male animal that has just been mentioned or is known about." *His*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/his (last visited Mar. 14, 2026).  Moreover, the legal definition of possession is not ownership. *See United States v. Sellers*, 670 F.2d 853 (9th Cir. 1982) ("Under the common law, the person last in actual possession of property retains constructive possession until he abandons it, gives it to another person, or until another person otherwise acquires actual possession. 3 Wharton's Criminal Law, Larceny s 369 (1980); 50 Am.Jur.2d, Larceny s 22 (1970); 52A C.J.S. Larceny s 17 (1968)"). The settled principle of statutory construction is that absent contrary indications, Congress intends to adopt the common law definition of statutory terms. *See United States v. Shabani*, 513 U.S. 10, 14 (1994).

United States' Response to Defendant's Motion to Strike – 19

## CONCLUSION

For all the foregoing reasons, the United States respectfully submits that Defendant Forral's motion should be denied in its entirety.

Dated:  March 16, 2026

Todd Blanche
Deputy Attorney General


*s/ Lisa C. Cartier Giroux*
Lisa C. Cartier Giroux
Assistant United States Attorney

United States' Response to Defendant's Motion to Strike – 20

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

_s/ Lisa C. Cartier Giroux_
Lisa C. Cartier Giroux
Assistant United States Attorney

United States' Response to Defendant's Motion to Strike – 21