Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
Phone: (509) 747-9100
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAC DALITSO ARCHER, *et al.*,<br><br>Defendants. | No. 2:25-CR-00113-RLP-9<br><br>**DEFENDANT ARCHER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS INDICTMENT UNDER THE FIRST AMENDMENT**<br><br><u>**Motion Hearing:**</u><br>April 14, 2026, at 2:30 pm<br>Spokane, WA |

COMES NOW Defendant Jac Archer, by and through their counsel of record, and hereby submits the following Reply Brief in Support of Motion to Dismiss under the First Amendment of the Constitution of the United States.

This Indictment rests on a view of the First Amendment so profoundly wrong and dangerous that the Acting U.S. Attorney chose to resign rather than be complicit in this effort. The Court is asked to enforce existing caselaw and prevent further damage to our constitutional foundations.

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## I.    REPLY TO THE GOVERNMENT'S ARGUMENTS

The Government urges the Court to uphold this indictment under 18 USC § 372, relying on a comparison to *U.S. v. Payne,* where defendants were successfully prosecuted under the statute. Clarifyingly, the Government concludes and summarizes its analysis by quoting a portion of the *Payne* decision stating "Section 372 is straightforward: it prohibits individuals from conspiring to keep government employees from doing their jobs." (ECF No. 247 at p. 12, ll. 14-15, citing *United States v. Payne*, No. 216CR00046GMNPAL, 2017 WL 8941311, at *4 (D. Nev. Jan. 3, 2017).) The Government presents this quote as precedent for a bright line rule allowing it to prosecute, under Section 372, anyone who impedes the ability of government employees to do their jobs.

The Government then provides a helpful instruction manual for what it considers permissible protester conduct, laying bare its purpose to regulate, proscribe, and deter speech and conduct it deems inappropriate through criminal prosecution. (ECF No. 247 at p. 11.) According to the Government, protesters are free to protest across the street from or alongside a federal facility but may not do so in front of a bus. (*Id.*) They are free to express "opinions online, in newspapers, or pretty much anywhere" as long as such expression "does not invite crowds," which may restrict the physical movement of officers, and thus impede them in their duties. (*Id.*) Protesters may "yell and hold signs" so long as doing so does not disrupt traffic or the ability of law enforcement to do their job. (*Id.*) In summary, the Government instructs that a person engaging in any behavior that

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 2

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

impedes the work of federal employees in any way may be prosecuted under Section 372. (*See id.*)

The fatal flaw in the Government's position—and in the Indictment itself—is that its interpretation of Section 372 is unequivocally and demonstrably false.

The Government seems to believe that the *Payne* Court held Section 372 "prohibits individuals from conspiring to keep government employees from doing their jobs." (ECF No. 247 at p. 12.) The Court did no such thing. While the *Payne* opinion includes the quoted language, it is not stating the Court's holding but rather a summary of *the position taken by the Government* in that case. *Payne*, 2017 WL 8941311, at *4. The Court's actual reasoning did not adopt this position and instead recognized limiting principles that must be applied for a prosecution under Section 372 to pass constitutional muster:

> Although § 372 itself does not contain limiting language, **well-established legal principles appropriately limit the statute's sweep**. For example, the Ninth Circuit has limited threat statutes to true threats. See, e.g., *Bagdasarian*, 652 F.3d at 1116; *Hanna*, 293 F.3d at 1084. Additionally, § 372 is a conspiracy statute that requires proof of a defendant's intent to prevent a federal officer from discharging his or her duties by **force, threat, or intimidation**. See, e.g., 9th Cir. Model Crim. Jury Instructions 8.20 "Conspiracy—Elements" (2010 ed.) (updated Dec. 2016). Thus, **a defendant may not be convicted of this offense simply because a federal officer subjectively felt threatened**.

*Id.* at *7 (emphasis added). The *Payne* Court held the prosecution to be constitutional only after finding that the allegations in the indictment, if proven, would not violate the First Amendment. *Id. Payne* was a perfect exemplar of an appropriate and constitutional use of Section 372: the indictment alleged armed

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 3

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

gunmen planned together in advance, took sniper positions behind concrete barriers, and aimed their assault rifles at federal officers: an unquestionable use of force, intimidation, and/or threat. *Id.* at *2.

The present case could not be further from the facts in *Payne* or, indeed, any prior constitutional prosecution under Section 372. While prior prosecutions under this statute have all involved true threats of bodily harm or actual physical force employed against federal officers, none of this is even alleged in the present conspiracy charge. To compensate, the Government tries to move the goalposts and redefine the statute to criminalize any actions that "keep government employees from doing their jobs." The Government's need to redefine the statute is a tacit admission that it has not brought a constitutional case under Section 372.

This is not to say that none of the conduct alleged in the Indictment could be considered illegal. The distinction between potentially illegal acts and acts specifically violative of Section 372 is important, as the Government attempts to conflate every illegal action with physical force, threat, and intimidation. Failure to disperse, trespassing, and vandalism are indeed against the law (and if the Government had only brought these charges the present Motion would never have been made) but they do not meet the standard of what must be alleged for charges under Section 372 to meet constitutional muster. If they did, virtually all activities protesting federal actions could be considered federal felonies. Picketing, sit-ins, distributing pamphlets, loud speeches, and harsh criticism can all interfere with an employee's productivity. Even a midsized gathering of people protesting outside a federal building could be deemed felonious where crowds no longer fit

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 4

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

on the sidewalk, cause excessive noise, or worry federal employees who do not wish to enter or exit into a throng of unhappy people. Some protesters may hope or intend their protest to cause the government to alter its behavior. But coercion, pressure, and obstruction do not equate to physical force, nor do they lose First Amendment protections. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S. Ct. 1575, 1578 (1971) ("The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment.")

Instead of using a surgical approach to hold to account those who engage in vandalism while preserving the intent of the First Amendment, the Government brings felony charges against people who engaged in nonviolent protest—a blunt instrument that assaults the First Amendment and deters its exercise.

Next, the Government responds to a strawman argument, in which it rebuts an imagined Rule 29 motion. This is a distraction. Defendant does not bring this motion under Rule 29. Defendant does not ask the Court to decide any contested facts prior to trial. While Defendant has pointed to undisputed facts and evidence for context regarding the day of the protest and the Government's larger effort to stifle dissent, they do not ask the Court to invade the province of the jury. On the contrary, Defendant has repeatedly invited the Court to accept all the allegations in the Indictment as true, then evaluate those allegations against binding precedent that directly applies here. While the Government would apparently prefer that the Court leave these tasks to the jury, the "regulation of First Amendment rights is

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 5

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

always subject to exacting judicial review." *Citizens Against Rent Control/Coal. for Fair Hous. v. Berkeley*, 454 U.S. 290, 294, 102 S. Ct. 434, 436, (1981).

## II.    RESPONSE TO THE GOVERNMENT'S OMISSIONS

As telling as what the Government says is what it does not say. While it responds to the second argument made in this Motion regarding the definition of "force, threat, or intimidation," it wholly ignores the first argument, which points out the violation of the right to association when protesters are categorized as coconspirators. This is likely due to the Government's inability to identify a single legal authority that permits conspiracy charges to rest on nothing more than participation in the same protest.

Defendant has presented binding Ninth Circuit and Supreme Court caselaw that explicitly prohibits efforts to establish guilt by association or membership in the same group (even if some group members engage in illegal conduct) and will not belabor the point here. (*See* ECF No. 242 at pp. 13-16.) The Supreme Court leaves no doubt that the Government must not infringe on the critical freedom of association, stating: "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170 (1958). A concise and definitive summation was made by Chief Justice Burger: "There are, of course, some activities, legal if engaged in by one, yet illegal if performed in concert with others, but political expression is not one of them." *Citizens Against Rent Control*, 454 U.S. at 296.

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 6

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

The Supreme Court's directives are directly applicable to this case. The Government posits that arriving at a protest announced on social media is sufficient to make people coconspirators. (ECF No. 1 at p. 3.) Indeed, the Government *explicitly says that it is a crime to invite people to join in a protest* because the *crowd itself* may impair the job performance of government employees. (*See* ECF No. 247 at p. 11 ("Defendants and others are free to express their political or other opinions online, in newspapers, or pretty much anywhere as long as it does not invite crowds of people to physically restrict the movement of officers[.]").) This terrifyingly wrong interpretation is the only factual predicate for the conspiracy charge.

Even if we assume that everyone who attended the protest did so at the request of Stuckart and intended to join him in sitting in front of the bus, the idea that this could lead to felony conspiracy charges is chilling. The social media call to action is perhaps the most common form of civil protest in use today and may be observed online almost daily. Sometimes these calls include invitations to passive civil disobedience—such as a sit-in or lie-in in front of a government building or vehicle—to garner more attention, demonstrate conviction, and perhaps cause enough disruption to government operations that policymakers rethink their course of action. This is as integral to democracy as voting. Throughout history, it has been commonly known and constitutionally permissible for those engaged in civil disobedience to face misdemeanor charges for failing to disperse, refusing lawful orders, and the like. But if prosecutions like

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 7

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

the present one are allowed to proceed, citizens will—for the first time in known history—face felony conspiracy charges simply for showing up.

How could any citizens feel safe attending future protests, knowing that they could be held criminally liable for the actions of other protesters? Given that all protests are fluid, dynamic, and often decentralized (as this one was), how could any person feel confident that they would not face arrest and felony prosecution, even if they did nothing but hold a sign or sit in front of the building, because someone else threw a rock? Or because a government worker was distracted by or felt worried about the size of the crowd? The answer is clear: they could not feel safe. Many people would have no choice but to stay home.

The Government also seems to forget that under our Constitution, all governmental power ultimately rests with the people. Consistent with this bedrock principle, the people of Spokane had every right and duty to peacefully but forcefully oppose the illegal arrest and incarceration of two legal residents, without due process. *See Rodriguez Torres v. Noem et al.,* 2:25-cv-02697, 2026 WL 234076 (W.D. Wash. Jan. 29, 2026). The administration continues to unlawfully detain scores of people while flouting hundreds of court orders to release them. *Juan T.R. v. Noem,* No. 26-CV-0107 (PJS/DLM), -- F. Supp. 3d --, 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026) (identifying 210 court orders that ICE has violated in 143 cases since January 1, 2026). It is perhaps because of its ongoing illegal conduct that the Government feels the need to force public compliance and deference through the justice system. But citizens have every right to demand that the Government abide by the Constitution.

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 8

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

### III.    "GO BIG AND GO LOUD"

The unconstitutional intent behind this prosecution is evident not just from its flimsy allegations but also the astoundingly abnormal context in which it was brought. The present administration has ordered all U.S. Attorneys' offices to charge protesters pursuant to National Security President Memorandum 7[1], which "portrayed protesters as left-wing terrorists and pushed for serious charges to be filed, often over actions that defense lawyers say are protected by the First Amendment." (Wagley Reply Decl., Ex. A at p. 2.) A top DOJ official instructed that "coordinators" in U.S. Attorneys' offices should be "hounding" federal agents to make cases and suggested the DOJ wanted headlines along with indictments, commanding: "Go big, and go loud." (*Id.* at pp. 1-2)

The *Times* reporting specifically referenced this prosecution as part of this effort. Richard Barker, the former Acting U.S. Attorney for EDWA, confirmed that he resigned specifically to avoid signing the present Indictment, stating: "I knew there was no place for me in the Justice Department if I was being asked to bring felony charges against these protesters in a way that would compromise my integrity. . . . **This was not an organized conspiracy, it was a protest where people were exercising their free-speech rights**." (*Id.* at p. 3 (emphasis added).)

The Government denies the relevance of the national context to this prosecution, and even the relevance of Mr. Barker's resignation, suggesting that the U.S. Attorney's Office did what it always does when investigating this case

---

[1]https://www.whitehouse.gov/presidential-actions/2025/09/countering-domestic-terrorism-and-organized-political-violence/

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 9

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

and bringing charges. (ECF No. 247 at p. 14.) But U.S. Attorneys do not resign in protest to avoid signing indictments in routine prosecutions. Indeed, U.S. Attorneys normally have authority over indictments that issue from their offices and would have no reason to resign unless someone higher ranking than the U.S. Attorney—*i.e.*, high in the Department of Justice—overruled the U.S. Attorney and demanded prosecution. In a routine prosecution, the pleadings filed by the Government would list the United States Attorney in the header and signature line. Here, the Government's response shows there is no United States Attorney for the Eastern District of Washington and this prosecution is being directed by Deputy Attorney General Todd Blanche.

The national trends visible in other districts are thus highly relevant to this case. Courts have historically afforded the government a "presumption of regularity" that gives deference to government officials and agencies and presumes they properly discharge their duties and act with procedural regularity pursuant to bona fide, non-pretextual reasons. (*See* GOODMAN, RYAN, ET AL. *The "Presumption of Regularity" in Trump Administration Litigation (4th edition) (2026)*, available at https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/ (last visited March 27, 2026).) The misrepresentations, unlawfulness, and defiance of the current DOJ have, tragically, led dozens of federal courts to conclude that the presumption of regularity is dead. (*See id.*)

When a case is brought and maintained by the very same DOJ that has been repeatedly caught lying in courtrooms across the country, on behalf of the same

Defendant Archer's Reply ISO Motion to Dismiss Indictment—Page 10

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

ICE agency that continues to illegally detain thousands of people in defiance of hundreds of court orders, it is entirely appropriate to consider the broader context and motives. This is particularly true when the Government insists on indicting political opponents based on a novel and incorrect interpretation of a statute, over the objections of its own acting U.S. Attorney.

## IV.    CONCLUSION

While it is unusual for a court to grant the relief requested, these are unusual times.  The is no known precedent for a presidential administration to order the Department of Justice to "go big and go loud" in prosecuting peaceful demonstrators. When the Government declares that it can treat all protesters as coconspirators and that it is a crime for crowds to become too large, it is not hyperbolic to recognize that democracy itself is in peril. Indeed, the former acting U.S. Attorney—like countless other federal prosecutors—gave up his career to sound the alarm on the urgent threat this prosecution poses to our fundamental freedoms. The Court is asked to fulfill its indispensable constitutional role, step into the breach, and preserve the integrity of our founding document.

RESPECTFULLY SUBMITTED this 27th day of March, 2026.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By:  /s/ **Andrew M. Wagley**
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
*Attorneys for Defendant Jac Archer*

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 11

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 27th day of March, 2026 in Spokane, WA.

By: __/s/ **Jodi Dineen**_____
Jodi L. Dineen, Paralegal

Defendant Archer's Reply ISO Motion to
Dismiss Indictment—Page 12

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100