Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA  99201
Phone: (509) 747-9100
Email: carl@ettermcmahon.com
Email: awagley@ettermcmahon.com
*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAC DALITSO ARCHER, *et al*., <br><br> Defendants. | No. 2:25-CR-00113-RLP-9 <br><br> **DEFENDANT'S RESPONSE TO UNITED STATES' MOTIONS *IN LIMINE*** <br><br> <u>Pretrial Conference:</u> <br> May 5, 2026 at 10:30 am <br> Spokane, Washington |

Defendant Jac Dalitso Archer, by and through their counsel of record, hereby submits the following Response to the United States' Motions *in Limine*:

**United States' Motion *in Limine* Re: Exclusion of Irrelevant Material**

The United States' Motion *in Limine* Re: Exclusion of Irrelevant Material focuses on relevancy. "Evidence is relevant if: (a) it has any tendency to make a

Response to United States'
Motions *in Limine*—Page 1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The United States Constitution "'guarantees criminal defendants a meaningful opportunity to present a complete defense.'" *United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013) (quoting *United States v. Stever,* 603 F.3d 747, 755 (9th Cir.2010)). The right to present a defense includes "the right to present the defendant's version of the facts," and also "to put before a jury evidence that might influence the determination of guilt." *Evans*, 728 F.3d at 959. Similarly, "exclusion of evidence offered by the defendant in a criminal prosecution under Rule 403 is 'an extraordinary remedy to be used sparingly.'" *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015) (quoting *United States v. Mende,* 43 F.3d 1298, 1302 (9th Cir. 1995)).

Defendant Archer is charged with one count of Conspiracy to Impede or Injure Officers in violation of 18 U.S.C. § 372. The Government is required to prove beyond a reasonable doubt: "(1) a conspiracy existed, (2) the [defendant] voluntarily entered into the conspiracy, and (3) the members of the conspiracy conspired to prevent by force, intimidation or threat, an officer of the United States from discharging her [or his] duties." *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010). Furthermore, § 372 includes both a subjective intent

Response to United States'
Motions *in Limine*—Page 2

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

and objective standard: (1) "the speaker or actor must intend his or her words or conduct to intimidate or to be a threat," and (2) "those words or conduct [must be] such that a reasonable person hearing or observing them would foresee that they would be interpreted as a serious expression of intent to harm or assault." *United States v. Ehmer*, 87 F.4th 1073, 1120-21 (9th Cir. 2023) (italics removed).

Defendant Archer responses to the United States' Motions *in Limine* Re: Exclusion of Irrelevant Material (ECF Bo. 262) as follows:

## 1. **First Amendment and Other Constitutional Challenges[1]**

For the Government's first Motion *in Limine*, it argues that "[n]o witness in the case should be able to testify and no lawyer should be able to argue that any alleged criminal conduct in this case is protected by the First Amendment." (ECF No. 262 at p. 4.)  In this vein, the Government argues:

> Constitutional analysis is complex, and requires analysis of case law and reasonable time, place, and manner restrictions and other specific legal considerations. . . .  Thus, such analysis is properly considered in front of a judge, who can evaluate the case law and do the necessary legal research to make a property conclusion.

(*Id*. at pp. 3-4.)  Although application of the First Amendment is an issue of law, the Government's request goes too far.

---

[1] For ease of reference, Defendant Archer copies the numbering and formatting of the United States' Motions *in Limine*.

Response to United States'
Motions *in Limine*—Page 3

The Court is the sole decisionmaker regarding whether application of a law violates the First Amendment. *See United States v. Lincoln*, 403 F.3d 703, 706 (9th Cir. 2005) ("Constitutional facts are facts—such as . . . whether a statement is a true threat—that determine the core issue of whether the challenged speech is protected by the First Amendment."). Nevertheless, in determining a "constitutional fact" surrounding speech, the Court must consider "the entire factual context of the defendant's statements," including "the surrounding events, the reaction of the listeners, and whether the words are expressly conditional." *United States v. Hanna*, 293 F.3d 1080, 1087 (9th Cir. 2002). Furthermore, "a state of mind is involved in every crime and evidence which is relevant to proof of the intent to do the criminal act is always admissible." *United States v. Angelini*, 607 F.2d 1305, 1310 (9th Cir. 1979). This is particularly true in cases involving the First Amendment and a defendant's subjective intent behind statements. *See, e.g., United States v. Glaub*, 910 F.3d 1334, 1341-42 (10th Cir. 2018) (noting "the first amendment issue hinged on [defendant's] state of mind" and defendant was allowed to argue surrounding circumstances to jury); *United States v. Turano*, 802 F.2d 10, 12 (1st Cir. 1986) ("Evidence of a person's philosophy, motivation and activities as a tax protestor is relevant and material to the question of intent."); *United States v. Hunt*, 534 F.

Supp. 3d 233, 245-46 (E.D.N.Y. 2021) (text message regarding 2020 "rigged election" were "relevant to the subjective-intent element" of whether defendant "intended 'to impede, intimidate, or interfere with [Congress] while engaged in the performance of official duties'" pursuant to 18 U.S.C. § 115(a)(1)(B)).

As alleged in the Indictment, Co-Defendant Ben Stuckart publicly posted on Facebook that he was the legal guardian of a young asylum seeker who was illegally arrested at his ICE check-in and called on "others to come and join him as he blocked a bus designated to transport all of the federal detainees in the facility to Tacoma, Washington for their immigration hearings." (ECF No. 1 at 3.) The Indictment further alleges that Jac Archer and other co-conspirators "arrived in response to the call" from Stuckart to sit in front of a bus. (*Id.*) The Indictment states that Defendant Archer "posted on social media a call for others to come and join noting the intent was to 'risk arrest to block the exits to ICE.'" (ECF No. 1 at 5.) This social media post states in full:

Response to United States'
Motions *in Limine*—Page 5

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100



(ECF No. 243 at p. 8.) The Indictment conspicuously and misleading omits the clearly stated intention of the call to action, which was to "WAIT OUT ICE" so that ICE may choose to "FREE THIS MAN." (*Id.*)

Here, the application of the First Amendment to 18 U.S.C. § 372 is an issue of law for the Court. The jury should not be instructed to apply the facts to determine if a First Amendment violation occurred. However, that does not prohibit Defendants from arguing their subjective intent, state of mind, and reasons for attending the June 11, 2025 protest. This is relevant to not only the subjective intent and objective standard under § 372, but provides context for the entirety of the events that unraveled. This would include, but not be limited

Response to United States'
Motions *in Limine*—Page 6

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

to, context of the above-referenced posts, statements made at the protest, and why the Defendants responded to the "call for action."

### 2. **Richard Barker**

Next, the Government argues that former Acting U.S. Attorney Rich Barker "should not be called as a witness to opine that his opinion is that the Defendants did not conspire." (ECF No. 262 at p. 5.)  Ninth Circuit law clearly provides that "[a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence." *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990); *United States v. Alonso*, 48 F.3d 1536, 1540 (9th Cir. 1995).  As this rule is equally applicable to the Government and Defense, Defendant Archer does not intend on call former acting U.S. Attorney Rich Barker as a witness at this juncture.

### 3. **Department of Justice Policy or Internal Guidance**

For its next Motion *in Limine*, the Government moves to exclude "efforts by DOJ to prosecute protestors or prioritize certain cases." (ECF No. 262 at p. 7.)  Under the "course of investigation" hearsay exemption, "out-of-court statements offered to explain the course of an investigation are not hearsay, provided the course of an investigation is relevant to a party's case." *Patterson v. Miller*, 451 F. Supp. 3d 1125, 1141 (D. Ariz. 2020), *aff'd,* 2021 WL 3743863

Response to United States'
Motions *in Limine*—Page 7

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

(9th Cir. 2021); *accord United States v. Johnson*, 875 F.3d 1265, 1279 (9th Cir. 2017) (finding out-of-court statements were relevant to rebutting the defendant's argument that the police "were sloppy and had no reason to investigate" his property); *see also United States v. Cawley*, 630 F.2d 1345, 1350 (9th Cir. 1980) ("[T]he court may admit such evidence of tips . . . to explain why an officer conducted an investigation as he did."). In this vein, "Courts generally allow overview testimony to the extent it concerns how an investigation began, the law enforcement agencies involved, or the investigative techniques used." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). Investigation overview evidence is helpful "[i]n order to aid the jury" via an explanation "why officers and agents began their investigation and to explain their subsequent activity." *United States v. Johnson*, 934 F.2d 936, 942 (8th Cir. 1991); *accord United States v. Lacerda*, 958 F.3d 196, 208 (3d Cir. 2020) ("An officer who is familiar with an investigation or was personally involved may tell the story of that investigations—how the investigation began, who was involved, and what techniques were used.").

Here, DOJ policies and practices regarding the prosecution of protestors is highly relevant to explain the course of the investigation. Absent information, the Jury will only hear one-side of the story from the Government regarding the

Response to United States'
Motions *in Limine*—Page 8

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

general investigation course and why it was started.  This information is highly relevant for the Jury to hear a complete picture.

**4.  References to Minnesota or Other National Immigration Protests**

Next, the Government moves to exclude "recent immigration enforcement events in Minnesota or other parts of the country, including shootings or other acts by officers involved in immigration enforcement."  (ECF No. 262 at p. 9.) In this vein, the Government argues that "conduct by different law enforcement officers, in different areas of the country, working different investigations with specific orders in different circumstances, facing different dangers and having different concerns have zero bearing on this case." (*Id.* at p. 10.)

As indicated above, the right to present a defense includes "the right to present the defendant's version of the facts," and also "to put before a jury evidence that might influence the determination of guilt."  *Evans*, 728 F.3d at 959.  Evidence of political and newsworthy events is clearly relevant to the extent such evidence relates to a defendant's state of mind during the alleged criminal conduct.  *See, e.g., United States v. Justus*, 162 F.4th 962, 967-68 (9th Cir. 2025) (social media evidence regarding anti-government ideology admissible as it "tended to make [defendant's] intent to commit the crime more probable"); *Hunt*, 534 F. Supp. 3d at 245-46 (text messages regarding 2020

Response to United States'
Motions *in Limine*—Page 9

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

"rigged election" were "relevant to the subjective-intent element" of crime); *United States v. Mostafa*, 16 F. Supp. 3d 236, 256 (S.D.N.Y. 2014) ("the evidence that the defendant knows of bin Laden and approves of him is highly probative of his state of mind with respect to charged conduct"); *United States v. El–Mezain,* 664 F.3d 467, 509–10 (5th Cir. 2011) (holding that material seized from the defendant, "including images of violence and videos glorifying Hamas and depicting Hamas leaders, was probative of the motive or intent of the [defendant] to support Hamas"); *United States v. Jayyousi,* 657 F.3d 1085, 1108 (11th Cir. 2011) (televised interview with Osama bin Laden was properly admitted as "state of mind evidence"); *United States v. Abu–Jihaad,* 630 F.3d 102, 133–34 (2d Cir. 2010) (affirming conclusion that "pro-jihadist contents of the videos were relevant to understanding [the defendant's] motive and intent").

Although the typical context of these cases hold that political and newsworthy events can be used to the defendant's detriment as evidence of guilt, pursuant to the right to present a defense such evidence plays a more crucial role to show defendants' state of mind regarding the "call to action," freedom of expression, and intent / goals behind the June 11, 2025 protest. *See id*. As such, evidence of immigration enforcement—as well as associated acts of officers—is relevant to the state of mind of the June 11 protestors.

Response to United States'
Motions *in Limine*—Page 10

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

From a practical perspective, current events regarding immigration enforcement will surely be a component of jury selection and *voir dire* in this matter. This information is necessary to expose potential juror biases.

## 5. <u>Deportation Proceedings</u>

Next, the Government argues that "[w]hether or not any one of the detainees was ultimately deported, chose to self-deport, were released, or any number of other possible outcomes has no bearing on Defendants' actions on June 11, 2025." (ECF No. 262 at p. 12.) However, the Government further acknowledges: "The protest on June 11th, 2025 began when co-defendant Ben Stuckart accompanied Cesar Alvarez Perez and Joswar Rodriguez Torres to the HSI building for their check-in." (*Id.* at p. 11.) The United States District Court for the Western District of Washington concluded that the detainees were summarily arrested and detained in violation of the Fifth Amendment's Due Process Clause and the Administrative Procedures Act. *Rodriguez Torres v. Noem et al.,* 2:25-cv-02697, 2026 WL 234076 at *1-4 (W.D. Wash. Jan. 29, 2026). [1]

"'A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without

---

[1] The ruling only applies to Mr. Rodriguez Torres because Mr. Alvarez Perez chose to self-deport rather than remain in detention for an indeterminate period.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'" *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (quoting *United States v. Moore,* 735 F.2d 289, 292 (8th Cir.1984)).  That is, "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid of understanding." Fed. R. Evid. 401, *Advisory Committee Notes*.

First, the illegal detention of Messrs. Alverez Perez and Rodriguez Torres is central to the "call to action," the reason behind the protest, and intertwined with the events that unfolded on June 11.   Second, the outcome of the immigration proceedings that sparked the protest is highly probative to present the complete picture and necessary to avoid juror confusion and speculation. The entire purpose of the June 11 protest was predicated upon the illegal detention of Messrs. Alverez Perez and Rodriguez Torres.

## 6. Jury Nullification

Finally, Defendant does not intend on improperly arguing jury nullification.  However, the Government's overly-broad definition should not prevent the Defense from presenting legitimate arguments to the jury. *See, e.g., United States v. Lynch*, 903 F.3d 1061, 1079 (9th Cir. 2018) (approving jury instruction providing: "As a . . . juror, you cannot substitute your sense of

Response to United States'
Motions *in Limine*—Page 12

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

justice, whatever it may be, for your duty to follow the law, whether you agree with the law or not, it is not your determination whether the law is Justi or when a law is unjust.").

## United States' Omnibus Second Motion *in Limine*

Defendant Archer responds to the United States' Omnibus Section Motion *in Limine* (ECF No. 264) as follows:

1. **Prohibiting Reference to Failure to Charge Other Members of the Conspiracy**

First, the Government indicates "[t]he Court should preclude argument that the United States failed to charge other members of the conspiracy as it is advocation for jury nullification in that the United States has committed selective prosecution and/or violated a federal constitutional or statutory right of Defendants, which is a decision for the Court." (ECF No. 264 at p. 2.) Defendant does not intend on presenting such a theory to the jury.

2. **Prohibiting Reference to Plea Negotiations in This Matter, or the Terms and/or Negotiations of Disposition or Plea Agreement Made with Other Charged Co-Conspirators or Defendants**

Next, the Government "requests the Court to prohibit reference to plea negotiations, or the terms and/or negotiations of disposition or plea agreements made with other charged co-conspirators or with Defendants." (ECF No. 264 at

Response to United States'
Motions *in Limine*—Page 13

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

p. 3.)  Defendant agrees and has a similar Motion *in Limine* to this effect.  (ECF No. 265; ECF No. 272.)

### 3. <u>Excluding Evidence of Purported Good Conduct of a Defendant Under Fed. R. Evid. 404(a) and 405</u>

In the Government's next Motion *in Limine*, it argues that evidence of a Defendant's good character is barred by Fed. R. Evid. 404(a) and Fed. R. Evid. 405(b).  (*See* ECF No. 264 at pp. 3-4.)  In its erroneous classification of character evidence, the Government includes evidence that Defendant Mavalwalla "is a veteran and in the past served in Afghanistan" and evidence that Defendant "Previously provided acts of community service."  (*Id*. at p. 4.)

Pursuant to Fed. R. Evid. 404(a)(1), "[e]vidence of a person's <u>character or character trait</u> is not admissible to prove that on a particular occasion the person acted in accordance with the <u>character or trait</u>."  However, "[t]estimony limited to the <u>defendant's background</u> . . . is <u>not sufficient to put the defendant's general character at issue</u>."  *United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir. 1988) (testimony regarding defendant's childhood was general background information, which did not put his character at issue); *accord United States v. McLister,* 608 F.2d 785, 790 (9th Cir. 1979) (defendant did not put his general character at issue in his drug trial when his counsel told the jury the defendant was well-off, from a privileged background, had no need to enter into an illegal

Response to United States'
Motions *in Limine*—Page 14

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

business, and intended to go into a legitimate business); *see also Trial Objections Handbook 2d § 2:8* (Westlaw database updated September 2025) ("Specific acts of conduct are not admissible to show character, though to a limited extent the defendant's attorney is entitled to introduce some 'background' about such matters as the defendant's occupation, education, family, and military service.").

"A defendant puts his character at issue when he offers testimony as to honesty or his good reputation." *Gillespie*, 852 F.2d at 479. Character evidence under Fed. R. Evid. 404(a)(1) must be distinguished from evidence of the defendant's background, which is admissible to let the Jury know the defendant. *See, e.g., State v. Bowers,* 545 P.2d 303, 305 (Kan. 1976) (background information includes "data such as place of birth, education, length of residence in the community, length of marriage, size of family, occupation, place of employment, [and] service in armed forces"). This is consistent with the concept that character evidence is generally elicited by virtue of "testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a).

Response to United States'
Motions *in Limine*—Page 15

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Background evidence regarding Defendant's education, work experience, occupation, length of time in the community, and general life experiences is admissible to show the Jury who they are.

**4. <u>Excluding Testimony of Undisclosed Expert Witnesses and Any Expert Witness for Which Defendant Does Not Comply With Fed. R. Crim. P. 16(b)(1)(C)</u>**

Defendant does not have any Expert Witnesses in this matter, whether disclosed or undisclosed. The Court previously set the Fed. R. Crim. P. 16 discovery cutoff as March 27, 2026. (*See* ECF No. 238 at p. 3.) All remaining Pretrial Motions, including *Daubert* Motions, were due April 13, 2026. (*Id.*) On April 16, 2026, the Government disclosed "Digital Forensic Examiner Special Agent" Kevin Loader "out of an abundance of caution." (ECF No. 269 at p. 1.) According to the Government, "SA Loader will testify that he extracted data from Defendants' phones, i.e. performed a 'phone dump'" and "then provided data to case agents." (*Id.* at p. 2.)

Rule 701 of the Federal Rules of Evidence governs the admission of opinion testimony by lay witnesses, and requires that such testimony be limited to opinions "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Instead, such opinions must be proffered as expert testimony which falls under the ambit of Rule 702.

Response to United States'
Motions *in Limine*—Page 16

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

*See* Fed. R. Evid. 702.  Rule 701 was specifically "amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701, *Advisory Committee Notes*.  On the other hand, "[a]n expert may be qualified to give expert testimony by 'knowledge, skill, experience, training, or education,' Fed. R. Evid. 702, which need only exceed 'the common knowledge of the average layman.'"  *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (further noting "[t]his standard is 'liberal'") (quoting *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)).

Even "knowledge that is ordinary among their law enforcement colleagues" is properly the subject of Rule 702 testimony, and "[m]any people who have received the same training and experience will have the same specialized knowledge beyond the jury's common knowledge of a topic." *Holguin*, 51 F.4th at 854.  In other words, "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (holding that "testimony based on the . . . training, and experience of the witness" is properly characterized as expert testimony under Rule 702).

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

As held in *United States v. Daniels*, 652 F. Supp. 3d 1191, 1194 (S.D. Cal. 2023):

> Because training and therefore specialized knowledge beyond the common knowledge of the jury was required to operate, obtain, and interpret data using Cellebrite, the Government's lay witness may not testify as to the general use and purpose of Cellebrite or how it was used in the course of their investigation to extract data, including the inputs or outputs of the program. Accordingly, the Government may not introduce any evidence obtained from the Cellebrite extraction, such as images or other data.

The same conclusion should be applicable in the situation at hand.

### 5. <u>Prohibiting Reference to Failure to Call Equally Available Witnesses</u>

Under the equally available witness doctrine, "[t]he determination of the question of equal availability depends upon all the facts and circumstances bearing upon the witness's relation to the parties and not merely upon his physical presence at trial or accessability [sic] for service of a subpoena." *Kean v. Comm'r*, 469 F.2d 1183, 1188 (9th Cir. 1972). That is, "[t]he potential witness must be equally available both legally and practically." *Kean*, 469 F.2d at 1188. Defendant does not intend on invoking this doctrine so long as the witness is actually "equally available."

### 6. <u>Prohibit Reference to Any Collateral Consequences of Conviction</u>

Pursuant to the applicable law, Defendant does not intend to argue punishment or the collateral consequences of a conviction to the Jury.

Response to United States'
Motions *in Limine*—Page 18

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

**7. <u>Prohibiting Reference By Any Counsel for a Defendant of Their Prior Position as a Prosecutor, Specifically as an AUSA, Their Title or Rank, or Opinions or Arguments Drawing Refence to That Prior Position as Authority or Experience</u>**

Neither counsel of record for Defendant Archer previously worked as a Prosecutor or an Assistant United States Attorney ("AUSA").  "As a general rule, a prosecutor may not express his [or her] opinion of the defendant's guilt or his [or her] belief in the credibility of government witnesses."  *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993); *accord United States v. Young*, 470 U.S. 1, 8 (1985) ("[I]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.").  The crux of this Motion *in Limine* should apply equally to the Government.

RESPECTFULLY SUBMITTED this 20th day of April, 2026.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By:  /s/ Andrew M. Wagley
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
*Attorneys for Defendant Archer*

Response to United States'
Motions *in Limine*—Page 19

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 20th day of April, 2026 in Spokane, WA.

By:   /s/ Andrew M. Wagley
         Andrew M. Wagley

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100