

Andrea K. George
Executive Director
601 W. Riverside Ave., Suite 900
Spokane, Washington 99201
509.624.7606
Attorney for Justice Forral

## UNITED STATES DISTRICT COURT
## HONORABLE REBECCA PENNELL

| | |
|---|---|
| United States of America, | No. 2:25-cr-00113-RLP |
| Plaintiff, | |
| v. | Motion to Dismiss for Selective Prosecution |
| Justice Forral, | |
| Defendant. | May 5, 2026 @ 10:30 a.m. With Oral Argument |



4 NEW YORK · 8d

Justice Department moves to toss seditious conspiracy convictions of Oath Keepers and Proud Boys

The request by the Justice Department would go a step further and erase all the conviction...

*Re: Motion to vacate  filed April 14, 2026*

## "Justice must satisfy the appearance of justice."

*Offutt v. United States*, 348 U.S. 11, 14 (1954).

Justice Forral moves this Court to dismiss the Indictment based on selective prosecution in violation of the Equal Protection clause of the Fifth Amendment.[1] The principle that justice must satisfy the appearance of justice is not merely aspirational – it is a constitutional mandate that prohibits prosecutorial decisions based on impermissible grounds such as race, religion, political affiliation, or the exercise of constitutional rights.

> In the months leading up to the attack on the U.S. Capitol on January 6, 2021, there were reported efforts to organize large groups of protesters to travel to Washington, D.C. to dispute the outcome of the 2020 presidential election. Over the course of about 7 hours, more than 2,000 protesters entered the U.S. Capitol on January 6, disrupting the peaceful transfer of power and threatening the safety of the Vice President and members of Congress. The attack resulted in assaults on at least 174 police officers, including 114 Capitol Police and 60 D.C. Metropolitan Police Department officers. These events led to at least seven deaths and caused about $2.7 billion in estimated costs. As of September 2022, more than 870 individuals have been arrested on charges including entering a restricted federal building, assaulting officers with a deadly weapon, and seditious conspiracy.

U.S. Government Accountability Office, *Report to Congressional Requests, CAPITOL ATTACK, February 2023*. GAO-23-106625, CAPITOL ATTACK: Federal Agencies Identified Some Threats, but Did Not Fully Process and Share Information Prior to January 6, 2021 [Reissued with revisions on Jul. 21, 2023] [Internal footnotes deleted].

---

[1] Counsel files this motion out-of-time because the triggering event did not occur until after the filing deadline for motions to dismiss.

On April 14, 2026, the Department of Justice moved to erase those convictions.

There is no justice when the Department of Justice moves to vacate convictions of Trump supporters who had conspired to storm the Capital, damage property, assault officers and tried to destroy our democracy, and yet persist in the prosecution of three individuals whose only desire was to protest Trump's immigration policy, ICE abuses, and the unlawful detention of human beings. This Court should dismiss this case for selective prosecution.

**A.    Department of Justice seeks vacatur of convictions.**

On April 14, 2026, the Department of Justice moved to vacate the convictions of the Proud Boys involved in the January 6 protest at the United States Capital.[2] "Vacatur of the defendants' convictions is just under the circumstances," . . . because "dismissal of this criminal case is in the interests of justice." *United States v. Nordean*, D.C. Cir. 23-3159.

At the time of indictment, it was the Department of Justice's position that the Proud Boys (along with the Oathkeepers) organized the January 6 attack on the Capital to stop the certification process so that Donald Trump would remain

---

[2] Enrique Tarrio received a full pardon. The Department of Justice moved to vacate the convictions of three. This includes convictions for seditious conspiracy under 18 U.S.C. 2384 and conspiracy to impede or injure officers under 18 U.S.C. §372.

president.  The charges lay out that from at least November 2020, three of the defendants used their platform as regional leaders of the Proud Boys to publicly post statements in response to the projected results of the 2020 presidential election. *Id.* Third Superseding Indictment, *United States v. Nordean, et al,* Case No. 1:21-cr-00175-TJK (D.D.C., 2022) ECF 380, p. 5.

One defendant posted on social medial, "It's time for fucking War if they steal this shit." *Id.* A couple of days later, another defendant posted on social media, "We tried playing nice and by the rules, now you will deal with the monster you created. The spirit of 1776 has resurfaced and has created groups like the Proudboys [sic] and we will not be extinguished. We will grow like the flame that fuels us and spread like love that guides us. We are unstoppable, unrelenting and now . . . unforgiving. Good luck to all you traitors of this country we deeply love . . . you're going to need it." *Id.* And yet another posted, "Hopefully the firing squads are for the traitors that are trying to steal the election from the American people." *Id.*

Beginning in late December 2020, Enrique Tarrio and other members of the Proud Boys created a new chapter which included only a handful of selected members. This small group immediately began the preparations for January 6. Tarrio also created an encrypted messaging for this Ministry of SelfDefense (MOSD) leadership group. *Id.* at 6-7.

The Indictment lists the manner and means of carrying out the purpose of the conspiracy, which was "to oppose the lawful transfer of presidential power by force, by opposing the authority of the Government of the United States and by preventing, hindering, or delaying by force the execution of the laws governing the transfer of power, including the Twelfth Amendment to the Constitution and Title 3, Section 15 of the United States Code." *Id.* p. 8.

After a five-month trial, the jury returned verdicts finding Ethan Nordean, Joseph Biggs, Zachary Rehl, Charles Donohoe, Enrique Tarrio, and Dominic Pezzola guilty of various offenses including seditious conspiracy and conspiracy to impede or injure a federal officer under 18 U.S.C. §372. Nordean was sentenced to 216 months imprisonment; Biggs, 205 months; Rehl, 180 months; Donahue, 40 months; Tarrio, 264 months; and Pezzola, 120 months. (D.C. 1:21-cr-00175-TJK-1).

They appealed to the D.C. Circuit Court of Appeals. *United States v. Nordean*, *et al.* (consolidated appeals D.C. Cir. Nos. 21-3159-62)

On January 20, 2025, President Trump granted Enrique Tarrio a pardon and commuted the sentences of those still serving time to include Nordean, Biggs, Rehl, and Pezzola. Proclamation No. 10887, 90 Fed. Reg. at 8331. All were immediately released from prison.

On April 14, 2026, the Department of Justice moved the D.C. Court of Appeals to vacate their convictions and to remand for dismissal with prejudice, stating "[i]n the Executive Branch's view, it is not in the interests of justice to continue to prosecute this case or the cases of other, similarly situated defendants." *Id.*[3]

As quoted in the Amicus request filed on behalf of Rep. Jamie Raskin, the move is political. "The [Justice] Department's political leadership has been unusually candid about the undeniable political motivation at work: a Department spokesperson described the motion as 'end[ing] these-years-long, Biden era weaponized prosecutions: and confirmed that "President Trump demanded we stop the two-tiered injustice – and we are delivering. No more rigged system.' Ryan J. Reilly & Kyla Guilfoil, *Trump Administration Moves to Toss Remaining Jan 6 Convictions, Clearing Proud Boys and Oath Keepers*, NBC News (Apr. 15, 2026, 1:31 PM)." Memorandum in support of motion to participate as amicus curiae (filed on April 20, 2026).

Even though their lengthy sentences are erased, now the Department of Justice seeks to erase the onus of a felony conviction and its range of legal

---

[3] On April 17, 2026, Rep. Jamie Raskin filed a motion to participate as amicus curiae. On April 20, 2026, counsel filed a memorandum in support of the motion.

disabilities and restrictions. Federal law prohibits individuals convicted of a felony from possessing, shipping, or transporting, or receiving firearms or ammunition. 18 U.S.C. §922(g). A felony conviction can affect employability such as rendering an individual ineligible to hold certain government positions. For example, under 5 USCS §7313, an individual convicted by any federal, state or local government of inciting a riot or civil disorder, organizing, promoting, encouraging or participating in a riot or civil disorder, aiding or abetting any person to commit this type of offense, or if determined by the head of an employing agency to have been committed in furtherance of a riot or civil disorder, shall be ineligible to hold any position in the Government of the United States or in the government of the District of Columbia for the five years following that conviction. A felony conviction can affect a broad range of civil disabilities such as the right to vote, hold public office or serve on a jury.

The Department of Justice seeks to erase these disabilities and the lasting stigma of a felony conviction for people who did real damage to our democracy, federal property, and, not to forget, the 140+ law enforcement officers beaten, crushed, sprayed with chemical agents, wounded and hospitalized. And yet, the Department of Justice continues to pursue similar charges against individuals who

were engaged in a public demonstration in opposition to Trump's immigration policies. How does this have the appearance of justice? It does not.

### B. Selective Prosecution

"A selective-prosecution claim asks a court to exercise judicial power over a 'special province' of the Executive. The Attorney General and United States Attorneys retain 'broad discretion' to enforce the nation's criminal laws. They have latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take care that the laws are faithfully executed. [Internal citation omitted]." *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

This discretion is not unfettered. It exists until it is based on an "unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Id.* 464-65.

To succeed on a selective prosecution claim, a defendant must establish two essential elements: (1) discriminatory effect; and 2) discriminatory purpose. *Id.* 465

### 1. Discriminatory effect

To establish discriminatory effect, the defendant must demonstrate that similarly situated individuals were not prosecuted for similar conduct. *Id.* (citing *Ah Sin v. Wittman*, 198 U.S. 500 (1905).

"Similarly situated" means that no legitimate prosecutorial factors, such as relative culpability, strength of evidence, willingness to cooperate, or the impact on related investigations, distinguish the defendant from others who were not prosecuted, or as here, whose prosecution was terminated. *Armstrong,* at 465.

In *Rundo*, the Ninth Circuit first examined the nature of the alleged conduct between those that were prosecuted, and those who were not.  In that case, the conduct of those prosecuted was more egregious than that of those who were not. The Ninth Circuit thus found the unprosecuted were not good comparators to those the Justice Department pursued. Here the opposite is true. The no-longer prosecuted Nordean crew's conduct was far more egregious than the conduct alleged in the Stuckart indictment.

| Nordean, et al<br>Alleged conduct | Forral, et al<br>Alleged conduct |
|---|---|
| **Purpose of the conspiracy**<br><br>To oppose the lawful transfer of presidential power by force, by opposing the authority of the | **Purpose of the conspiracy**<br><br>To impede and thwart the processing and transport of federal detainees to their immigration hearings in Tacoma, |

| | |
|---|---|
| Government of the United States and by preventing, hindering, or delaying by force the execution of the laws governing the transfer of power. | Washington, and to coerce the release of federal detainees. |
| **Preplanning conduct** | **Preplanning conduct** |
| 1. Encouraging members to attend the Stop and Steal protest; | 1. Posting on social media a call for others to come join to block a bus designated to transport federal detainees to Tacoma; |
| 2. Using websites, social media, and other electronic communications to raise funds to travel and equipment purchases for the trip to Washington, D.C.; | 2. Posting on social media a call for others to come and join noting the intent was to risk arrest to block the exits to ICE; |
| 3. Obtaining paramilitary gear and supplies – including concealed tactical vests, protective equipment, and radio equipment – for January 6 attack; | |
| 4. Dressing "incognito" on January 6, rather than wearing Proud Boys colors that had been prominently displayed at previous events; | |
| 5. Traveling to Washington, D.C., prior to the January 6 attack; | |
| 6. Engaging in meetings and encrypted communications in Washington, D.C., in the days leading up to January 6, and on the morning of January 6, to plan for the January 6 attack; | |

| | |
|---|---|
| 7. Using programmable handheld radios, encrypted messaging applications, and other communications equipment to communicate and coordinate the January 6 attack; | |
| **Protest conduct** | **Protest conduct** |
| 1. Gathering of approximately 100 Proud Boys members near the Washington monument; | 1. Arriving in response to the call and blocking the pathway and door to the transport bus despite orders to disperse; |
| 2. Carrying and using a bullhorn to direct the group; | 2. Intentionally parking a vehicle to block the pathway of the transport bus and preclude its movement; |
| 3. Directing, mobilizing, and leading members of the crowd onto Capitol grounds and into the Capitol; | 3. Releasing air from the tires of the transport bus to preclude its movements; |
| 4. Dismantling metal barricades that had been deployed to demarcate a restricted area to protect law enforcement and occupants of the Capitol; | 4. Painting the windshield of the transport bus rendering it unsafe to operate; |
| 5. Tearing down a black metal fence that separated the crowd from law enforcement; | 5. Physically blocking the driveway of the federal facility and/or pushed against the officers, despite orders to disperse; |
| 6. Storming past barricades, Capitol Police, and other law enforcement officers in efforts to disrupt the proceedings at the Capitol; | 6. Striking an officer from behind as the officer was attempting to clear the pathway for transport vehicles to safely exit the facility; |

| | |
|---|---|
| 7. Ripping away a Capitol police officer's riot shield, while the officer was physically engaging with individuals who had gathered unlawfully into the west plaza; | 7. Placing trash cans, sand/cement bags, benches, signs, and other objects in front of the ingresses and egresses to block the exit of officers and detainees; |
| 8.Throwing water bottles at a line of law enforcement officers engaged in the lawful performance of their official duties; | 8. Surrounding and blocking the red van; |
| 9. Using the riot shield to break a window of the Capitol, allowing the mob to enter the Capitol through the broken window; | 9. slashing the tires of the red transport van rendering it unsafe to operate; |
| | 10. Throwing a deployed incendiary device in the direction of law enforcement. |
| 10. Forcibly re-entering the Capitol through the Columbus Doors, pusing past at least one law enforcement officer; | |
| 11. Travelling to the Senate chamber where the Certification of the Electoral College Vote would have been occurring, had it not been suspended due to the ongoing attack; | |
| 12. Assaulting law enforcement officers. | |
| **Damages** | **Damages** |
| $2.7 billion in estimated costs. *U.S. Government Accountability Office*, p. 1. GAO-23-106625, CAPITOL ATTACK: Federal Agencies Identified Some Threats, but Did Not Fully Process and Share Information Prior to January 6, 2021 [Reissued with revisions on Jul. 21, 2023] | $10,873.39 *United States v. Hatfield,* 2:25-cr-00113-RLP, ECF 198, p. 18. |

In comparing the alleged conduct in the Nordean case against those in the Stuckart indictment, while similar in kind, the acts in Nordean are far more egregious, supporting a claim of selective prosecution. Unlike *Rundo,* the case with more egregious conduct is ***the case*** that the Department of Justice is declining to persist in the prosecution.

### 2.    Discriminatory purpose

The discriminatory purpose element requires that the decision to prosecute or persist in a prosecution was made "because of", and not merely "in spite of," its adverse effects on the defendant's constitutional rights. This can be demonstrated through direct or circumstantial evidence, such as statements or actions by decision-makers indicating bias. *United States v. Rundo,* 108 4th 792, 804-805 (9th Cir. 2024), citing *Wayte v. United States*, 470 U.S. 598, 610 (1985).

Running through both social and mainstream media are various statements from Attorney General Pam Bondi, Acting Attorney General Todd Blanche, and Department of Justice officials on the decision to prosecute individuals protesting ICE actions.  Pursuant to the Judiciary Act of 1789, the Attorney General of the United States is the head of the Department of Justice and serves as the chief law enforcement officer of the federal government. The Attorney General supervises and directs the administration and operations of the Department of Justice, which

includes the offices of United States Attorneys. Pam Bondi, and now Todd Blanche is the final and ultimate decision-maker of who is charged with a crime, and who is not. Their words matter.

As reported by MSN, [4]

## Pam Bondi Orders Crackdown on ICE Protesters: 'Enough Is Enough'

Story by Khaleda Rahman • 6mo • ⏱ 4 min read

Attorney General Pam Bondi issued a memo on Monday directing several law enforcement agencies to send agents to crack down on protests outside U.S. Immigration and Customs Enforcement (ICE) facilities across the country.

The DOJ "is deploying agents to protect ICE facilities, arrest violent agitators on the spot, and bring the strongest federal charges possible," Bondi wrote in a post on X on Monday, alongside a memo she issued to components of the department.

"The rule of law will prevail."

Asked about Bondi's memo, White House spokesperson Abigail Jackson told *Newsweek* that "radical leftists have been launching violent attacks against ICE officers and facilities for far too long while Democrat leaders refuse to take action to stop it."

## Why It Matters

The move represents the latest crackdown in response to protests against the Trump administration's ramped up immigration enforcement in cities including Chicago and Portland.

Protesters who have gathered outside ICE facilities to protest raids, arrests and detention conditions have been met with tear gas and rubber bullets from federal agents on several occasions, including outside an ICE building in Broadview, west of Chicago. Critics have called out the Trump administration for using force against those exercising their First Amendment rights, while the Department of Homeland Security (DHS) has called the protesters "violent rioters" and made arrests.

---

[4] Pam Bondi Orders Crackdown on ICE Protesters: 'Enough Is Enough'

As reported by the New York Times, *'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protester:*[5]

Just days after Minneapolis erupted into protest over the second killing of a resident demonstrating against immigration agents, a top Justice Department official delivered a hardball message to federal prosecutors.

Go after the protesters with everything you have.

In a conference call in late January, the official, Aakash Singh, laid out the department's basis for prosecuting demonstrators: National Security Presidential Memo 7, a sweeping directive issued by President Trump last September. It expanded the definition of domestic terrorism to include not only violent crimes like assault, but also relatively minor ones, like revealing the personal details of agents or getting in the way of immigration enforcement.

Mr. Singh said that "coordinators" in U.S. attorneys' offices responsible for charging protesters under NSPM-7 should be "hounding" federal agents to make cases, according to people familiar with his remarks. He also suggested that the department wanted headlines along with indictments, promising that officials in Washington would be "blasting out" prosecutors' work.

"Go big," Mr. Singh said, "and go loud."

---

[5] 'Go Big and Go Loud': Inside the Justice Dept.'s Push to Prosecute Protesters - The New York Times

In a December 4, 2025, Attorney General Pam Bondi issued a memorandum addressed to all federal prosecutors, law enforcement agencies and Department of Justice Grant-Making Components, indicating a need to crack down on domestic terrorism to include those who impede or assault law enforcement, destroy property, or engage in violent civil disorder. According to the DOJ, these domestic terrorists use violence or the threat of violence to advance political and social agendas, including opposition to law and immigration enforcement. Attorney General Bondi wrote:

> "3.    Prosecuting the most serious, readily provable offenses
>
> To the maximum extent permitted by law and following the principles outlined in the Attorney General's memorandum titled *General Policy Regarding Charging, Plea Negotiations and Sentencing* (Feb. 5, 2025), Department of Justice (DOJ) prosecutors **shall** [emphasis added] prosecute all federal crimes encountered during the investigation described in Section of NSPM-7. Among other potential charges, including conspiracies against the United States under 18 U.S.C. §371, and aiding and abetting under 18 U.S.C. §2, prosecutors should be particularly mindful of the potential applicability of the following provisions of law: [other statutes omitted] * 18 U.S.C. §372."[6]

In contrast, the Justice Department referred to Proud Boy charges that it is seeking to drop as "years-long, Biden-era weaponized prosecutions." "President

---

[6]This memorandum can be found at various cites to include: b610d753-733b-4eee-8a17-5035bc94cd6c.pdf; Bondi Memo on Countering Domestic Terrorism and Organized Political Violence

Trump demanded we stop the two-tiered injustice – and we are delivering. No more rigged system," the Department said in a post on X:[7]



**DOJ Rapid Response** ✔ ⊚
@DOJRR47

Yesterday the Department of Justice filed a motion to vacate the convictions of several Americans who had received clemency from President Trump. This ends these years-long, Biden-era weaponized prosecutions. President Trump demanded we stop the two-tiered injustice—and we are delivering. No more rigged system.

To highlight the discriminatory purpose ever so clearly is the Justice Department's decision to not even investigate the line-of-duty killings of two individuals protesting Trump's immigration policies – killings the world watched on tv.

As reported in GovFacts:[8]

On January 8, 2026, ICE agent Jonathan Ross shot and killed Renee Good in Minneapolis. Last week, the **Department of Justice** announced it would not investigate. No criminal investigation into violations of people's constitutional rights. Deputy Attorney General Todd Blanche issued a brief statement saying there was not enough evidence to move forward—a phrase that raised more questions than it answered, particularly since the DOJ simultaneously **directed investigators to examine Good's widow for "possible connections to activist groups."**

---

[7] DOJ Rapid Response on X: "Yesterday the Department of Justice filed a motion to vacate the convictions of several Americans who had received clemency from President Trump. This ends these years-long, Biden-era weaponized prosecutions. President Trump demanded we stop the two-tiered injustice—and we are" / X

[8] *When the DOJ Won't Prosecute, Can Families Sue Federal Officers?* GovFacts, January 14, 2026. When DOJ Won't Prosecute, Can Families Sue Federal Officers? | GovFacts

As reported in Fox:[9]

JUSTICE DEPARTMENT

## DOJ says 'no basis' for civil rights investigation into Minneapolis ICE officer killing

Deputy Attorney General Todd Blanche says there's 'no basis' for civil rights probe into Renee Good's death

The discriminatory purpose is evident on its face. Prosecute those who protest President Trump's immigration policies. Dismiss charges against Trump patriots. Do not even investigate ICE for killing those protesting Trump's immigration policies.

### D.    Conclusion

Justice must satisfy the appearance of justice. The possibility that political animosity may infect a decision to institute or persist in criminal proceedings cannot be ignored. *Oyler v. Boles,* 368 U.S. 448 (1962). There is no justice when the Department of Justice moves to vacate convictions of Trump supporters who had conspired to storm the Capital, damage property, assault officers and tried to destroy our democracy, and yet persist in the prosecution of three individuals whose

---

[9] Fox News, January 13, 2026 DOJ won't pursue civil rights probe in Renee Good killing by ICE officer | Fox News

only desire was to protest Trump's immigration policy, ICE abuses, and the unlawful detention of human beings.

This Court should dismiss this case for selective prosecution.

Dated: April 23, 2026.

Federal Defenders of Eastern Washington & Idaho
s/Andrea K. George
Andrea K. George, MN 0202125
601 W. Riverside Ave., Suite 900
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Andrea_George@fd.org

### Service Certificate

I hereby certify that on April 23, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which our office will send notification of such filing to the following: Earl Hicks, Assistant United States Attorneys Lisa Cartier-Giroux and Rebecca Perez.

s/Andrea K. George
Andrea K. George, MN 0202125
601 W. Riverside Ave., Suite 900
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Andrea_George@fd.org