Todd Blanche
Acting Attorney General of the United States
Rebecca R. Perez
Lisa C. Cartier-Giroux
Assistant United States Attorneys
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JUSTICE FORRAL,<br>BAJUN DHUNJISHA MAVALWALLA, II,<br>and<br>JAC DALSITO ARCHER,<br><br>                    Defendant. | Case No.: 2:25-CR-00113-RLP-2, 8, 9<br><br>UNITED STATES' TRIAL BRIEF<br><br>Trial: May 18, 2026<br>Spokane, Washington |

Plaintiff United States of America, by and through Lisa C. Cartier-Giroux and Rebecca R. Perez, Assistant United States Attorneys, hereby submits the United States' Trial Brief.

## I.    Introduction

This case centers on an approximate 9-hour incident occurring on June 11, 2025. During that time, Defendants and co-conspirators conspired to prevent federal officers by force, intimidation, or threat from discharging their official duties in transporting detainees to their immigration hearings in Tacoma, WA. They further conspired to damage federal officers' property or injure them while they were engaged in their official duties or on account of their performance of their duties, or to damage property to interrupt, hinder, or impede them from discharging their

United States' Trial Brief – 1

duties. The United States will present evidence of their activities that day at the white transport bus, the south gate, and the red transport van, as well the barricading of egresses and efforts to prevent a safe passage out of the federal facility to allow officers to discharge their duties.

This investigation involved the acquisition of hundreds of hours of drone footage and body camera video from responding law enforcement agencies, as well as media captured footage. During those hours, there were three (unsuccessful) attempts by federal law enforcement to execute plans to transport the detainees at three separate locations of the federal facility, all allegedly blocked by members of the charged conspiracy. A fourth attempt, successful only after the deployment of munitions to disperse the crowds and the rescue of the building occupants by Spokane Police Department and Spokane County Sheriff's Department, occurred close to 9 pm that evening. Due to the volume of digital media, the United States has created streamlined exhibits using video excerpts and  screen capture photos to avoid playing extended videos or replaying videos to witnesses when unnecessary. The parties anticipate stipulations to the authenticity and foundation for drone videos, body cameras, and many videos filmed by various media outlets. With agreement as to the authenticity of the media, the United States anticipates a total of approximately 18 witnesses; in the absence of a stipulation, the United States anticipates calling 27 witnesses. In addition to the media exhibits and photos, the United States' physical evidence will include Facebook posts offered as certified records, and results from the search of the co-conspirators' seized phones.

The United States anticipates introducing what it believes to be evidence beyond a reasonable doubt that a conspiracy existed to prevent the officers from transporting the detainees and to force them to capitulate to their demands for their release, and that each of the defendants (and others) joined in the conspiracy, each knowing the unlawful goals and working to accomplish those goals. Defendants are also charged under an aiding and abetting theory of liability in that the defendant

United States' Trial Brief – 2

acted with knowledge and intention of helping another commit the offense of conspiracy to impede or injure an officer in the discharge of his duties.

The United States anticipates 3-4 days to present its case-in-chief. Dependent on witness or evidence offered by defense, the United States may present rebuttal testimony or evidence. All three defendants are released on conditions.

## II.    Procedural Posture and Summary of Evidence Anticipated at Trial

With the Court having already heard and decided a full slate of pretrial motions, the United States will not belabor the relevant facts. A summary of the facts follows:

On June 11, 2025, federal employees at the federal immigration processing facility on Cataldo in Spokane, WA had approximately twelve detainees that federal officers were processing to be transported to the federal facility in Tacoma. The Spokane office is not a detention center and is without capability to safely and humanely house detainees. The federal officers were required to transport them to Tacoma as that was also where their hearings in front of a federal immigration judge would take place. Two of the detainees, adult males over the age of 21, had appeared with Ben Stuckart (Stuckart) at close to noon on June 11th for their appointments at the facility. The federal officers at the facility were advised that the two adult males each had a warrant and were to be detained and transported to Tacoma for their immigration hearings in front of an immigration judge. This information was communicated to the two adult males and to Stuckart, who had accompanied them. A white transport bus scheduled to transport the federal detainees to Tacoma was parked directly outside the facility.

At approximately 12:52 pm, Stuckart posted a public posting on his Facebook page urging others to join him in blocking the white bus and thereby preventing the transport of the detainees to Tacoma. The three co-defendants and others responded to the white bus as a result of Stuckart's call for action. By approximately 2 pm, Archer arrived at the white bus along with Stuckart. Archer had been making

United States' Trial Brief – 3

preparations and continued to send out group texts to execute a plan to force federal authorities to capitulate to their demands for the release of the detainees. Along with Stuckart and others, Archer sat in the pathway of the bus blocking the entrance and refusing to move to allow federal officers access. Forral had arrived shortly after Archer and parked his vehicle in an attempt to block in the bus. Along with another charged defendant who has pled guilty, Forral coordinated the effort to let out the air of the tires of the white bus.

After requests were made by federal officers to give access to the bus failed, and believing that the bus had been tampered with, federal officers decided an alternate plane to coordinate an exit from the building with the detainees. In an effort to execute that plan, they left out the southside exit of the building to attempt to move three of their vehicles out of the south gate parking lot of the federal facility.

Immediately upon the exit of the officers, shouts by look-outs posted at the exits were heard by the officers to the effect of "they are over here" or "they are leaving from here." The crowd began running from the white bus area towards the south gate parking area. Mavalwalla, who also had previously arrived at the white bus, ran to stop the south gate exit attempt, arriving first, and sprinting to the lead and followed by others, including Archer and Forral. Physically blocking the federal officer's vehicle which had its lights activated, Mavalwalla told the federal officer attempting to leave something to the effect of "no one is coming to help you". Directions to "block the exits" can also be heard in the media recordings. Those recordings capture Archer's arrival. Archer is heard directing others to the effect of "for those of us willing to be arrested, this is what we discussed." Forral yelled at one of the federal officers, who is a Native American, that he was a "race traitor". At the south gate, the federal officers ordered the defendants and others to allow them to leave and not block the exit. Disregarding the lawful orders, defendants and others linked arms forming a line against the officers to prevent the officers from being able to move them and allow the vehicles to leave. After defendants and others

United States' Trial Brief – 4

failed to comply with repeated orders to move away from the gates and allow the vehicles to exit and end the blocking of the exit, officers attempted to push the defendants and others back. The pushing was ineffective, with the crowd immediately filling in any gaps which occurred when anyone in the line was pushed off. Federal officers in the crowd were struck and pushed, including from behind. The federal officers retreated, having been prevented from exiting through the gate by the co-conspirators coordinated actions. Items, including trash cans, benches, scooters, bikes, and cement blocks were placed in front of egresses in a coordinated effort to prevent officers from leaving the building with detainees.

A third plan to allow the officers to exit the federal facility and transport the detainees was made after the failure at the south gate. A red border patrol van was escorted to the location and parked on Washington near the corner of Cataldo. Immediately upon arrival of the red van which contained two federal officers, the van was swarmed to prevent it from being used to transport the detainees. Benches were placed in front of the escort police vehicles to prevent them from moving and scooters were placed under the red van. Its tires were slashed. Charged co-conspirators, Stuckart, Lang, Hatfield, and Silva, who have pled guilty, locked arms around the van along with others, including Forral, to prevent federal officers from using it to transport the detainees. Forral left and arrived back at the area near the red van brandishing an object in his hands consistent with a "Club" steering wheel lock. Forral also remained near the area of the bus, directing others and commanding others at different times to block the door to the building and to block the van exits. When Spokane Police Department Officers and Spokane County Sheriff's Deputies attempted to create two skirmish lines to create a safe pathway to the van, Mavawalla linked arms with others to block the officers' efforts. He and others refused to move despite commands and instead used the weight of one another to push back and stop the officers from successfully pushing them back and clear a passage.

United States' Trial Brief – 5

Spokane Police Department Officers and Spokane County Sheriff's Deputies ultimately decided that they needed to use munitions to safely help the federal officers trapped in the federal building with the detainees. Mavalwalla along with others, including co-defendant Hatfield who has pled guilty, attempted to send the deployed smoke cannisters back towards the officers by kicking (Mavalwalla) and throwing (Hatfield) them.

All exhibits presented by the United States in this case will follow the primary events as described above and will be described under the following headings: white bus, south gate, barricading gates, red van, and SPD/SCSO response. Due to the massive volume of digital evidence in this case, the United States has created many clips of various drone footage, body camera, and some media clips in an effort to avoid playing many hours of footage. The United States has proposed stipulations which would introduce the entirety of the videos in the event Defendants wish to play different portions of the videos. The full videos are listed in the United States' exhibit list addendum with drone footage in the 100 series, body camera and surveillance in the 200 series, media footage in the 300 series, and photographs in the 400 series. The primary exhibits to be admitted are clips and screenshots from those full videos, and the United States anticipates no objection to the admission of those exhibits. Defendants will introduce similar videos and, which some specifics are being discussed, the United States does not anticipate objections to the majority of Defendants' exhibits, although the United States has not seen the entirety of Defendants' proposed exhibits.

Forral was arrested on June 11, 2025. He was subsequently charged in Spokane County with assault on a Spokane County Deputy and False Imprisonment of federal officers and employees in the federal building.

On July 9, 2025, a federal grand jury returned an indictment against Forral, Mavawalla, and Archer with a violation of 18 U.S.C. § 372.

United States' Trial Brief – 6

On July 15, 2025, Forral, Mavawalla, and Archer were arrested on warrants arising from the Indictment in this case.

Trial is set for May 18, 2026.

## III.    Charges and Elements

### A.    Conspiracy Liability

The Indictment charges defendants with conspiring with others to impede or injure federal officers, in violation of 18 U.S.C. §372.  To convict defendants on this charge, the United States will have to prove each of the following elements beyond a reasonable doubt:

First, in any State, Territory, Possession, or District of the United States, beginning on a date unknown, but no later than June 11, 2025, and continuing through June 11, 2025, there was an agreement between two or more persons to do one of the following:

A. to prevent by force, intimidation, or threat, any officer of the United States from discharging any of his official duties; or

B. to injure the person of any officer of the United States on account of his lawful discharge of his official duties or while he was engaged in the lawful discharge of his official duties; or

C. to injure the property of any officer of the United States on account of his lawful discharge of his official duties or while he was engaged in the lawful discharge of his official duties; or

D. to injure the property of any officer of the United States so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

Second, the Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

Conspiracy in its broadest sense is a "partnership in criminal purposes." *United States v. Kissel*, 218 U.S. 601, 608 (1910); *see also United States v. Inryco, Inc.*, 642 F.2d 290, n.6 (9th Cir. 1982); *Marino v. United States*, 91 F.2d 691, 694 (9th Cir. 1937). Direct evidence of the agreement is not required; a conspiracy may be proven by circumstantial evidence that the defendants acted together with a common goal. *United States v. Iriate-Ortega*, 113 F.3d 1022 (9th Cir. 1998); *United States v. Disla*, 805 F.2d 1340, 1348 (9th Cir. 1986); *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1986). The agreement may be inferred from the circumstances and the defendants' acts pursuant to the scheme. *Disla*, 805 F.2d at 1348; *Bibbero*, 749 F.2d at 587. Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases. *Iriate-Ortega*, 113 F.3d at 1024. The government need not prove that each conspirator participated in every act of the conspiracy. *United States v. Burreson*, 643 F.2d 1344, 1348 (9th Cir.), *cert. denied*, 454 U.S. 830 (1981).

Once the existence of a conspiracy is established, evidence of only a "slight connection" to it by a defendant is sufficient to convict him or her with knowing participation in the conspiracy. *United States v. Buena-Lopez*, 987 F.2d 657, 659 (9th Cir. 1993); *Meyers*, 847 F.2d at 1413; *United States v. Taylor*, 802 F.2d 1108, 1116 (9th Cir. 1987). The connection to the conspiracy must be shown to be "knowledgeable". *Meyers*, 847 F.2d at 1413. This is provided for when the

United States' Trial Brief – 8

government proves beyond a reasonable doubt that the defendant knew of his connection to the charged conspiracy. *United States v. Johnson*, 297 F.3d 845, 868 (9th Cir. 2002). The Court must not just look to the characteristics of individual acts or transactions but to the entire course of dealings between alleged co-conspirators. *United States v. Moe*, 781 F.3d 1120, 1125 (9th Cir. 2015) *see also United States v. Webster*, 623 F.3d 901, 907 (9th Cir. 2010); *United States v. Dinardo*, 527 F. App'x 621, 623 (9th Cir. 2013).

### B. Liability under an Aiding and Abetting Theory

Aiding and abetting may be implied in every substantive federal offense. *United States v. Armstrong*, 909 F.2d 1238, 1241–42 (9th Cir.), cert. denied, 498 U.S. 870 (1990). "The difference between causing and aiding and abetting alone ... does not prevent either or both theories from being implied in an indictment." *Id.* at 1242. Aiding and abetting the commission of 18 U.S.C. §372 is a different theory of liability:

> Aiding and abetting, as used in 18 U.S.C. s 2, means to assist the perpetrators of a crime. *United States v. Mallory*, 460 F.2d 243 (10th Cir. 1972), cert. denied, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120; *United States v. Harris*, 441 F.2d 1333 (10th Cir. 1971). " . . . In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in *United States v. Peoni*, 2 Cir., 100 F.2d 401, 402." *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949). *U.S. v. Lane*, 514 F.2d 22, 26 (9th Cir. 1975).

The United States is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted its commission. *See* Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 4.1 (2022). To prove a defendant guilty of Conspiracy to impede or injure any officer of the United States in the discharge of his official duties by aiding and abetting, the United States must prove each of the following elements beyond a reasonable doubt:

United States' Trial Brief – 9

First, someone else committed Conspiracy to impede or injure any officer of the United States in the discharge of his official duties;

Second, the Defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the offense;

Third, the Defendant acted with the intent to facilitate the offense; and

Fourth, the Defendant acted before the crime was completed.

### C.    Defendants' Statements Against Interest

The United States anticipates introducing statements made by Archer and Mavawalla after June 11, 2025 relating to what occurred on June 11, 2025.

A statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; [or] (C) a statement by a person authorized by the party to  make  a statement concerning the subject." Fed. R. Evid. 801(d)(2)(A) and (C).  This rule extends to both oral and written statements of a criminal defendant. *See United States v. Williams*, 837 F.2d 1009, 1013 (11th Cir. 1988); Fed. R. Evid. 801(d)(2)(C).

Neither defendants nor any defense witness may offer out-of-court statements into evidence unless they are not hearsay or admissible under an exception to the hearsay rule.  Such statements are hearsay pursuant to Rule 801 and are not "admissions by a party opponent" under Rule 801(d)(2) when offered by the party himself, rather than the party's  "opponent." *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party . . . .  The rules do not, however, provide an exception for self- serving, exculpatory statements made by a party which are being sought for admission by that same party."); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) ("[W]hile the government was free to introduce the statement as an admission by a party-opponent, *see* Fed. R. Evid. 801(d)(2)(A), [the defendant] had no right to introduce it on his own.").

United States' Trial Brief – 10

**D.      Improper Use of Law Enforcement Reports and Interview Reports**

The discovery in this case includes numerous police and investigative reports and interview reports from law enforcement agencies.  Such reports cannot be published to the jury.  As to a law enforcement witness who authored a report, any statements contained within the report are hearsay if offered for their truth.

As to the witnesses being interviewed, law enforcement reports are also inadmissible.  Statements of witnesses, as set forth in interview reports, are not necessarily written or adopted by the witnesses.

Law enforcement interview reports are not statements of witnesses under the Jencks Act, which defines a statement as "a written statement made by said witness and signed or otherwise adopted or approved by him"; a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously"; or a statement made by a witness to the grand jury.  *See* 18 U.S.C. § 3500(e).  The Supreme Court has held that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *See Palermo v. United States*, 360 U.S. 343, 352-53 (1959); *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) ("[W]hen a government agent interviews a witness and takes contemporaneous notes of the witness' responses, the notes do not become the witness' statement – despite the agent's best efforts to be accurate – if the agent does not read back, or the witness does not read, what the [agent] has written.") (internal quotation marks omitted)).

While a purported statement in a report may be used to impeach the person who allegedly made the statement, defendants should be precluded from introducing the contents of interview reports or publishing the contents of interview reports to the jury or otherwise suggesting to the jury that any interview report is a statement of a witness.

United States' Trial Brief – 11

### E.    Coconspirator Statements

The United States also anticipates that statements by defendants and co-conspirators will be offered during the course of trial, many of which are heard on the recorded videos, as well as text messages found during the relevant time frame of the charged offense located in Archer's cellular phone. When offered by the United States, such statements are non-hearsay as party admissions under Fed. R. Evid. 801(d)(2)(A) regardless of whether or not they are against a defendant's interests or otherwise incriminating. *See United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000).

Further, statements made in the course of and furtherance of the conspiracy are not hearsay.  Fed. R. Evid. 801(d)(2)(E).  A coconspirator's statement is admissible against other co-conspirator defendants if the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy. *United States v. Bowman*, 215 F.3d 951, 960–61 (9th Cir. 2000) (citing *Bourjaily v. United States,* 483 U.S. 171, 175 (1987)).  The foundation must be laid by a preponderance of the evidence and independent of the statement itself. *United States v. Correa-Osorio*, 784 F.3d 11, 23-24 (1st Cir. 2015).  Under Fed. R. Evid. 104(a), if a defendant objects to the admissibility of an alleged co-conspirator statement the trial judge may conditionally admit the statement and put off ruling until the foundation has been established. *See id; see Bourjaily,* 483 U.S. 171 (1987).  Courts apply a liberal standard in determining whether a statement was made in furtherance of a conspiracy. *See United States v. Lloyd,* 807 F.3d 1128, 1161 (9th Cir. 2015).

In this case, the evidence at trial will establish the existence of a conspiracy and Forral's, Mavawalla's, Archer's (and others') membership in it.  In addition to coconspirator statements that are clearly within the course and scope of the conspiracy because they coincide with the conspiracy's objective of preventing the

United States' Trial Brief – 12

transport, coconspirator statements by Archer during the course of the conspiracy to keep others informed of the activities of the conspiracy are non-hearsay coconspirator statements. *Lloyd,* 807 F.3d at 1161,

To admit coconspirator statements, the United States need not show that a declarant is unavailable, *United States v. Inadi*, 475 U.S. 387 (1986), identify the declarant by name, *United States v. Ayala*, 601 F.3d 256, 268 (4th Cir. 2010), show that the statement was in furtherance of the interest of the defendant himself/herself/themself or of any particular conspirator, *U.S. v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014), or show that the person to whom the statement was made was a member of the conspiracy, *Gupta,* 747 F.3d at 124*, Lloyd* 807 F.3d at 1160-61.

**F.    Character Evidence**

The Court ordered that witnesses could testify as to their backgrounds, including prior military service or community service, where admitted for the purpose of telling the jury about the defendant's background and life experience. *See* ECF No.297 at 9 ("This is not character evidence prohibited under FRE 404(a)"). Defendants were directed to provide the Court notice of intent to present character FRE 404(a) evidence by May 8, 2026. *Id.* No notice has been provided and the United States therefore moves to preclude such evidence.

**G.    Mistake of Law Instruction – Mistake of law does not negate the mens rea of "knowingly"**

The Court indicated in ECF No. 297 that it would allow witnesses to "testify to their belief that Mr. Torres or another individual was being illegally detained". ECF No. 297 at 7. Mistake of law does not negate the *mens rea* here of "knowingly". If such testimony is permitted by the Court, the jury must also be instructed that a defendant need not know that his conduct is unlawful in order to have acted knowingly. It would be erroneous to permit a jury to believe that a defendant's mistake of law —their alleged subjective belief that an officer was

United States' Trial Brief – 13

acting unlawfully excused their actions by negating their intent to commit those acts that constitute the crime. To do so would read into the *mens rea* of "knowingly" as "with knowledge of the law, violates", creating a mistake of law defense. As the Supreme Court stated in *Bryan v. U.S*:

> … the term "knowingly" does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." Thus, in *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), we held that the prosecution fulfills its burden of proving a knowing violation of the escape statute "if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id.*, at 408, 100 S.Ct., at 634. And in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), we held that a charge that the defendant's possession of an unregistered machinegun was unlawful required proof "that he knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." *Id.*, at 602, 114 S.Ct., at 1795. It was not, however, necessary to prove that the defendant knew that his possession was unlawful. *See Rogers v. United States*, 522 U.S. 252, 254–255, 118 S.Ct. 673, 674–676, 139 L.Ed.2d 686 (1998) (plurality opinion). Thus, unless the text of the statute dictates a different result, the term "knowingly" merely requires proof of knowledge of the facts that constitute the offense. *Bryan v. U.S.* 524 U.S. 184, 192-193 (1998).

In other words, regardless of what Forral, Mavawalla, or Archer believed the law to be, in the context of this case, knowingly means that the defendant knew what they were doing, and that they did not do the acts constituting the crime for example, accidently or negligently. It does not necessitate that the defendant must also know that what they are doing is illegal. If testimony regarding subjective intent of legality of their actions is admitted, the United States may request a specific instruction regarding mistake of law in addition to the Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 4.8 (2022) definition of "knowingly". Specifically, the United States may

United States' Trial Brief – 14

request an instruction of: "Mistake or ignorance of the law is no defense to the charge". *See United States v. De Cruz*, 82 F.3d 856, 867 (9th Cir. 1996).

### H.    Testimony Regarding Unspecific Contemporaneous or Prior Immigration Protests as Relevant to Mens Rea – Request for offer of proof in advance of admission

The Court has preliminarily ruled that "Defendant's awareness of contemporaneous or prior immigration protests may bear on their subjective intent". ECF No. 297 at 6. Because of the inflammatory nature such events may have on a jury, the United States requests that an offer of proof as to the proposed testimony be made before placing such testimony in front a jury so that the United States can make its objections on the record as to relevance and admissibility and the Court can rule on the specific claims and details sought to be admitted before introducing it to the jury.

### I.    Authenticating Business Records

#### 1.    Facebook and Verizon

The United States will seek to admit Facebook and Verizon records as self-authenticating under Federal Rule of Evidence 902(11) and (13).  The United States provided the defense with written notice that it will be using a Rule 902(11) certification in lieu of calling a human being.

The business record certification documents will authenticate the mechanical aspects of the records, not the identities of the authors of any chats, messages, or posts.  This approach simply saves a live custodian of records having to travel across the country to testify that the information in the records are the entity's business records.

The United States will then rely on independent indicia and from within the records themselves to prove up that the account is associated with the defendant.

The Ninth Circuit and other courts have endorsed this approach.  The United States meets its burden for authentication regarding such evidence where it provides sufficient evidence to "establish a connection between the proffered evidence and

United States' Trial Brief – 15

the defendant" and to permit "a reasonable juror [to] find in favor of authenticity." *United States v. Stanford*, 716 F. App'x 689, 690 (9th Cir. 2018) (quoting *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (internal quotation marks omitted); *see also United States v. Farrad*, 895 F.3d 859, 878 (6th Cir. 2018) (Facebook photo of defendant admissible when other evidence suggested photos were what they claimed to be); *United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016) (along with the business record certification, "[t]o authenticate the messages, the government was therefore required to introduce enough evidence such that the jury could reasonably find, by a preponderance of the evidence, that Browne and the victims authored the Facebook messages at issue."); *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (Facebook pages and YouTube videos self-authenticating under 902(11)); *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 625–26 (D. Ariz. 2020) ("Moreover, even circumstantial evidence can authenticate the content of a Facebook post "where a document's contents, in conjunction with other circumstances, reflect distinctive characteristics.") (citing *People v. Curry*, No. 2-18-0148, —— Ill. Dec. ——, —— N.E.3d ——, 2020 WL 5423045, at *9 (Ill. App. Ct. Sept. 10, 2020) further citations omitted)); *State v. Griffith*, 247 Ariz. 361, 449 P.3d 353, 357 (Ariz. Ct. App. 2019) (Facebook post "may be admitted if reasonable extrinsic evidence tends to show the party made it.").

Dated: May 8, 2026

Lisa C. Cartier-Giroux
Rebecca R. Perez
Assistant United States Attorneys

United States' Trial Brief – 16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2026, I electronically filed under seal the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to Defendants' counsel of record using the CM/ECF system.

*s/ Lisa C. Cartier Giroux*
Lisa C. Cartier Giroux
Assistant United States Attorney

Certificate of Service – 1