Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
carl@ettermcmahon.com
awagley@ettermcmahon.com

Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
Phone: (202) 964-6110
chayes-deats@lowellandassociates.com
sstandley@lowellandassociates.com
areilly@lowellandassociates.com

*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAC DALITSO ARCHER, *et al.*,

Defendants.

No. 2:25-CR-00113-RLP-9

**DEFENDANT JAC DALITSO ARCHER'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

ORAL ARGUMENT REQUESTED
November 18, 2026 at 10:00am PT

# TABLE OF CONTENTS

INTRODUCTION .....1

FACTUAL BACKGROUND .....2

ARGUMENT .....6

I. The First Amendment Prohibits Archer's Conviction. .....7

A. The Government Failed to Prove the Intent Required by § 372. .....9

1. The Government Has Not Proved Intent to Use "Force". .....9

2. Archer Had No Intent to Use "Intimidation" or "Threat." .....13

B. Other Demonstrators' Conduct Cannot Be Imputed to Archer. .....14

C. Application of § 372 to Archer Fails Intermediate Scrutiny. .....19

II. The Government Failed to Prove § 372 Conspiracy. .....22

III. Archer Cannot Be Convicted of § 372 Conspiracy to Injure Property. .....24

A. The Government Constructively Amended the Indictment. .....25

B. Archer Did Not Conspire to Injure Property. .....25

CONCLUSION .....26



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

# TABLE OF AUTHORITIES

**Cases**

*Bose Corp. v. Consumers Union of United States, Inc.*,
466 U.S. 485 (1984) .......... 6, 8

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) .......... 10

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) .......... 19

*Collins v. Jordan*,
110 F.3d 1363 (9th Cir. 1996) .......... 7, 8

*Connick v. Myers*,
461 U.S. 138 (1983) .......... 8

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 9, 13, 22

*Cox v. Louisiana*,
379 U.S. 536, 545 (1965) .......... 8

*De Jonge v. Oregon*,
299 U.S. 353 (1937) .......... 9

*Edwards v. South Carolina*,
372 U.S. 229 (1963) .......... 8

*Elonis v. United States*,
575 U.S. 723 (2015) .......... 17

*Felarca v. Birgeneau*,
891 F.3d 809 (9th Cir. 2018) .......... 11

*Finn v. United States*,
219 F.2d 894 (9th Cir. 1955) .......... 24

*Gulliford v. Pierce Cnty.*,
136 F.3d 1345 (9th Cir. 1998) .......... 13



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*Headwaters Forest Def. v. Cnty. of Humboldt*,
276 F.3d 1125 (9th Cir. 2002)........................................1, 10

*Index Newspapers LLC v. U.S. Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020)........................................15

*Krulewitch v. United States*,
336 U.S. 440 (1949)........................................15, 16

*McCullen v. Coakley*,
573 U.S. 464 (2014)........................................20, 21

*Musacchio v. United States*,
577 U.S. 237 (2016)........................................23

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)........................................8

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)........................................passim

*Santopietro v. Howell*,
73 F.4th 1016 (9th Cir. 2023)........................................16, 17, 18, 19

*Snyder v. Phelps*,
562 U.S. 443 (2011)........................................8

*Stern v. U.S. Gypsum, Inc.*,
547 F.2d 1329 (7th Cir. 1977)........................................20

*Stirone v. United States*,
361 U.S. 212 (1960)........................................25

*Street v. New York*,
394 U.S. 576 (1969)........................................8

*United States v. Alvarez*,
617 F.3d 1198 (9th Cir. 2010)........................................22

*United States v. Amintobia*,
57 F.4th 687 (9th Cir. 2023)........................................23, 26



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*United States v. Ehmer*,
87 F.4th 1073 (9th Cir. 2023) ....................16, 17, 23

*United States v. Hanna*,
293 F.3d 1080 (9th Cir. 2002) .................... 6, 8

*United States v. Hayner*,
371 F. Supp. 3d 700 (N.D. Cal. 2018).................... 8

*United States v. Melchor-Lopez*,
627 F.2d 886 (9th Cir. 1980)....................26

*United States v. Mendoza*,
25 F.4th 730 (9th Cir. 2022)....................23

*United States v. Nevils*,
598 F.3d 1158 (9th Cir. 2010)....................23

*United States v. O'Brien*,
391 U.S. 367 (1968)....................20

*United States v. Poocha*,
259 F.3d 1077 (9th Cir. 2001) ....................13

*United States v. Rhodes*,
610 F. Supp. 3d 29 (D.D.C. 2022)....................20

*United States v. Rundo*,
990 F.3d 709 (9th Cir. 2021)....................10

*United States v. Shorty*,
741 F.3d 961 (9th Cir. 2013); ECF 361 ....................19

*United States v. Ward*,
747 F.3d 1184 (9th Cir. 2014)....................25

*Virginia v. Black*,
538 U.S. 343 (2003)....................13

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989)....................20



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 7, 10

*Williamson v. City of Nat'l City*,
23 F.4th 1146 (9th Cir. 2022) .......... 10, 24

*Wisconsin v. Mitchell*,
508 U.S. 476 (1993) .......... 9

**Other Authorities**

18 U.S.C. § 372 .......... *passim*

40 U.S.C. § 1315(c) .......... 20

42 U.S.C. § 1985(1) .......... 20

6 C.F.R. §§ 139.35, 139.85 .......... 21

Federal Rule of Criminal Procedure 29(c) .......... 1, 6, 8

90 Fed. Reg. 24,217 (June 9, 2025) .......... 20

90 Fed. Reg. 49,247 (Nov. 5, 2025) .......... 20

U.S. Const. amend. I .......... *passim*

U.S. Const. amend. V .......... 25



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Defendant Jac Dalitso Archer hereby moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c), based on the following points and authorities.

## INTRODUCTION

The United States has a long and proud history of civil disobedience. Henry David Thoreau refused to pay taxes that might support slavery. Susan B. Anthony voted when the law forbade women from doing so. Martin Luther King Jr. protested segregation in defiance of official orders. All "risked arrest"—and were arrested. None were violent or even threatening. Their peaceful defiance of unjust laws appealed to our collective conscience, sparked debate, and led to reform.

The government's efforts to prosecute Jac Archer's nonviolent civil disobedience as a violent conspiracy defy 18 U.S.C. § 372 and the First Amendment. At most, the government proved at trial that Archer agreed with others to "risk arrest" to express their opposition to the detention and relocation of Joswar Rodriguez Torres and Cesar Alvarez Perez by U.S. Immigration and Customs Enforcement ("ICE"). That conduct shows no conspiracy to use "force, intimidation, or threat" or "injure property." 18 U.S.C. § 372. The undisputed evidence shows Archer's repeated commitment to nonviolence. The Ninth Circuit has found that locking arms with other protestors and standing one's ground is "peaceful." *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1127 (9th Cir. 2002).

Even if other protestors violated § 372, the First Amendment prohibits the government from imputing their conduct to Archer. The Supreme Court has long recognized that the First Amendment bars imposition of "[c]ivil liability . . . merely



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

because an individual belonged to a group, some members of which committed acts of violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982). That conclusion applies *a fortiori* to criminal liability. It is easy to understand why. If protestors and organizers become responsible for the violent actions of anyone who joins the same demonstration, no one will protest. The tradition of civil disobedience that has shaped U.S. history will be irreparably chilled.

Finally, the government cannot prosecute Archer on a theory of conspiracy to injure property. Any such theory constructively amended the Indictment, which made no mention of "property" among the "Objects of the Conspiracy." ECF 1. Regardless, no evidence indicated that Archer agreed with anyone to injure property.

No evidence showed Archer violated § 372. The government's contrary theory defied the First Amendment. The Court should enter a judgment of acquittal.

## FACTUAL BACKGROUND

On June 11, 2025, ICE detained Torres and Perez and sought to transport them to Tacoma. Former Spokane City Council President Ben Stuckart posted on Facebook that ICE had detained a young asylum seeker at a check-in and called on others to join him in protesting the detention. GX76 (Ex. 10).[1] Hundreds of people, including Archer, joined him.

---

[1] Exhibits referenced herein are attached to the Declaration of Andrew Wagley in Support of Defendant Archer's Rule 29 and Rule 33 Motions, filed concurrently with this motion.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Archer had prior training in how to organize protests. Vol. VI Tr. 1730:9-20 (Ex. 6). That training taught Archer that "all protests carry a risk of arrest," even if they are nonviolent. *Id.* 1742:9-25. Planned protests thus typically involve preparation for the possibility of arrest. *Id.* 1745:25-1746:22.

The testimony at trial divided the ensuing protest into four stages: (1) the white bus, (2) the south gate, (3) the red van, and (4) the intervention by the Spokane Police Department and County Sheriff's Office. Vol. II Tr. 437:14-438:10 (Ex. 2). Archer personally participated only in the first two. *Id.* 514:13-515:7.

Archer arrived at the ICE facility around 2:00pm PT. Vol. VI Tr. 1737:18-19. Archer initially sat with a group of protestors outside the white bus's door. GX413 (Ex. 12). Archer believed that "sitting in front of a bus under those circumstances . . . could be an act of civil disobedience and . . . lead to arrest," Vol. VI Tr. 1736:8-14, and had been told by an ICE officer that it was "arrestable," *id.* 1742:22-25. Archer thus spoke with other protestors about how "to effect nonviolence," "hold your peace, and avoid fighting." *Id.* 1749:17-1750:12. The group collectively decided to link arms, "because when your arms are linked . . . you can't hit anyone." *Id.* 1750:17-19, 1658:5-11. Archer repeatedly advised other protestors, "If you can't take a punch without throwing one, don't join the line." *Id.* 1751:1-8; 1662:12-20. Archer also collected the names of other protestors' emergency contacts so that they could be informed of any arrest. *Id*. 1745:20-1746:22. The government purported to identify Archer as an organizer because Archer had a "clipboard" and was "talking to several people." Vol. II Tr. 445:6-18. At 3:14pm, Archer posted on Facebook inviting more protestors to join because, "THERE IS A NON-ZERO CHANCE WE



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

CAN WAIT OUT ICE AND THEY MAY FREE THIS MAN." GX77 (Ex. 12). Archer's post also noted that "[s]ome contingents are choosing to risk arrest." *Id.*

While Archer was sitting near the white bus, an unidentified person in a "black mask and hoodie" rode up on a bicycle, used "white spray paint" to obscure the "driver's side" of the bus's windshield, and rode away. Vol. VI Tr. 1751:15-1752:3. Archer testified that the individual was "not one of the protestors," *id.*, and the government agreed that "Archer did not know that individual that spray-painted the bus," Vol. V Tr. 1425:2-6 (Ex. 5).

Around 5:20pm, many protestors, including Archer, moved from the north side of the ICE facility to a gated parking lot on the south side. Vol. II Tr. 456:9-460:17. ICE officers opened the south gate so that vehicles could pass through. GX425 (Ex. 13). When protestors arrived at the gate, Archer stated, "This is what we talked about. If you're willing to risk arrest, link arms." Vol. V Tr. 1449:4-8. Several protestors linked arms and stood together with their backs toward the open gate. GX426 (Ex. 14). They faced their backs toward the gate to "show that we're not going to rush" ICE officers, that "we are not trying to face down people we disagree with." Vol. VI Tr. 1657:16-20. ICE officers approached the protestors from both inside the parking lot and from an adjacent parking lot to the east after exiting the ICE facility. GX25 (Ex. 8); DX605M (Ex. 9); Vol. VI Tr. 1677:10-14. The officers "initiated physical contact because there was a crowd in front of them that wasn't moving." Vol. II Tr. 504:10-16. As a result of ICE officers' "pushing and shoving," several protestors, including Archer, "fell to the ground." *Id.* 505:4-12, 512:6-10; GX25. ICE officers then closed the gate. *Id.* Once the gate closed, officers



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

could be heard on body camera footage laughing and joking about "these guys." Vol. III Tr. 667:22-668:3 (Ex. 3). Special Agent John LaForte can be seen flicking the hat off another protester while walking back towards the building. *Id.* 668:25-669:8.

After the gate closed, protestors other than Archer placed Lime scooters and traffic pylons in front of it. GX401 (Ex. 15). Archer, Laura Tewel, and Liz Moore discussed whether to remove the objects and collectively decided to do so. Vol. VI Tr. 1722:14-1723:6. The objects were in front of the gate for "[l]ess than five minutes." *Id*. 1661:14-23. No evidence showed any damage to the gate. GX401.

The detainees were removed from the building at 9:00pm. Vol. III Tr. 627:2-6, 724:23-725:1. Archer remained at the south gate for the remainder of the evening, ultimately leaving around 12:30am on June 12. Vol. VI Tr. 1760:20-21.

On June 12, 2025, Archer created a voice memo describing their experience at the protest. GX78 (Ex. 16). Archer stated that they were "part of a group" whose "job was to link arms and man [the South] gate and keep anything from going in or out." *Id.* The group "got beaten up over it." *Id.* ICE officers "pushed us around, pushed us to the ground, manhandled us." *Id.* Archer and other protestors "got bumped and scraped and bruised," but they "held the gate." *Id.* Ultimately, it did not "turn out the way" Archer "wished" because the "two asylees" Archer was "hoping to protect" were "still abducted." *Id.* Archer stated that their group "was not planning to fight in any way." *Id.* If they "got arrested," they "were going to accept arrest." *Id.* Archer concluded by stating that the "community" collectively "made it so that [ICE] had to essentially deploy violence in order to kidnap these boys." *Id.*



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

The government argued in closing that Archer was "organizing" protestors to "stop the transport" and "block the exit." Vol. VII Tr. 1877:10-12, 1881:15-17, 1890:13-18 (Ex. 7). It urged that protestors sought to "force the release" of Torres and Perez, *id.* 1873:20-21, and "collectively made it so that [officers] had to essentially deploy violence," *id.* 1890:4-5. In the government's view, "[f]ederal officers don't have to sit on their hands and do nothing." *Id.* 1956:14-15. It analogized protestors' linked arms to "pushing back" in a "rugby scrum," *id.* 1878:15, and asserted that "the fact that the officers pushed [demonstrators,] that's not a defense" because demonstrators "cannot push back," *id.* 1892:9-11. The jury then convicted Archer of conspiring "to prevent by force, intimidation, or threat, any officer of the United States from discharging any of their official duties." ECF 367 at 2. It also found that Archer conspired to "injure the property" of a federal officer and aided and abetted a conspiracy by others. *Id.*

## ARGUMENT

The Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(c). The First Amendment alters the ordinary Rule 29 standard of review by requiring the Court to "'make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.'" *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002) (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984)). Such review compels Archer's acquittal on the charge of violating 18 U.S.C. § 372. The government seeks to apply § 372 to Archer's support for, organization of, and

participation in nonviolent protest—activities that are "clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) ("Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment."). The First Amendment requires the Court to narrowly construe § 372's prohibition and precludes its application to Archer. Stretching the statute to reach Archer's conduct would violate intermediate scrutiny—or *a fortiori* strict scrutiny, because it would impose a greater burden on expressive activities than any important or compelling government interest would require.

Even without considering the First Amendment, the government's evidence fails to carry its heavy burden. Section 372 requires proof beyond a reasonable doubt that conspirators knowingly agreed and intended to use "force, intimidation, or threat." The government at most proved that demonstrators knowingly agreed and intended to oppose ICE's transportation of Torres and Perez to a different facility. It offered no evidence that Archer agreed or intended to use force or threats in support of that opposition.

Nor can the government convict Archer for conspiring to "injure" the "property" of a federal officer. Any conviction for conspiracy to injure property constructively amends the Indictment, which never identified property injury as an object of the conspiracy. Nor did the evidence support such a conviction.

## I. The First Amendment Prohibits Archer's Conviction.

Archer's prosecution arose from activities protected by the First Amendment. Archer protested on the public sidewalk, which has been considered a public forum



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

since "time immemorial," and where any restrictions on speech or expression are "subject to a particularly high degree of scrutiny." *Collins*, 110 F.3d at 1371. Archer's speech and expression protested federal immigration enforcement—an issue of public concern that "'occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983) (cleaned up)).

Courts cannot "sustain a conviction that may have rested on a form of expression . . . which the Constitution tolerates and protects." *Street v. New York*, 394 U.S. 576, 594 (1969); *accord Cox v. Louisiana*, 379 U.S. 536, 545 (1965); *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963). While courts considering a Rule 29 motion must ordinarily view the evidence in the light most favorable to the government, the First Amendment here requires "an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Hanna*, 293 F.3d at 1088 (quoting *Bose Corp.*, 466 U.S. at 499). "In other words, on a First Amendment issue, if the . . . court disagrees with the factfinder's assessment of the evidence, the court must overturn the conviction." *United States v. Hayner*, 371 F. Supp. 3d 700, 705 (N.D. Cal. 2018); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964) (courts must "review the evidence" to determine the "line between speech unconditionally guaranteed and speech which may be legitimately regulated"). The Court must assess, without deference to the jury, the "facts that determine the core issue of whether the challenged speech is protected by the First Amendment." *Hanna*, 293 F.3d at 1088.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

**A. The Government Failed to Prove the Intent Required by § 372.**

A conviction under 18 U.S.C. § 372 requires proof of a knowing agreement and intent to use "force, intimidation, or threat." The First Amendment requires each term to be construed narrowly in the context of protected demonstrations, because enforcement threatens to "chill, or deter, speech outside [their] boundaries." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023); *see Claiborne Hardware*, 458 U.S. at 916 ("When [violence] occurs in the context of constitutionally protected activity, . . . 'precision of regulation' is demanded."). Applying such constructions, the evidence does not show that Archer specifically intended to further the use of "force, intimidation, or threat."

**1. The Government Has Not Proved Intent to Use "Force".**

Under this Court's jury instructions, an "act involves 'force' if it threatens or results in violence." ECF 361 at 21; *see Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("A physical assault is not . . . expressive conduct protected by the First Amendment."). Physical presence cannot constitute force, and as part of an assembly, presence is protected by the First Amendment. *Claiborne Hardware*, 458 U.S. at 925; *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937). Additionally, "[m]erely tensing up or merely resisting does not, by itself, constitute 'force.'" ECF 361 at 21.

The First Amendment prohibits charging conspiracy to use force based solely on mere advocacy or encouragement of the use of force, much less nonviolent civil disobedience. The First Amendment does not permit the government "to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). "'Imminent lawless action,' as used in *Brandenburg*, means violence or physical disorder in the nature of a riot." *White*, 227 F.3d at 1228. "Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment." *Id.* "Statutes affecting the right of assembly," on their face and as applied to specific defendants, "must observe the established distinctions between mere advocacy and incitement to imminent lawless action." *Brandenburg*, 395 U.S. at 449 & n.4. Even advocacy that organizes, urges, encourages, or promotes a riot receives First Amendment protection if it fails *Brandenburg*'s imminence requirement. *See United States v. Rundo*, 990 F.3d 709, 716-18 (9th Cir. 2021).

Archer's advocacy of nonviolent civil disobedience fails these standards several times over. Archer *never* advocated violence, much less did so when violence appeared imminent. The evidence at trial proved only that Archer promoted, organized, and engaged in passive, nonviolent resistance. Archer locked arms with other demonstrators to express their solidarity in opposition to the transportation of Torres and Perez through the ICE facility's south gate. In the Fourth Amendment context, the Ninth Circuit has held that linking arms, even through "lock-down devices known as 'black bears,'" is a form of "peaceful protest[ ]." *Headwaters*, 276 F.3d at 1127-28; *see Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

2022) ("die-in" that disrupted city council meeting was "nonviolent," "minor offense" that "did not pose any physical danger to others").[2]

Archer's conduct never threatened or resulted in violence. Archer joined with demonstrators who doubly emphasized their peacefulness by immobilizing their linked arms and placing their backs to ICE officers. Unrebutted testimony showed that demonstrators' choice to link arms *prevented* violence, because "you can't do anything with your hands." Vol. VI Tr. 1658:5-11; *id.* 1750:2-25 ("when your arms are linked, . . . you can't hit anyone"). The same is true of demonstrators' choice to face their backs to ICE officers: it "show[s] that we're not going to rush them," that "we are not trying to face down people we disagree with." Vol. VI Tr. 1657:16-20. One demonstrator played a musical instrument; another repeated that Perez and Torres "just want to be safe." GX24 (Ex. 17).

Even if the government could have proved that *some* demonstrators agreed to use "force, intimidation, or threats," it still failed to prove that Archer knowingly joined any such agreement, let alone that they intended to do so. Unrebutted evidence showed Archer's commitment to nonviolence. Vol. VI Tr. 1751:1-8, 1662:12-20. Archer linked arms with fellow demonstrators and turned their back to officers to *prevent* violence, precisely because they never intended violence to occur. *See* pp. 2-6, *supra*. They repeatedly told other protestors not to engage in violence. *E.g.*, Vol.

---

[2] Even where demonstrators "link[ ] arms to block officers' access," the government only has a legitimate interest in using "minimal force to maintain order." *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018).



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

VI Tr. 1751:1-8 ("If you can't take a punch without throwing one, don't join the line."). Even Archer's social media posts announced only an intention to "WAIT OUT ICE." GX77. And that is exactly what Archer attempted to do, waiting at one entrance to the ICE facility from "about 4:00 p.m. to midnight." Vol. VI Tr. 1806:25-1807:3.

The government's theories of "force" lack merit and would transform virtually *any* form of civil disobedience—physical or otherwise—into force. The government repeatedly urged that Archer intended to "force the release" of Torres and Perez. *E.g.*, Vol. VII Tr. 1873:20-21. But that is a play on words, describing not the *conduct* in which Archer engaged but instead the *outcome* they sought to achieve. Expressive conduct does not "lose its protected character . . . simply because it may . . . coerce [others] into action." *Claiborne Hardware*, 458 U.S. at 910. All protest seeks to "force" action.

Nor can the government prove demonstrators engaged in "force" by arguing that they "collectively made it so that [officers] had to essentially deploy violence." Vol. VII Tr. 1890:3-5. Such an argument, if accepted, would transform wide swaths of protesting that the Ninth Circuit has found to be peaceful into criminal "force." *See* pp. 9-11, *supra*. Any demonstrator dragged from a peaceful sit-in that disrupted federal officers could face felony charges. That is not the law.

In its closing, the government additionally attempted to analogize linked arms to "pushing back" in a "rugby scrum." Vol. VII Tr. 1878:15. But no rugby team lines up backwards. Demonstrators' decision to link arms and face their backs to ICE



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

proves that demonstrators were "merely resisting" and, under this Court's instructions, defeats any inference of force. ECF 361 at 21.

**2. Archer Had No Intent to Use "Intimidation" or "Threat."**

Nor did Archer conspire to use intimidation or threats against federal officers. The First Amendment limits any prohibition to "true threats," *i.e.*, "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). To prove a "true threat," the government must show not just how a reasonable listener would interpret the statement, but also that the speaker is "aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Counterman*, 600 U.S. at 79; *see* ECF 361 at 21. The Supreme Court required proof of such awareness because doing so "reduces the prospect of chilling fully protected expression," even if it also "shield[s] some otherwise proscribable (here, threatening) speech[.]" *Counterman*, 600 U.S. at 75.

Verbal speech directed at law enforcement officers is subject to special protections. "Criticism of the police, profane or otherwise, is not a crime." *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001). The First Amendment protects "verbal criticism, challenges, and profanity directed at police officers" unless they are true threats or fighting words. *Gulliford v. Pierce Cnty.*, 136 F.3d 1345, 1349 (9th Cir. 1998). And speech cannot be "stripped of its constitutional protection simply because it is accompanied by the aggressive gestures involved." *Poocha*, 259 F.3d at 1082 (providing, as an example, "clenching his fists and sticking out his chest").



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

The government never proved that Archer threatened or intimidated officers, condoned other protestors' threats or intimidation, or subjectively understood any protestors' statements to threaten violence. Nor could it. When discussing the protesters' verbal speech as "intimidation" or "threats," the government proved only that demonstrators engaged in profane and harassing speech against law enforcement, Vol. VII Tr. 1879:4-15—speech the First Amendment unequivocally protects, *see* p. 13, *supra*. Nor can the fact that a large group assembled transform protected speech into intimidation, even if it caused officers "apprehension." *Claiborne Hardware*, 458 U.S. at 925; *Cox*, 379 U.S. at 546-50 (rejecting assertion that it was "inherently dangerous and a breach of the peace to bring 1,500 people" to a courthouse protest).

Moreover, Archer's statements repeatedly emphasized the need for nonviolence. Archer repeatedly stated that "If you can't take a punch without throwing one, don't join the line." Vol. VI Tr. 1751:1-8; *id.* 1662:12-20 ("I repeatedly heard Jac ask the same question to anyone who wanted to join our group, 'Can you take a punch without throwing one,' repeatedly."). That is the opposite of a true threat. It underscores Archer's intent that, even if officers engaged in violence *against* protestors, protestors should not respond in kind.

**B. Other Demonstrators' Conduct Cannot Be Imputed to Archer.**

While a conspiracy charge ordinarily permits conviction of one defendant based on actions taken by co-conspirators, the First Amendment limits such convictions in the context of protected demonstrations. Archer cannot be convicted for other demonstrators' actions under § 372 absent proof of "specific intent to



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

further" the use of force, intimidation, or threat. *Claiborne Hardware*, 458 U.S. at 920; *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 834 (9th Cir. 2020) ("The many peaceful protesters, journalists, and members of the general public cannot be punished for the violent acts of others."). Such proof does not exist, because Archer repeatedly disclaimed any intention to engage in force or threats.

Large demonstrations require precise distinctions, because the "term 'concerted action' encompasses unlawful conspiracies and constitutionally protected assemblies." *Claiborne Hardware*, 458 U.S. at 888. The same demonstration can have a "'chameleon-like' character," including both "elements of criminality and elements of majesty." *Id.* (quoting *Krulewitch v. United States*, 336 U.S. 440, 447-49 (1949) (Jackson, J., concurring)). But the First Amendment guarantees the "right of individuals to combine with other persons in pursuit of a common goal by lawful means." *Id.* at 933. It thus prohibits imposition of liability "merely because an individual belonged to a group, some members of which committed acts of violence." *Id.* at 920. Instead, the government must "establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id.* It must not "employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'" *Id.*

*Claiborne Hardware* involved an NAACP boycott of white merchants in Claiborne County, Mississippi. *Id.* at 888-89. Sixteen individuals allegedly engaged in "violent acts or threats of violence." *Id.* at 897-98. A Mississippi court held the NAACP and its leaders jointly and severally liable for the resulting damage on a theory of conspiracy, concluding that the First Amendment does not protect "use of



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

illegal force, violence, and threats against the peace to achieve a goal." *Id.* at 890-95. But the Supreme Court reversed. Although it agreed that the First Amendment does not protect violence, *id.* at 916-17, it held that the boycott could not be "characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts," even if such acts "contributed to the success of the boycott," *id.* at 933. Instead, the plaintiffs had the "heavy" burden of demonstrating that "specific parties agreed to use unlawful means" such as violence and threats. *Id.* at 933-34. The Supreme Court required such proof to avoid the "imposition of punishment for constitutionally protected activity." *Id.*

Following *Claiborne Hardware*, the Ninth Circuit has required proof that a "'group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.'" *Santopietro v. Howell*, 73 F.4th 1016, 1026 (9th Cir. 2023) (quoting *Claiborne Hardware*, 458 U.S. at 920). In *Santopietro*, two artists were jointly performing in public when one allegedly demanded an improper payment. *Id.* at 1020-21. Police officers could not use "evidence of expressive association to engage in a street performance" to infer that both performers had agreed to request improper payments, because such an inference "impermissibly burdens the right to engage in purely expressive activity and association." *Id.* at 1026-28.

These requirements map directly onto § 372. For the first clause of § 372, "'the crucial element separating legal innocence from wrongful conduct[,]' is that the defendant conspires to prevent an employee from discharging his or her duties 'by force, intimidation, or threat.'" *United States v. Ehmer*, 87 F.4th 1073, 1120 (9th



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Cir. 2023) (first quoting *Elonis v. United States*, 575 U.S. 723, 737 (2015) (citation omitted), then quoting 18 U.S.C. § 372). The "culpable mental state" must therefore "be shown with respect to that element." *Id.* Marrying *Ehmer*'s requirements with *Claiborne Hardware* and *Santopietro* requires "specific intent to further" force, intimidation, or threat. *Claiborne Hardware*, 458 U.S. at 920; *Santopietro*, 73 F.4th at 1026. Conspiracy liability extends only to "specific parties" who "agreed to use unlawful means." *Claiborne Hardware*, 458 U.S. at 933.

The government offered no evidence—*none*—that Archer knowingly entered an agreement with intent to use force, intimidation, or threats. The evidence repeatedly showed Archer's commitment to nonviolence. *See* pp. 9-13, *supra*; Vol. VI Tr. 1751:2-8; *id.* 1662:12-20. That is fatal to a § 372 charge. Conspiracy liability extends only to the "specific parties" who "agreed" to use the "unlawful means" of force, intimidation, or threat. *Claiborne Hardware*, 458 U.S. at 933.

Instead of proving specific intent, the government advanced the exact theory *Claiborne Hardware* rejected. As in *Claiborne Hardware*, the government seeks to characterize the demonstration as a "violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts." 458 U.S. at 933. It treats the "entire collective effort" as unlawful rather than holding specific individuals "liable for the consequences" of their unlawful acts. *Id.* For example, the government attempts to hold Archer liable for activities that they *did not know about*, much less plan or participate in. *See* Vol. VI Tr. 1760:1-7 (Archer not aware of the events around the red van). The government admitted in closing that "Archer, no doubt about it, was not at the red van." Vol. VII Tr. 1955:3-10. But it inexplicably treated



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

their absence as "evidence of the conspiracy." *Id.* It urged that Archer was "not at the red van" because they "didn't need to be." *Id. Claiborne Hardware* specifically prohibits attribution to Archer of conduct they never condoned, much less specifically intended. The government's theory would have held the NAACP and its leaders liable for violence committed in support of the boycott they had organized, simply because the "violence contributed to the success of the boycott." *Claiborne Hardware*, 458 U.S. at 933. *Claiborne Hardware* foreclosed that theory.

The government's sweeping understanding of conspiracy violates the very core of the First Amendment. In its closing, the government argued that "people showing up" is a conspiracy. Vol. VII Tr. 1955:21-22. "[L]inking arms" is conspiracy. *Id.* 1956:3-4. It stated that the jury could convict Archer for "organizing" in support of a general plan to "stop the transport" and "block the exit." *Id.* 1877:10-12, 1881:15-17, 1890:13-18. But a general plan to "stop the transport" or "block the exit" does not require or even condone the use of force or threats. Agreement to link arms in front of a gate is not agreement to use violence. Indeed, as in *Santopietro*, the government impermissibly relies on proof of engagement in expressive conduct, such as linking arms, to infer a separate agreement to use force, intimidation, or threats. 73 F.4th at 1026-28.

The government made no effort to hide the breadth of its theory in closing: "This is not a one-person thing. This is not a two-person thing. This isn't even a hundred-person thing." Vol. VII Tr. 1955:8-9. A theory that could convict more than a hundred protestors who demonstrated on June 11, 2025, for the violence of a few does not show the "precision of regulation" required by the First Amendment.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*Claiborne Hardware*, 458 U.S. at 916. It "impermissibly burdens the right to engage in purely expressive activity and association." *Santopietro*, 73 F.4th at 1028.

The government's scattershot conspiracy theory does not just violate the First Amendment; it threatens to chill protesting throughout the country. Under the government's view, any protestor who joins a demonstration seeking to "block" government action faces felony conviction if any other protestor engages in an act of violence.

Likewise, Archer's conviction for others' conduct on a theory of aiding and abetting cannot stand. An aiding-and-abetting conviction requires proof of "specific intent to facilitate the commission of a crime" and the "requisite intent of the underlying substantive offense." *United States v. Shorty*, 741 F.3d 961, 970 (9th Cir. 2013); ECF 361 at 23. Those elements would again require proof of Archer's "specific intent to further" the object of the conspiracy through force, intimidation, or threats. *Claiborne Hardware*, 458 U.S. at 920; *Santopietro*, 73 F.4th at 1026. No such proof exists.

**C. Application of § 372 to Archer Fails Intermediate Scrutiny.**

Any interpretation that stretched § 372 to cover the conduct proved at trial would render the statute unconstitutional as applied to Archer. While the Court previously held § 372 "content-neutral," ECF 276 at 7-8, the charges here targeted core protected speech based on its opposition to government actions, triggering strict scrutiny, *Chiles v. Salazar*, 146 S. Ct. 1010, 1021 (2026). Regardless, even a "content-neutral" law "must be 'narrowly tailored to serve a significant governmental interest,'" such that it does not "'burden substantially more speech



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

than is necessary to further the government's legitimate interest,'" *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796-99 (1989)); *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968) (reviewing conviction under 50 U.S.C. App. § 462(b) (now 50 U.S.C. § 3811(b)). Because the government failed to satisfy even intermediate scrutiny, it cannot satisfy strict scrutiny *a fortiori*.

Section 372 "'was enacted by a Congress acutely aware of the massive and frequently violent resistance in the southern states to federal Reconstruction after the Civil War.'" *United States v. Rhodes*, 610 F. Supp. 3d 29, 51 (D.D.C. 2022) (quoting *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977)). The need resulted from the "inability or unwillingness of state governments to deal effectively with" such violence. *Stern*, 547 F.2d at 1334. But Congress also created narrower means for addressing interference with officers' duties. When it enacted § 372, it also authorized private civil actions against any conspiracy to use "force, intimidation, or threat" against federal officers. 42 U.S.C. § 1985(1). It later authorized the Secretary of Homeland Security to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Federal Government and persons on the property," 40 U.S.C. § 1315(c), authority the Secretary did not exercise until she promulgated rules on June 9, 2025, that did not take effect until November 5, 2025, *see* Protection of Federal Property, 90 Fed. Reg. 24,217 (June 9, 2025); Protection of Federal Property; Changed Effective Date, 90 Fed. Reg. 49,247 (Nov. 5, 2025).



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

While the government has a "significant" interest in protecting officers, it never even attempted to show that it "seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 492. It never argued that state and local authorities could not have protected officers (as they indisputably did), that officers could not redress injuries civilly under § 1985 (they suffered none), or that the Secretary could not have promulgated targeted regulations (as she later did).[3] Absent any showing that it attempted to use such less intrusive means, the government cannot show that its application of § 372 to Archer is "narrowly tailored" to burden no "'more speech than is necessary.'" *Id.* In fact, DOJ specifically directed United States Attorneys to use the most restrictive means—and to "[p]ush out press releases whenever [they] file charges in these matters."[4] The government cannot jump to felony prosecution as a matter of convenience,

---

[3] Under 6 C.F.R. §§ 139.35, 139.85, obstructing "access to Federal property" and impeding the "performance of official duties by Federal employees" is a misdemeanor punishable by imprisonment "for not more than 30 days." Such a charge necessarily imposes a lesser burden on protected speech than felony prosecution under § 372. The government's failure to promulgate that regulation by June 11, 2025, is no basis to permit felony prosecution here.

[4] Sarah N. Lynch, *Prosecutors told to prioritize, publicize cases tied to Trump immigration protests*, Reuters (Jun. 12, 2025), https://www.reuters.com/world/us/prosecutors-told-prioritize-publicize-cases-tied-trump-immigration-protests-2025-06-12.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

especially where its publicization of charges reflects an intent to encourage "'self-censorship' of speech that could not be proscribed." *Counterman*, 600 U.S. at 75.

The government's application of § 372 to Archer is particularly troubling because it criminalizes simply withstanding "force" *used by ICE officers*. The government argued in closing that "the fact that the officers pushed [demonstrators,] that's not a defense" because demonstrators "cannot push back." Vol. VII Tr. 1892:9-11. It urged that "Federal officers don't have to sit on their hands and do nothing." *Id*. 1956:14-15. That turns the First Amendment on its head. The government cannot prosecute demonstrators for withstanding pushing that ICE initiated. Such prosecution relieves ICE officers of their constitutional obligation to burden no more speech than necessary and replaces it with a requirement that demonstrators ensure that they burden no more of ICE's conduct than is necessary to express their views. The First Amendment prohibits that result. It is never "the speaker's burden to prove that his [conduct] should be protected from criminal prosecution." *United States v. Alvarez*, 617 F.3d 1198, 1204 (9th Cir. 2010) *aff'd*, 567 U.S. 709 (2012). The government never even considered less restrictive alternatives. That is fatal to the conviction.

## II. The Government Failed to Prove § 372 Conspiracy.

Setting aside the First Amendment, the government's evidence at trial was insufficient to prove a § 372 conspiracy. It instead proved only that Archer agreed to oppose ICE's detention and transportation of Torres and Perez, which cannot be the basis of a § 372 conviction.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

When reviewing the sufficiency of the evidence for questions other than the First Amendment's application, the Court must construe the evidence "in the light most favorable to the Government" and ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Amintobia*, 57 F.4th 687, 697 (9th Cir. 2023) (quoting *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010)) (emphasis in *Nevils*). Sufficiency "does not rest on how the jury was instructed." *Musacchio v. United States*, 577 U.S. 237, 243 (2016).

The Ninth Circuit has held that the "crucial element separating legal innocence from wrongful conduct" under § 372 is "that the defendant conspires to prevent an employee from discharging his or her duties 'by force, intimidation, or threat.'" *Ehmer*, 87 F.4th at 1120-21. The "'culpable mental state' must . . . be shown with respect to that element." *Id.*; *see* ECF 361 at 17-20. No "'rational trier of fact'" could find that a demonstrator who expressed a commitment to nonviolence, actively sought to prevent violence, and then simply waited for hours had knowingly and intentionally joined a conspiracy to use threats or violence. *Amintobia*, 57 F.4th at 697; *see United States v. Mendoza*, 25 F.4th 730, 738-40 (9th Cir. 2022) (vacating conspiracy conviction where "multiple items of evidence . . . affirmatively contradict the government's theory").

Most demonstrators concededly did not engage in "force, intimidation, or threats" under this Court's definitions. This case differs markedly from prior § 372 cases, where the defendants were "armed," seized federal land, and had a "confrontation" in which one member of the group was "fatally shot." *Ehmer*, 87



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

F.4th at 1087; *see Finn v. United States*, 219 F.2d 894, 897 (9th Cir. 1955) (defendants "did forcibly and unlawfully arrest" U.S. attorney).

The government offered no evidence of an agreement or plan to use "force, intimidation, or threat," much less knowing participation in such an agreement by Archer. It repeatedly framed the agreement in broader terms: "Block the gate," Vol. VII Tr. 1954:13-14; "stop the transport," *id.* 1877:10-12; "keep the detainees inside," *id.* 1881:15-17; "thoughtfully risk arrest," *id.* 1891:16; "a plan to block the exits, to cover the exits," *id.* 1875:14-15. But each of those goals can be accomplished without "force, intimidation, or threat." *See, e.g.*, *Williamson*, 23 F.4th at 1150, 1152 ("nonviolent" "die-in" that "did not pose any physical danger to others" caused city council meeting to be "adjourned"). Even agreement to "risk arrest" would not satisfy § 372, because "all protests," even nonviolent ones, "carry a risk of arrest." Vol. VI Tr. 1742:9-25. The government framed the alleged agreement broadly because it had no proof that demonstrators agreed to use "force, intimidation, or threats."

## III. Archer Cannot Be Convicted of § 372 Conspiracy to Injure Property.

The jury found that Archer "conspired to injure the property of any officer of the United States" to "impede them in the discharge of their official duties." ECF 367 at 2. For all of the reasons set forth above, pp. 7-22, the First Amendment prohibits this charge. But the Indictment also did not charge Archer with conspiring to injure property. The verdict sheet thus constructively amended the Indictment, permitting the jury to find an uncharged conspiracy. *See* ECF 367. Even if the government had charged Archer with this crime, the evidence disproved it.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

**D. The Government Constructively Amended the Indictment.**

The Fifth Amendment bars the government from prosecuting crimes except "on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. That language guarantees the "'right to be tried only on charges presented in an indictment.'" *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)). "A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *Id.* (quotation marks omitted).

The Indictment did not charge Archer with conspiring to injure property. The "Objects of the Conspiracy" charged in the Indictment "included the use of force and threats against, and intimidation of federal agents . . . in order to impede and thwart the processing and transport of federal detainees to their immigration hearings." ECF 1 at 2. The alleged objects make no mention of "property"—none—much less injury to property. The verdict sheet thus "constructively amended the indictment by permitting the jury to convict" Archer on "conduct not alleged in the indictment," *i.e.*, conspiracy to injure property. *Ward*, 747 F.3d at 1191-92. The Court must vacate Archer's conviction for such conspiracy. *Id.*

**E. Archer Did Not Conspire to Injure Property.**

The evidence at trial refuted any allegation that Archer conspired to injure property. Archer specifically testified that they did not "have any agreement to engage in vandalism." Vol. VI Tr. 1761:5-9. The few instances of property damage the government identified had no connection to Archer. First, the individual who



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

spray-painted the windshield of the white bus was not a protestor but a "rando." GX78; Vol. VI Tr. 1751:21-1752:3. The government never identified that individual, Vol. V Tr. 1425:2-6, much less proved he had any agreement with other protestors. Second, the evidence showing demonstrators stacked items against the ICE facility's south gate also proved that no property injury occurred as a result, let alone any property of an officer of the United States. *E.g.*, GX401. Regardless, Archer *removed* those items after less than five minutes, Vol. VI Tr. 1804:8-11; *id.* 1660:10-1661:23, defeating any inference that they agreed to that conduct, *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980). Finally, Archer never went near the red van. Vol. VI Tr. 1760:1-3; Vol. II Tr. 514:13-16. The record is simply devoid of evidence that Archer agreed with anyone to injure property. No reasonable trier of fact could so find. *Amintobia*, 57 F.4th at 697.

## CONCLUSION

Archer committed to nonviolence and passively resisted government action they regarded as unjust. The First Amendment does not permit their conviction under § 372. If Archer can be prosecuted for "force, intimidation, or threats," then no demonstrator is safe from felony liability. Such charges threaten not just Archer's liberty, but the tradition of protest that has moved our laws toward justice for a century. The Court should enter a judgment of acquittal.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

RESPECTFULLY SUBMITTED this 21st day of August, 2026.

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.

By: /s/ *Andrew M. Wagley*
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007

LOWELL & ASSOCIATES, PLLC

By: /s/ *Caleb Hayes-Deats*
Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)

*Attorneys for Defendant Archer*



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 21st day of August, 2026 in Washington, D.C.

By: *_/s/ Caleb Hayes-Deats_*
Caleb Hayes-Deats