Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
carl@ettermcmahon.com
awagley@ettermcmahon.com

Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
Phone: (202) 964-6110
chayes-deats@lowellandassociates.com
sstandley@lowellandassociates.com
areilly@lowellandassociates.com

*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAC DALITSO ARCHER, *et al.*,

Defendants.

No. 2:25-CR-00113-RLP-9

**DEFENDANT JAC DALITSO ARCHER'S RULE 33 MOTION FOR A NEW TRIAL**

ORAL ARGUMENT REQUESTED
November 18, 2026, at 10:00am PT

# TABLE OF CONTENTS


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. *In Limine* Decisions Prejudiced Archer's Defense ..... 3

A. Archer Was Barred from Explaining Important Comments ..... 4

B. Archer Was Barred from Contesting an Element of § 372 ..... 5

C. The Categorical Exclusion of "Politics" ..... 6

II. The Government Offered Improper Opinion Testimony ..... 8

III. The Jury Instructions Omitted Key Requirements ..... 10

A. The Jury Was Not Advised of the Specific Intent Requirement ..... 10

B. The Jury Was Not Instructed on First Amendment Requirements ..... 13

IV. The Government Misstated Law and Fact in Its Closing Argument ..... 15

V. The Evidence Weighs Heavily Against the Verdict ..... 19

VI. The Cumulative Impact of Multiple Errors Warrants a Retrial ..... 21

CONCLUSION ..... 22




LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

# TABLE OF AUTHORITIES

**Cases**

*Boos v. Barry*,
485 U.S. 312 (1988) .......... 6

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) .......... 13, 14

*Carter v. Kentucky*,
450 U.S. 288 (1981) .......... 10

*Duran v. City of Douglas*,
904 F.2d 1372 (9th Cir. 1990) .......... 17

*Elonis v. United States*,
575 U.S. 723 (2015) .......... 11

*Jones v. Davis*,
8 F.4th 1027 (9th Cir. 2021) .......... 4

*Minnesota Voters All. v. Mansky*,
585 U.S. 1 (2018) .......... 6, 7

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) .......... 11, 13, 14, 19

*Ocasio v. United States*,
578 U.S. 282 (2016) .......... 11, 19

*Rehaif v. United* States,
588 U.S. 225 (2019) .......... 11

*Santopietro v. Howell*,
73 F.4th 1016 (9th Cir. 2023) .......... 11, 15

*Stern v. U.S. Gypsum, Inc.*,
547 F.2d 1329 (7th Cir. 1977) .......... 17

*United States v. Alferahin*,
433 F.3d 1148 (9th Cir. 2006) .......... 12, 17, 21



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*United States v. Alston*,
974 F.2d 1206 (9th Cir. 1992) .......... 2, 3, 19

*United States v. Dixon*,
201 F.3d 1223 (9th Cir. 2000) .......... 10

*United States v. Ehmer*,
87 F.4th 1073 (9th Cir. 2023) .......... 1, 11, 12, 19

*United States v. Elmezayen*,
No. 21-50057, 2023 WL 313208 (9th Cir. Jan. 19, 2023) .......... 9

*United States v. Frederick*,
78 F.3d 1370 (9th Cir. 1996) .......... 3, 21

*United States v. George*,
No. 2:24-cr-0073-RHW, 2026 WL 2044023 (E.D. Wash. July 15, 2026) .......... 2

*United States v. Haischer*,
780 F.3d 1277 (9th Cir. 2015) .......... 8

*United States v. Henderson*,
318 F. Supp. 3d 1221 (E.D. Wash. 2018) .......... 15

*United States v. Inzunza*,
638 F.3d 1006 (9th Cir. 2011) .......... 3, 21

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) .......... passim

*United States v. Komisaruk*,
885 F.2d 490 (9th Cir. 1989) .......... 16

*United States v. Kvashuk*,
29 F.4th 1077 (9th Cir. 2022) .......... 4

*United States v. Lloyd*,
807 F.3d 1128 (9th Cir. 2015) .......... 3, 9, 21

*United States v. Morales*,
108 F.3d 1031 (9th Cir. 1997) .......... 8



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*United States v. Poocha*,
259 F.3d 1077 (9th Cir. 2001) ........................................ 17

*United States v. Preston*,
873 F.3d 829 (9th Cir. 2017) ........................................ 8, 9

*United States v. Rhodes*,
610 F. Supp. 3d 29 (D.D.C. 2022) ........................................ 1, 17

*United States v. Rubio-Villareal*,
967 F.2d 294 (9th Cir. 1992) ........................................ 10

*United States v. Rundo*,
990 F.3d 709 (9th Cir. 2021) ........................................ 14

*United States v. Sanchez-Lima*,
161 F.3d 545 (9th Cir. 1998) ........................................ 9

*United States v. Stever*,
603 F.3d 747 (9th Cir. 2010) ........................................ 5, 8

*United States v. Tucker*,
641 F.3d 1110 (9th Cir. 2011) ........................................ 15, 18

*United States v. U.S. Gypsum Co.*,
438 U.S. 422 (1978) ........................................ 10

*United States v. Velazquez*,
1 F.4th 1132 (9th Cir. 2021) ........................................ 15, 16

*United States v. Vera*,
770 F.3d 1232 (9th Cir. 2014) ........................................ 10

*United States v. Wallace*,
848 F.2d 1464 (9th Cir. 1988) ........................................ 3

*United States v. Winters*,
729 F.2d 602 (9th Cir. 1984) ........................................ 8

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........................................ 14, 15



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

**Other Authorities**

18 U.S.C. § 372 .......... *passim*

Federal Rule of Evidence 702..........8

Federal Rule of Criminal Procedure 33(a).......... 1, 2

U.S. Const. amend. I .......... *passim*

U.S. Const. amend. V.......... 5

U.S. Const. amend. VI .......... 5



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Defendant Jac Dalitso Archer hereby moves for a new trial under Federal Rule of Criminal Procedure 33(a) and the following points and authorities.

## INTRODUCTION

The prosecution of Archer applied a rarely charged statute to facts that fundamentally did not fit. Congress enacted 18 U.S.C. § 372 to protect federal officers from state-supported violence after the Civil War. *United States v. Rhodes*, 610 F. Supp. 3d 29, 51 (D.D.C. 2022). The leading Ninth Circuit precedent applied the statute to an armed standoff between federal officers and civilians that lasted weeks and resulted in one death. *See United States v. Ehmer*, 87 F.4th 1073, 1086-88 (9th Cir. 2023). The prosecution here, in contrast, applied it to a large demonstration that the First Amendment protected and that local police officers controlled and resolved within twelve hours.

The mismatch between the charge and the facts created a cascade of issues and resulted in a verdict against the great weight of the evidence. The government had no evidence of a preexisting conspiracy among demonstrators. To address that hole at the center of its case, the government relied heavily on Archer's statements about "risking arrest." But it successfully excluded Archer's understanding of those statements, which plainly related to the existence and scope of any agreement. The government then compounded the error by improperly introducing officers' opinion testimony about demonstrators' state of mind.

Later, the government sought and obtained jury instructions that omitted the critical element of specific intent and that failed to explain that the First Amendment protects even speech that advocates "risking arrest." The government then exploited



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

those mistaken instructions in closing. It asserted that the jury could convict Archer based on mere awareness of others' conduct, without any finding that Archer intended the use of threats or force. And it urged the jury to disregard the First Amendment entirely.

Those errors resulted in a conviction against the great weight of the evidence. Archer repeatedly committed to nonviolently express their opposition to the government's actions in Spokane. Their conviction for conspiring to use force and threats—the exact *opposite* of their intention—could result only from jury confusion about what the government needed to prove. That confusion mandates a new trial.

## FACTUAL BACKGROUND

Archer incorporates by reference the Factual Background section set forth in the simultaneously filed Motion for Judgment of Acquittal. Acquittal Mot. at 2-6.

## LEGAL STANDARD

District courts "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "'A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal.'" *United States v. George*, No. 2:24-cr-0073-RHW, 2026 WL 2044023, at *4 (E.D. Wash. July 15, 2026) (quoting *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)). On a Rule 33 motion, the Court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000) (citation omitted).

As relevant here, a new trial is warranted in two circumstances. First, a new



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

trial should be granted where trial errors significantly prejudice the defendant. Where there are multiple errors at trial, a "'balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)). Second, where, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," a new trial should be granted. *Kellington*, 217 F.3d at 1097 (quoting *Alston*, 974 F.2d at 1211). "Even if no error individually supports reversal, the cumulative effect of numerous errors may support reversal." *United States v. Inzunza*, 638 F.3d 1006, 1024 (9th Cir. 2011). And courts evaluating the prejudice of cumulative errors also consider the strength of the government's case, recognizing that prejudice is more likely "'where the government's case is weak.'" *United States v. Lloyd*, 807 F.3d 1128, 1168 (9th Cir. 2015) (quoting *Frederick*, 78 F.3d at 1381).

## ARGUMENT

### I. *In Limine* Decisions Prejudiced Archer's Defense.

The government moved *in limine* to prohibit Archer from: (1) introducing evidence of Department of Justice ("DOJ") policy and (2) challenging whether Immigration and Customs Enforcement ("ICE") officers were engaged in the execution of their duties at relevant times during the case. ECF 297 at 5-8. The Court granted those motions and also ruled *sua sponte* that neither party could mention "politics."



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Vol. I Tr. 225:14-16 (Ex. 1).[1] These rulings deprived Archer of their Fifth and Sixth Amendment rights to "present a complete defense" and "'put before a jury evidence that might influence the determination of guilt.'" *United States v. Kvashuk*, 29 F.4th 1077, 1090 (9th Cir. 2022) (quoting *Jones v. Davis*, 8 F.4th 1027, 1035 (9th Cir. 2021)).

**A. Archer Was Barred from Explaining Important Comments.**

The Court held that Archer could not introduce evidence of DOJ policy because it would "amount to an attempt to introduce a selective prosecution argument," which was "properly determined by the Court." ECF 297 at 5-6. But Archer did not intend to make a "selective prosecution argument." Instead, they sought to highlight DOJ's "policies and practices regarding the prosecution of protestors," which were "highly relevant" to Archer's subjective understanding of their statement about "choosing to risk arrest." ECF 275 at 5-9. The government repeatedly invoked Archer's statement about "risk[ing] arrest" as evidence of Archer's and others' intention to violate the law. Vol. VI Tr. 1686:22-25 (Ex. 6); Vol. VII Tr. 1891:15-16 (Ex. 7). But DOJ's actions before June 11, 2025, reflected a policy and practice of charging protestors who, in DOJ's view, obstructed immigration enforcement.[2] The

---

[1] Exhibits referenced herein are attached to the Declaration of Andrew Wagley in Support of Defendant Archer's Rule 29 and Rule 33 Motions, filed concurrently with this motion.

[2] *See, e.g.*, First Assistant United States Attorney Bilal Essayli (@USAttyEssayli), X (Jun. 6, 2025), https://x.com/USAttyEssayli/status/1931156650968088931?s=20



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Court should have permitted Archer to provide this context to their understanding that the "risk" of arrest resulted from an aggressive DOJ policy, not an intention to violate the law. Without such explanation, the jury heard "only one side of the story" regarding statements that provided a central piece of evidence of Archer's intent. ECF 275 at 8.

### B. Archer Was Barred from Contesting an Element of § 372.

The Court also erred when it prohibited Archer from "present[ing] evidence, or argu[ing] to the jury, that the law enforcement officers in this case were not engaged in the execution of their duties." ECF 297 at 7-8. Section 372 makes "lawful discharge of the duties of his office" an element that the government must *prove* to obtain a conviction. 18 U.S.C. § 372. The Court's ruling thus had the effect of barring Archer from contesting an element of the charged offense. *See United States v. Stever*, 603 F.3d 747, 756 (9th Cir. 2010).

Even if the "lawful" scope of officers' duties presented a "legal question," ECF 297 at 8, the Court should not have barred Archer from litigating whether ICE officers' actions discharged their duties as a matter of fact. The government repeatedly offered evidence on this issue. It urged that "Federal officers don't have to sit

---

("Let me be clear: I don't care who you are—if you impede federal agents, you will be arrested and prosecuted."); Cindy Von Quednow, *More than 70 people were arrested in weekend protests in Los Angeles, officials say*, CNN (Jun. 9, 2025) https://www.cnn.com/us/live-news/la-protests-ice-raids-trump-06-09-25?post-id=cmbpoh1ec00003b6mzahvqfgh.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

on their hands and do nothing." Vol. VII Tr. 1956:14-16. But such evidence and argument tacitly assume that ICE officers needed to engage in pushing and other tactics to discharge their duties. The Court erred by barring Archer from contesting that premise. Allowing the government, but not Archer, to offer evidence and argument on an element is a material error, requiring a new trial.

### C. The Categorical Exclusion of "Politics".

The Court ruled *sua sponte* during jury selection that no party could "bring in politics." Vol. I Tr. 225:14-15. That prohibition imposed a vague requirement that Archer struggled to navigate, contradicted the Court's *in limine* rulings, and constrained Archer's ability to rebut the government's evidence and argument regarding protestors' state of mind.

First, the prohibition on discussing "politics" failed to provide the parties a clear rule, disproportionately restricting Defendants. The term "political" can encompass anything "of or relating to government, a government, or the conduct of governmental affairs," or "the structure or affairs of government, politics, or the state." *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 17 (2018). Virtually anything about ICE's operations can qualify as political. But because public protest is a form of "classically political speech," *Boos v. Barry*, 485 U.S. 312, 318 (1988), the prohibition on discussing politics disproportionately impacted Defendants, imposing a powerful restraint on their ability to explain their motivations for protesting.

That restraint undercuts the Court's *in limine* rulings. The rulings recognized that "Defendants' subjective belief that Mr. Torres and other detainees were illegally detained is necessary to provide context for why they were at the HSI facility on



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

June 11, 2025." ECF 297 at 7. In practice, however, the bar on discussing politics prevented Archer, Mavalwalla, and Forral from explaining why they believed ICE had "illegally detained" Joswar Rodriguez Torres and Cesar Alvarez Perez. Forral's counsel, for example, was permitted to elicit only testimony that Torres and Perez were "here on asylum," "arrested because of an administrative hold," and "not arrested because of a crime." Vol. III Tr. 820:20-22 (Ex. 3). But those questions did nothing to elucidate whether the detention due to the "administrative hold" was "illegal," as Archer believed (and a court later held, *see Torres v. Noem*, No. 25-c-2697-JLR, 2026 WL 234076, at *1 (W.D. Wash. Jan. 29, 2026)).

The government, in contrast, faced no such restraint. Government witnesses testified that ICE officers were "worried about the safety of the people that were in our custody." Vol. III Tr. 783:25-784:7; *see also* Vol. IV Tr. 887:15-18 (Ex. 4) (officer describing need "to maintain my duty to those detainees and their well-being"). And they painted demonstrators as irrationally angry. *E.g.*, Vol. III Tr. 589:15-19 ("in large groups like this, a lot of times there's a mob mentality that takes over, and sometimes it turns violent"); *id.* 788:2-10 ("there was hostility just from the anger you could hear in their voices"); Vol. IV Tr. 978:13-979:1 ("I saw what I recognized as people in black bloc, like antifa types with goggles, backpacks, that looked like they were ready for riots and for, you know, sort of fighting the police."). Such testimony was no less "political" than the evidence Defendants were barred from offering. It too related to the "conduct of governmental affairs," *Minnesota Voters All.*, 585 U.S. at 17, portraying officers' actions as motivated by concern for Torres and Perez's well-being and demonstrators' opposition to those actions as irrational.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

The bar on raising politics prevented Archer from rebutting the government's evidence regarding ICE officers' and protestors' respective motivations. Archer testified that ICE officers did not have a "duty to these detainees," but could not explain why because "that gets political." Vol. VI Tr. 1801:4-5. The government repeatedly cross-examined Archer about their statement that ICE sought to "kidnap" Torres and Perez, a statement Archer had no opportunity to explain. *Id.* 1784:21, 1789:10-16. The political explanation for Archer's beliefs was not simply a "legal issue[] surrounding a detainee's immigration case." ECF 297 at 7. It refuted the government's factual assertion that Archer and others acted from "hostility," a "mob mentality," and a desire for "fighting the police." Archer's explanation of their belief that ICE officers had "illegally detained" Torres and Perez showed that protestors were motivated by a desire to protect those individuals' rights, not a desire to "riot." That was "central evidence" of Archer's "*mens rea* defense," and its exclusion deprived them of a "'meaningful opportunity to present a complete defense.'" *United States v. Haischer*, 780 F.3d 1277, 1284 (9th Cir. 2015) (quoting *Stever*, 603 F.3d at 755).

## II. The Government Offered Improper Opinion Testimony.

The government's proof of a conspiracy to use force or threats relied heavily on improper opinion testimony about officers' perception of protestors' state of mind. "[W]hile expert witnesses may testify in the form of opinion as to general matters based on specialized knowledge, Fed. R. Evid. 702, lay witnesses may not."



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*United States v. Preston*, 873 F.3d 829, 836 (9th Cir. 2017).[3] Accordingly, lay opinion testimony is limited to a witness's "personal experience" in the case at hand. *Id.* at 838; *United States v. Elmezayen*, No. 21-50057, 2023 WL 313208, at *2 (9th Cir. Jan. 19, 2023). Lay witnesses may not "testify based on speculation, rely on hearsay or interpret unambiguous, clear statements." *Lloyd*, 807 F.3d at 1154.

Throughout the trial, the government repeatedly adduced testimony about officers' opinions of protestors' mental states. *See, e.g.*, Vol. II Tr. 495:20-22 (Ex. 2); Vol. III Tr. 583:19-584:14, 589:12-24, 590:18-24, 616:10-23, 830:15-24; Vol. IV Tr. 1080:9-12, 1170:4-1172:2. To take one stark example, Special Agent Jared Tomaso testified that, "in [his] experience, when there's a large group of people gathered like this, there's kind of a mob mentality that takes over, and a lot of times people do things, violent things." Vol. III Tr. 589:12-19. He further speculated that demonstrators' "purpose" in linking arms was "to be stronger." *Id.* 590:21-24. No "personal experience" allowed Special Agent Tomaso to testify regarding whether protestors acted from a "mob mentality," much less whether they intended to "be stronger" and do "violent things." Nor does an invocation of Special Agent

---

[3] The government disclosed a single expert in this case, who testified regarding cell phone extractions. ECF 296. Even if the government had sought to qualify officers as experts on demonstrators' motivations, such testimony would have still been inadmissible for lack of a "pertinent art or scientific knowledge" that would permit formation of a "reasonable opinion." *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997) (quoting *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984)).



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Tomaso's "training and experience," *id.* 558:14-17, cure otherwise inadmissible opinion testimony, *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998).

Such testimony prejudiced Archer. It offered officers' subjective beliefs as evidence on the central question of whether protestors conspired to use force, intimidation, or threat. No independent testimony corroborated the existence of such a conspiracy. The jury may thus have found a conspiracy based on officers' improper opinion testimony alone. *See United States v. Vera*, 770 F.3d 1232, 1243-44 (9th Cir. 2014) (vacating jury finding on special verdict form where officer's improper opinion testimony was the "only" evidence supporting it).

## III. The Jury Instructions Omitted Key Requirements.

"Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law." *Carter v. Kentucky*, 450 U.S. 288, 302 (1981). An erroneous jury instruction is grounds for reversal if "there is a reasonable possibility that the error materially affected the verdict." *United States v. Rubio-Villareal*, 967 F.2d 294, 296 n.3 (9th Cir. 1992) (en banc). Courts review jury instructions by determining "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000). Instructions that misstate an element, use vague or confusing language, or rely on terminology falling outside "the comprehension of the average juror," *id.* at 1231, are insufficient to provide this guidance.

### D. The Jury Was Not Advised of the Specific Intent Requirement.

The Court's instructions failed to adequately advise the jury that it needed to



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

find that Archer had specific intent for co-conspirators to use force, intimidation, or threats. Section 372 requires two tiers of *mens rea*, "the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 444 n.20 (1978). Under "long-recognized principles of conspiracy law," conspirators must "reach an agreement with the 'specific intent that the underlying crime *be committed*' by some member of the conspiracy." *Ocasio v. United States*, 578 U.S. 282, 287-88 (2016) (quoting 2 K. O'Malley, J. Grenig, & W. Lee, *Federal Jury Practice and Instructions: Criminal* § 31:03, at 225 (6th ed. 2008) (emphasis in *Ocasio*)). "In other words, each conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense[.]" *Id.* at 292. Charges under § 372 require that the "'culpable mental state' must presumptively be shown" with regard to "force, intimidation, or threat" because it is "'the crucial element separating legal innocence from wrongful conduct.'" *Ehmer*, 87 F.4th at 1120 (first quoting *Rehaif v. United* States, 588 U.S. 225, 229 (2019); then quoting *Elonis v. United States*, 575 U.S. 723, 737 (2015)). The government thus had to prove specific intent that protestors use force, intimidation, or threat.

Even if § 372 alone did not require proof of specific intent, the First Amendment would. The Supreme Court has held that a demonstrator who engaged in constitutionally protected activity cannot be held liable for others' conduct absent proof of "a specific intent to further those illegal aims." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982); *Santopietro v. Howell*, 73 F.4th 1016, 1026 (9th Cir. 2023). First Amendment principles thus reinforce the need to instruct the jury that it



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

could not convict Archer absent a finding of specific intent that demonstrators use force, intimidation, or threat.

Archer proposed a jury instruction that would have required the jury to find specific intent. ECF 311 at 4; Vol. VI Tr. 1512:4-1514:3. But the Court declined to add the instruction, finding it "more confusing than helpful." Vol. VI Tr. 1513:24-1514:1. That was error, and it led the Court to give an instruction that departed significantly from the instructions the Ninth Circuit upheld in *Ehmer*. The *Ehmer* instructions required the jury to find that the "Defendant became a member of such conspiracy knowing of [the unlawful] objective and *specifically intending* to help accomplish it." Ex. 18 at 16 (emphasis added). It further defined specific intent to mean that the "Defendant had a purpose or conscious desire" to "help accomplish" the conspiracy's unlawful objective. *Id.* at 20. Those instructions required the jury to find the "'culpable mental state'" with regard to "force, intimidation, or threat." *Ehmer*, 87 F.4th at 1120. The Court gave no comparable instruction here.

The failure to instruct the jury on specific intent prejudiced Archer. Failing to instruct the jury on an element of the charged crime is always prejudicial, because it is a "basic tenet of due process that a criminal defendant's conviction must rest upon a jury's finding beyond a reasonable doubt that he is guilty of each element of the crime charged." *United States v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006). And the government's closing argument underscored the prejudice. The government conflated the requirement of "knowing" a conspiracy's objective with "intending" to accomplish it: "Now we'll talk about knowingly because that's the intent, is knowingly. You're aware of the act." Vol. VII Tr. 1868:15-16. Such argument urged the



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

jury to convict Archer based on their knowledge of pushing at the south gate, *id.* 1868:19-20, without any finding that Archer had a purpose or conscious desire to further such pushing. Nor was there any evidence of such a purpose or desire. The Court's instruction thus permitted the jury to convict without finding an element of the charge that no evidence supported. A new trial is required.

**E. The Jury Was Not Instructed on First Amendment Requirements.**

The Court's instruction on the First Amendment did not fully apprise jurors of that provision's protections. The First Amendment does not permit the government "to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Nor does it permit the government to impose conspiracy "liability on an individual solely because of his association with another." *Claiborne Hardware*, 458 U.S. at 919. Archer proposed a First Amendment instruction that advised the jury that "[l]iability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence," and that the "First Amendment does not permit government to forbid or proscribe advocacy for an unlawful act" unless such action is "imminent." ECF 298 at 20-21. The Court's ultimate instruction, however, advised the jury of neither protection. ECF 361 at 25.

The Court's failure to advise the jury about the full scope of First Amendment protections prejudiced Archer. The government's evidence and argument repeatedly suggested that Archer's statements about "risk[ing] arrest" rendered them liable for any acts of violence protestors may have committed. Vol. VII Tr. 1891: 14-16. For



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

example, Agent Ian Burns testified that he "interpret[ed]" Archer's statement as "looking for people that are willing to conduct criminal acts achieve their goal." Vol. V Tr. 1410:19-25 (Ex. 5). In closing, the government urged the jury to disregard the First Amendment entirely: "Protesting is important. Assembling is important. Expressing your views is important. But not when this happens. But not when there is the working together in such a way that federal officers, trained federal officers, have to retreat inside a building for hours." Vol. VII Tr. 1959:8-12. Such testimony and argument urged the jury to convict Archer for encouraging others to oppose ICE's actions, without any suggestion that it would incite "imminent lawless action," *Brandenburg*, 395 U.S. at 447, or fall within other First Amendment exceptions. That defies the First Amendment. "Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). Even advocacy of a riot—whether organizing, urging, encouraging, or promoting—receives First Amendment protection if it fails *Brandenburg*'s imminence requirement. *United States v. Rundo*, 990 F.3d 709, 716 (9th Cir. 2021).

The Court appeared to believe that instructing the jury on the issue of incitement "gets rid of conspiracy unless the conspiracy is for imminent violence." Vol. VI Tr. 1508:3-5. But differentiating conspiracy for imminent violence from advocacy of other illegal action is precisely the "precision of regulation" that the First Amendment demands. *Claiborne Hardware*, 458 U.S. at 916; *see id.* at 888 ("'concerted action' encompasses unlawful conspiracies and constitutionally protected assemblies"). *Claiborne Hardware* itself reviewed liability under "three separate conspiracy theories" and applied *Brandenburg*. *Id.* at 891, 928. *Santopietro* makes



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

the need for this instruction clearer still: the Ninth Circuit held that "expressive association may not be the sole basis" to find a conspiracy to engage in another party's subsequent illegal actions. 73 F.4th at 1025. That is precisely what occurred here. The government treated Archer's "protected" advocacy of "civil disobedience," *White*, 227 F.3d at 1228, as purported agreement to engage in "lawless action" that was not imminent at the time of Archer's remarks.

The lack of instruction confused the jury. The jury specifically requested "more information on the difference between the legal definition of a conspiracy versus a person's First Amendment rights of assembly." Vol. VII Tr. 1840:20-25. Archer's proposed instructions explained that a protected assembly could not be treated as a criminal conspiracy absent an imminent threat of lawless action and a specific intent to engage in such action. ECF 298 at 20-21. The instruction the Court ultimately gave erred by failing to explain those established requirements, which would have precluded Archer's conviction. Vol. VI Tr. 1508:3-5.

## IV. The Government Misstated Law and Fact in Its Closing Argument.

During closing argument, the government misstated the law and evidence. Such misstatements require a new trial if "'it is more probable than not that the misconduct materially affected the verdict'" and the judge had not "neutralized" any resulting prejudice. *United States v. Velazquez*, 1 F.4th 1132, 1136 (9th Cir. 2021) (quoting *United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011)); *United States v. Henderson*, 318 F. Supp. 3d 1221, 1246 (E.D. Wash. 2018) (granting a new trial on multiple grounds, among them the government's arguably misleading characterization of the evidence in closing). In "close cases" such as this one, the Court should



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

"not hesitate to reverse a conviction on the basis of a prosecutor's misstatement of the law." *Velazquez*, 1 F.4th at 1136.

***Property***. The government improperly opined on the legal issue of what constitutes an officer's "property" under § 372. "'Property' is commonly defined as . . . 'the exclusive right to possess, enjoy, and dispose of a thing: . . . OWNERSHIP.'" *United States v. Komisaruk*, 885 F.2d 490, 496 (9th Cir. 1989). Defense counsel offered evidence that the white bus the government alleged protestors damaged was "owned by GEO group, a private company," driven by "GEO contract drivers," and thus not "property of federal agents." Vol. VII Tr. 1908:3-6. The government responded by arguing that the jury should decide the legal issue of what constitutes officers' property: "Property, ladies and gentlemen, is the stuff used by federal officers to do their job." *Id.* 1958:14-15. That erroneous redefinition of a statutory term urged the jury to convict for injury not to anything officers owned, but instead to items they merely used. It "was among the last things the jury heard before they began deliberations." *Velazquez*, 1 F.4th at 1140. And nothing in the Court's jury instructions corrected the misimpression the government had created, because the Court did not define the term property. *See* ECF 361.

***Force***. The government urged in closing that demonstrators conspired to force *ICE officers* to use violence: "We might not punch you, but we're going to make sure you can't do what you have to do, and that in order for you to get us out of here, you are -- and you're going to hear this from more than one person -- have to use violence against us." Vol. VII Tr. 1879:18-22. That again misstates the legal standard. Section 372 "'was enacted by a Congress acutely aware of the massive and



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

frequently violent resistance in the southern states to federal Reconstruction after the Civil War.'" *Rhodes*, 610 F. Supp. 3d at 51 (quoting *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977)). It explicitly requires use of "force" "to prevent" officers from "discharging" their duties. 18 U.S.C. § 372. That is the opposite of what the government described in closing. Whereas § 372 requires use of "force" *against* officers to "prevent" the discharge of their duties, the government urged the jury to convict based on "force" used *by* officers to *discharge* their supposed duties. That argument prejudiced Archer by creating the misimpression that the jury could convict based on conduct that did not meet § 372's elements. *Alferahin*, 433 F.3d at 1157.

***Threats and Intimidation.*** The government improperly conflated lawful, protected speech criticizing law enforcement officers with "threats" and "intimidation" by insinuating that a cumulative amount of profane speech can amount to a true threat. Acquittal Mot. at 13-14. The Ninth Circuit has repeatedly held that yelling profanities at law enforcement is protected by the First Amendment. *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) ("Thus, while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment."). Profane criticism of law enforcement is "not stripped of its constitutional protection simply because it is accompanied by … aggressive gestures[.]" *Poocha*, 259 F.3d at 1082. This Court's jury



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

instructions accounted for this requirement, but the government's misstatements of law in its closing conflated protected speech with a true threat.

***Intent.*** The government's statement that "knowingly" is the "intent" required by the statute misstated the law. *See* pp. 12-13, *supra*; Vol. VI Tr. 1868:15-16. Worse still, the government called into doubt Archer's true intent, to express opposition to the detention and relocation of Torres and Perez, by making an unsupported claim that the protesters "delayed" their access to "due process." Vol. VII Tr. 1893:20-24. Such a statement was unduly prejudicial.

***Hostage taking***. The government further inflamed the jury by arguing that protestors conspired to "*hold people hostage inside a building*." Vol. VII Tr. 1889:17-18. Hostage-taking is an extreme and inflammatory mischaracterization of the evidence. The term as commonly understood refers to seizures or kidnappings intended to force third parties to accede to illegal conditions. *See* 18 U.S.C. § 1203. Under federal law, it is punishable by imprisonment for life. *Id.* Here, the facts did not remotely support the allegation of hostage-taking. Unrebutted testimony and evidence showed ICE officers "going in and out of the building, the man gate, the gate, coming, pushing us around from one side and the other. They -- the front door was completely open for like six hours. They could come and go as they wanted." Vol. VI Tr. 1783:16-23; *see also id.* 1677:7-14; GX25 (Ex. 8); DX605M (Ex. 9). The government tried to invoke hostage-taking to bolster its weak case of force, creating the appearance that the ICE officers were subjected to force, even though the government failed to provide proof of any force used against them. Such argument is



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

not a "reasonable inference[] drawn from the evidence presented." *Tucker*, 641 F.3d at 1120.

## V. The Evidence Weighs Heavily Against the Verdict.

The Court has considerable discretion to order a new trial where the evidence weighs heavily against the verdict. *See Alston*, 974 F.2d at 1211-12. As set forth in Archer's motion for a judgment of acquittal, the government's evidence failed to establish beyond a reasonable doubt that Archer joined a conspiracy with specific intent that demonstrators would use "force, intimidation, or threat" or injure property in violation of § 372. *See* Acquittal Mot. at 22-26. But even if the Court identifies an "abstract sufficiency of the evidence to sustain the verdict," it should still find that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Kellington*, 217 F.3d at 1095. In making that determination, the Court's discretion is "much broader" than on a motion for acquittal and includes the power to "weigh the evidence" and "evaluate for itself the credibility of the witnesses." *Id.*

The government bore the burden of proving beyond a reasonable doubt that Archer acted with specific intent that demonstrators use "force, intimidation, or threat" against ICE officers. *Ehmer*, 87 F.4th at 1120; *Ocasio*, 578 U.S. at 287-88; *see also Claiborne Hardware*, 458 U.S. at 920; pp. 11-13, *supra*. The evidence showed the exact opposite. Archer repeatedly emphasized that protestors should practice nonviolence: "If you can't take a punch without throwing one, don't join the line." Vol. VI Tr. 1810:22-25; *id.* 1662:7-20 ("I repeatedly heard Jac ask the same question to anyone who wanted to join our group, 'Can you take a punch



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

without throwing one,' repeatedly."); *id.* 1701:1-8. Archer twice emphasized their commitment to nonviolence when confronting ICE officers at the south gate. First, they linked arms with other protestors to prevent anyone from using their hands to engage officers. *Id.* 1750:2-25 ("when your arms are linked, . . . you can't hit anyone"); *id.* 1658:5-11 ("you can't do anything with your hands"). Second, Archer and others lined up with their backs to ICE officers to "show that we're not going to rush them," that "we are not trying to face down people we disagree with." *Id.* 1657:16-20. That evidence emphasized that Archer went to lengths to *avoid* even the appearance of threats and force, the very things the government charged them with conspiring to undertake.

The government had no response. It committed many of the missteps described above to conceal its lack of evidence and change the standard. It sought to rebut Archer's testimony about why protestors linked arms with officers' improper opinion that the real "purpose" was "to be strong." Vol. III Tr. 590:21-24. It opposed Archer's jury instruction on specific intent, and sought to conflate the intent requirement with mere knowledge, urging the jury to convict based on Archer's awareness of being pushed. Vol. VII Tr. 1868:15-16; *id.* 1868:19-20. And it asserted that, even if Archer had been non-violent, the jury could convict them for forcing ICE officers to use violence, *id.* 1879:18-22, or holding them "hostage inside a building," *id.* 1889:17-18. The government's resort to improper evidence and argument underscores the weakness of its case.

Ultimately, the jury convicted an avowed advocate of nonviolence for conspiring to use or threaten violence against federal officers. That conviction had no



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

basis in the evidence. It was a "serious miscarriage of justice" that warrants a new trial at a minimum, *Kellington*, 217 F.3d at 1095, if not outright acquittal.

## VI. The Cumulative Impact of Multiple Errors Warrants a Retrial.

The Court should review each error identified above not just individually, but also collectively to analyze the "overall effect of all the errors in the context of the evidence introduced at trial against the defendant." *Frederick*, 78 F.3d at 1381. Such review shows that the errors' "cumulative effect" warrants a new trial. *Inzunza,* 638 F.3d at 1024. Archer was barred from explaining comments the government cited as conclusive evidence of their criminal intent. *See* pp. 4-7, *supra*. The prejudice from that error was compounded by the introduction of improper opinion testimony from ICE officers about Archer's and other protestors' states of mind. *See* pp. 8-10, *supra*. And it was further compounded by the Court's failure to instruct the jury on the full scope of the First Amendment's protections and the need to find specific intent. *See* pp. 10-15, *supra*. The government exploited these errors in closing, advancing arguments that misstated both the evidence and the legal standards. *See* pp. 15-19, *supra*.

The government's "weak" case underscores the severity of the prejudice. *Lloyd*, 807 F.3d at 1168. It presented no evidence that Archer had a specific intent to use force, intimidation, or threat or to further such use by others. Without any such evidence, the jury was left to convict Archer based on improper considerations that did not meet the elements. Such conviction violates Archer's right to due process. *Alferahin*, 433 F.3d at 1157. The Court should eliminate any possibility of such a "serious miscarriage of justice" by ordering a new trial. *Kellington*, 217 F.3d at 1095.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## CONCLUSION

The Court should vacate Archer's conviction for violating 18 U.S.C. § 372 and either enter judgment of acquittal or order a new trial.

RESPECTFULLY SUBMITTED this 21st day of August, 2026.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.

By: /s/ *Andrew M. Wagley*
Andrew M. Wagley, WSBA #50007
Carl J. Oreskovich, WSBA #12779

LOWELL & ASSOCIATES, PLLC

By: /s/ *Caleb Hayes-Deats*
Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)

*Attorneys for Defendant Archer*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 21st day of August, 2026 in Washington, D.C.

By: */s/ Caleb Hayes-Deats*
Caleb Hayes-Deats