Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
carl@ettermcmahon.com
awagley@ettermcmahon.com

Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
Phone: (202) 964-6110
chayes-deats@lowellandassociates.com
sstandley@lowellandassociates.com
areilly@lowellandassociates.com

*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JAC DALITSO ARCHER, *et al.*,

Defendants.

No. 2:25-CR-00113-RLP-9

**DEFENDANT JAC DALITSO ARCHER'S REPLY IN SUPPORT OF RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

HEARING DATE
November 24, 2026 at 10:00am PT

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................2

I. The First Amendment Prohibits Archer's Conviction. ................................2

A. Other Demonstrators' Conduct Cannot Be Imputed to Archer. ............4

B. The Government Failed to Prove the Intent Required by § 372 ...........7

1. The Government Has Not Proved Intent to Use "Force."............7

2. Archer Had No Intent to Make Any "Threat." ..............................8

3. Archer Had No Intent to Use "Intimidation." ...............................9

C. Application of § 372 to Archer Fails Intermediate Scrutiny...............11

II. The Government Failed to Prove § 372 Conspiracy..................................12

III. Archer Cannot Be Convicted of § 372 Conspiracy to Injure Property.......13

A. The Government Constructively Amended the Indictment. ...............13

B. Archer Did Not Conspire to Injure Property. ......................................14

CONCLUSION ......................................................................................14




LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

# TABLE OF AUTHORITIES

## Cases

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) ........ 5

*Connick v. Myers*,
461 U.S. 138 (1983) ........ 2

*Counterman v. Colorado*,
600 U.S. 66 (2023) ........ *passim*

*Cox v. Louisiana*,
379 U.S. 536, 549-50 (1965) ........ 10

*Elonis v. United States*,
575 U.S. 723 (2015) ........ 2

*Gulliford v. Pierce Cnty.*,
136 F.3d 1345 (9th Cir. 1998) ........ 9

*Headwaters Forest Def. v. Cnty. of Humboldt*,
276 F.3d 1125 (9th Cir. 2002) ........ 1, 7

*Hess v. Indiana*,
414 U.S. 105 (1973) ........ 9

*Howard v. Daggett*,
526 F.2d 1388 (9th Cir. 1975) ........ 13

*McCullen v. Coakley*,
573 U.S. 464 (2014) ........ 11, 12

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) ........ *passim*

*New York ex rel. Spitzer v. Operation Rescue Nat'l*,
273 F.3d 184 (2d Cir. 2001) ........ 10

*Newsom v. Trump*,
811 F. Supp. 3d 1086 (N.D. Cal. 2025) ........ 14



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*Santopietro v. Howell*,
73 F.4th 1016 (9th Cir. 2023) ........ 4, 5

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........ 2, 14

*Stirone v. United States*,
361 U.S. 212 (1960) ........ 13

*United States v. Bagdasarian*,
652 F.3d 1113 (9th Cir. 2011) ........ 9

*United States v. Ehmer*,
87 F.4th 1073 (9th Cir. 2023) ........ 2, 4, 7, 12

*United States v. Halbert*,
640 F.2d 1000 (9th Cir. 1981) ........ 6

*United States v. Hanna*,
293 F.3d 1080 (9th Cir. 2002) ........ 2

*United States v. Howard*,
650 F. App'x 466 (9th Cir. 2016) ........ 10

*United States v. Keyser*,
704 F.3d 631 (9th Cir. 2012) ........ 3

*United States v. Lacey*,
No. 18-cr-422, 2024 WL 1765673 (D. Ariz. Apr. 23, 2024) ........ 3

*United States v. McCranie*,
889 F.3d 677 (10th Cir. 2018) ........ 10

*United States v. Poocha*,
259 F.3d 1077 (9th Cir. 2001) ........ 10

*United States v. Solomon*,
795 F.2d 747 (9th Cir. 1986) ........ 6

*Virginia v. Black*,
538 U.S. 343 (2003) ........ 8, 9, 10, 11



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*Williamson v. City of Nat'l City*,
23 F.4th 1146 (9th Cir. 2022) ........ 8

*Wisconsin v. Mitchell*,
508 U.S. 476 (1993) ........ 4

**Statutes**

18 U.S.C. § 1752(a)(3) ........ 12

18 U.S.C. § 372 ........ 1, 2, 4, 7

**Other Authorities**

3 Fed. Prac. & Proc. Crim. § 516 (5th ed. 2026) ........ 13



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## INTRODUCTION

In the government's view, anyone who organizes a demonstration becomes a member of a conspiracy and bears responsibility for the actions of every participant. The government's position threatens to irreparably chill protest, a foundational right that for centuries has steered our democracy towards justice. It is foreclosed by *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). There, Charles Evers played the "primary leadership role" in a boycott. *Id.* at 926. He warned that "necks would be broken" and that the sheriff could not protect "boycott violators at night." *Id.* at 927. Some boycott participants acted violently. *Id.* at 916. But the Supreme Court rejected a conspiracy theory based on Evers's "constitutionally protected" acts, because no evidence proved his "specific intent" to further violence. *Id.* at 926.

*Claiborne* supports Jac Archer's acquittal. The government agrees that Archer advocated nonviolence, "emphasiz[ing] to others that they needed to be able to take a punch without throwing one." ECF 447 ("Opp.") 22. It ignores precedent that describes locking arms with other protestors and refusing to move—Archer's conduct—as "peaceful." *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1127 (9th Cir. 2002). A demonstrator who advocates nonviolence and engages in peaceful conduct does not have specific intent to use force, intimidation, or threat. If Evers did not conspire, then Archer surely did not.

The government's evidence of conspiracy defies the First Amendment and fails to satisfy 18 U.S.C. § 372. The government urges that "[h]undreds of people" agreed to "arrive at the same location, remain in usually-unoccupied area[s] for hours, and engage in the same activities, shouting the same profanities, with the same



Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

demonstrated goal." Opp. 10. But that account describes virtually every protest, imperiling the "'highest rung of the hierarchy of First Amendment values.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). And completely absent from the government's recitation is intent by Archer for § 372's "'crucial element'"—the use of "force, intimidation, or threat." *United States v. Ehmer*, 87 F.4th 1073, 1120 (9th Cir. 2023) (quoting *Elonis v. United States*, 575 U.S. 723, 737 (2015)).

Finally, the government neither charged nor proved conspiracy to injure property. No evidence showed Archer had specific intent to injure any property.

The First Amendment requires proof of specific intent to prevent prosecutions that "chill, or deter, speech outside their boundaries." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023). If Archer faces prosecution, notwithstanding their peaceful conduct and advocacy of nonviolence, then every future demonstrator will be "unsure about the side of a line on which his speech falls." *Id.* Only a judgment of acquittal will create the "breathing room" the First Amendment demands. *Id.*

## ARGUMENT

### I. The First Amendment Prohibits Archer's Conviction.

The government agrees that the Court must "conduct an independent review of the record to determine whether the facts as found by the jury establish the core constitutional fact," *i.e.*, whether the "challenged speech is protected by the First Amendment." *United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002); Opp.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

13.[1] The First Amendment guarantees the "right of individuals to combine with other persons in pursuit of a common goal by lawful means." *Claiborne*, 458 U.S. at 933. It thus demands "precision of regulation" in any conspiracy charge. *Id.* at 916. The core constitutional fact that determines First Amendment protection is whether Archer had "specific intent" to further force, intimidation, or threat. *Id.* at 920. The Court must therefore independently review the evidence of Archer's specific intent.

Archer's conviction cannot survive such review. The government's theory of conspiracy lacks the required "precision." *Claiborne*, 458 U.S. at 916. It relies on Archer's protected speech and repeatedly attributes others' conduct to Archer, without any evidence that Archer specifically intended such conduct to occur. The evidence showed the opposite: Archer's repeated commitment to nonviolence.

---

[1] The government urges that independent review begins with consideration of the jury instructions. Opp. 13 (citing *United States v. Keyser*, 704 F.3d 631, 639 (9th Cir. 2012)). The jury instructions here omitted the requirement of specific intent and other First Amendment protections. ECF 430 at 10-15. Regardless, *Keyser* makes clear that "independent review" of constitutional facts occurs after the Court finds the instructions proper and the evidence sufficient. 704 F.3d at 639 n.1.

The government's further reliance on *United States v. Lacey* is wholly misplaced. No. 18-cr-422, 2024 WL 1765673, at *14-15 (D. Ariz. Apr. 23, 2024). *Lacey* did not discuss independent review, and the First Amendment did not protect the speech at issue—ads for prostitution. *Id.*



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

### A. Other Demonstrators' Conduct Cannot Be Imputed to Archer.

Supreme Court and Ninth Circuit precedent impose restrictions on conspiracy prosecutions for expressive conduct. ECF 429 ("Mot.") 14-19. "[M]ere association" with a group, even one "engaged in violence or threats of violence," is an "insufficient predicate for liability" absent "specific intent to further an unlawful aim." *Claiborne*, 458 U.S. at 925-26. Under § 372, that unlawful aim must be the "crucial element separating legal innocence from wrongful conduct," *i.e.*, "force, intimidation, or threat." *Ehmer*, 87 F.4th at 1120. When proving specific intent, the government cannot rely entirely on "evidence of expressive association," because it would "impermissibly burden[] the right to engage in purely expressive activity and association." *Santopietro v. Howell*, 73 F.4th 1016, 1026-28 (9th Cir. 2023).[2]

The government's theory violates those restrictions many times over. It relies entirely on Archer's "expressive association." *Santopietro*, 73 F.4th at 1026-28. It invokes Archer's "Facebook post," unplanned efforts at "organizing" other demonstrators, and what Archer "stat[ed]" and "yell[ed]" at the south gate. Opp. 5-7. Those actions are all protected expression. Even the decision to link arms, face

---

[2] *Wisconsin v. Mitchell* permits the government to use statements as proof of intent to commit separate crimes. 508 U.S. 476, 489 (1993). A bigoted statement can thus provide evidence of intent to commit a hate crime. *Id.* But when the government charges demonstrators with conspiring, it must have more than "evidence of expressive association," *Santopietro*, 73 F.4th at 1026, because the First Amendment explicitly protects the "right of individuals to combine," *Claiborne*, 458 U.S. at 933.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

backwards, and stand in front of the south gate was expressive. Linked arms communicated unified opposition to ICE's conduct; facing backwards expressed the peaceful nature of that opposition. Vol. VI Tr. 1657:16-20 (ECF 431-6). Such expression is protected unless "directed to inciting" and "likely to incite" "imminent lawless action." *Claiborne*, 458 U.S. at 928; *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); Mot. 9-10. The government never explains why a conviction for those activities does not "burden[] the right to engage in purely expressive activity and association." *Santopietro*, 73 F.4th at 1028. It does not address *Santopietro* at all.

The government also seeks to hold Archer liable for "mere association" with others, absent any evidence of "specific intent to further" force, intimidation, or threat. *Contra Claiborne*, 458 U.S. at 925-26. It relies on statements it admits "could not be attributed to any one person" and "events at the red van" in which Archer concededly did not participate. Opp. 8-9. Nothing showed Archer specifically intended that conduct. Instead, the government relies on Archer's continued association with the demonstrators who engaged in it. *Id.* at 20. But *Claiborne* and *Santopietro* forbid that precise inference.

The government attempts to distinguish *Claiborne* on its facts. But *Claiborne* was not a case where boycotters "stood across the street" and "watched." Opp. 17. There was "no question that acts of violence occurred." *Claiborne*, 458 U.S. at 916. Evers, the boycott's leader, later referred to the "possibility that necks would be broken" and that the sheriff could not protect "boycott violators at night." *Id.* at 927. "Black Hats" or "store watchers" kept a list of "persons who violated the boycott," causing "apprehension in others." *Id.* at 903-04, 925. The court below found an



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

atmosphere of "sheer fear" intended to "force[] and compel[]" others against their "personal wills." *Id.* at 894-95. But the Supreme Court held neither Evers nor the Black Hats could be held *civilly* liable for conspiracy absent evidence that they incited, "authorized, ratified, or directly threatened acts of violence." *Id.* at 927, 929. That "violence occurred" or "contributed to the success of the boycott" did not taint the "entire collective effort." *Id.* at 933. If references to "broken" necks, following actual violence, do not incite or threaten violence, then Archer's instruction to link arms surely does not.

The government cannot compensate for its lack of evidence by urging that six defendants "pled guilty, admitting that there was indeed a conspiracy." Opp. 17. It is well established that a "plea may not be admitted as substantive evidence of the defendant's guilt." *United States v. Solomon*, 795 F.2d 747, 748-49 (9th Cir. 1986); *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). The government agrees it could not use the "admissions made by Lang." ECF 446 at 36. There is no excuse for attempting to do so after trial. Not one codefendant who pled cooperated and testified at trial to the existence of a conspiracy. The government's reliance on inadmissible pleas underscores its lack of evidence of Archer's intent and, if permitted, would violate the Sixth Amendment's Confrontation Clause.

The breadth of the government's theory compounds the First Amendment violation. The First Amendment prohibits restrictions that have a "chilling effect" by causing "self-censorship" of protected speech. *Counterman*, 600 U.S. at 75. The government described the conspiracy as more than "a hundred-person thing." Vol. VII Tr. 1955:8-9. That it later charged just "9 individuals," Opp. 17, is irrelevant. A



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

theory of conspiracy that encompasses over 100 protestors, regardless of their specific intent, does not show "precision of regulation." *Claiborne*, 458 U.S. at 916. It defies *Claiborne* and *Santopietro*. It cannot be sustained.

**B. The Government Failed to Prove the Intent Required by § 372.**

The government's evidence regarding Archer failed to show § 372's "crucial element," intent to use "force, intimidation, or threat." *Ehmer*, 87 F.4th at 1120.

**1. The Government Has Not Proved Intent to Use "Force."**

The evidence proved, again and again, that Archer opposed use of force. Archer repeatedly told other demonstrators not to "join the line" if they could not "take a punch without throwing one." Vol. VI Tr. 1751:1-8; *id.* 1662:12-20; Opp. 22. Archer doubly emphasized their commitment to nonviolence by linking arms with others and turning their back to officers. Mot. 11. The Ninth Circuit has described similar conduct as "peaceful." *Headwaters*, 276 F.3d at 1127; Mot. 10-11. Archer's social media post committed only to "WAIT OUT ICE." GX77.

The government concedes Archer's conduct at the white bus "was not violent and there was no force." Opp. 6. But it asserts that, at the south gate, Archer and others used "their collective force to push and push back against agents." Opp. 7. That argument contradicts the Court's jury instructions, which stated that "merely resisting" ICE's aggression does not "constitute 'force.'" ECF 361 at 21. Under any other standard, ICE agents could create the very crime the government prosecuted by initiating force and faulting demonstrators for "push[ing] back." Opp. 7.

The government urges that "the linking of arms alone is not enough," and demonstrators additionally used the "tactic" of moving "behind others in the chain



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

to force back the officers." ECF 446 at 31-32; *id.* at 16. But the evidence it cites occurred at the red van, not the south gate. *Id.* at 16 (citing GX53). Archer did not use that "tactic"—which explains why ICE officers' pushing knocked them to the ground. Vol. II Tr. 505:4-12, 512:6-10 (ECF 431-2); GX25.

The government next recycles arguments that Archer previously rebutted. It analogizes demonstrators' linked arms to a "rugby scrum," ECF 446 at 11, ignoring that "no rugby team lines up backwards," Mot. 12. And it accuses Archer of attempting to "pressure federal agents to release the detainees," Opp. 20, ignoring that protest does not "lose its protected character . . . simply because it may . . . coerce [others] into action," Mot. 12 (quoting *Claiborne*, 458 U.S. at 910).

Finally, the government invokes a voice memo where Archer stated that demonstrators "made it so [ICE officers] had to deploy violence." Opp. 9-10. But that argument conflates *officers'* violence with force by demonstrators. "Even passive resistance [by demonstrators] may support the use of some degree of governmental force if necessary to attain compliance." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1153 (9th Cir. 2022). Officers' use of such force does not transform "nonviolent" protest into violence. *Id.* Otherwise, the government would have discretion over whether *any* protest is nonviolent. Having failed to prove any intention to use force, the government cannot impute officers' violence to Archer.

**2. Archer Had No Intent to Make Any "Threat."**

The First Amendment limits any prosecutions to "true threats" that convey a serious intention to "'commit an act of unlawful violence.'" *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The government agrees



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

that it must prove both the speaker's subjective intent to threaten and that a reasonable person would interpret the threat as a "serious expression of intent to harm." ECF 361 at 21; Opp. 18-19; *Counterman*, 600 U.S. at 79.

The government identifies no "true threat," much less by Archer. All agree Archer demanded that other demonstrators commit to nonviolence. Mot. 14; Opp. 22. Nor can the government rely on statements that "could not be attributed to any one person." Opp. 8. The government offers no proof that Archer was contemporaneously *aware* of those statements, much less that they reflect Archer's intent. Nor does asking "are you scared" convey a serious intention to commit imminent violence, particularly given that demonstrators did not follow officers inside the south gate. *See United States v. Bagdasarian*, 652 F.3d 1113, 1116-17 (9th Cir. 2011) ("he will have a 50 cal in the head soon" not a true threat); *see also Claiborne*, 458 U.S. at 927 ("necks would be broken"); *Hess v. Indiana*, 414 U.S. 105, 107-08 (1973) ("We'll take the fucking street again").

Finally, Ninth Circuit law prohibits the government from treating "profanities" and "hostile language" as threats. Opp. 10, 20. The First Amendment protects "profanity directed at police." Mot. 13 (quoting *Gulliford v. Pierce Cnty.*, 136 F.3d 1345, 1349 (9th Cir. 1998)).

**3. Archer Had No Intent to Use "Intimidation."**

The Court directed the parties to "focus on the term 'intimidation.'" ECF 445 at 7. The First Amendment treats intimidation and "true threats" interchangeably, prohibiting prosecution unless the defendant acts with the "intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360 (holding cross-



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

burning cannot be presumed to intimidate); Opp. 18. Broadly speaking, threats are words that signal a serious intention to engage in violence, whereas intimidation is *non-verbal* conduct, like cross-burning, that has the same effect. *Black*, 538 U.S. at 360. In other criminal contexts, the Ninth Circuit has defined intimidation as "instilling fear of injury." *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016); *see also United States v. McCranie*, 889 F.3d 677, 680 (10th Cir. 2018) ("intimidation requires an objectively reasonable fear of bodily harm"). Large crowds, by themselves, cannot be deemed "inherently dangerous" or intimidating. *Cox v. Louisiana*, 379 U.S. 536, 549-50 (1965).

The same evidence that shows Archer did not intend to threaten also establishes their lack of intent to intimidate. One who encourages nonviolence and acts peacefully does not intend to instill fear of bodily harm. Mot. 14. The government requested and obtained an instruction that an "actor must intend their . . . conduct to intimidate." ECF 361 at 21; ECF 290 at 24 ("intent of placing victim(s) in fear of bodily harm or death"). It provided no such proof for Archer.

The government urges that agents felt "intimidated and threatened." Opp. 21. Putting aside that agents' contemporaneous laughter and taunting show otherwise, Mot. 4-5, the First Amendment demands proof of Archer's subjective intent, not officers' reaction, *Black*, 538 U.S. at 360. "[E]xcessive reliance on the reaction of recipients would endanger First Amendment values." *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 196 (2d Cir. 2001). Law enforcement officers in particular cannot overreact to "aggressive gestures" such as "clenching" fists and "sticking out" chests. *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001);



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*contra* ECF 446 at 11 ("Mavalwalla and Hatfield bladed their bodies and balled their fists"). The First Amendment requires proof of a "culpable mental state" to reduce the "prospect of chilling fully protected expression." *Counterman*, 600 U.S. at 75.

The government seeks to prove intent from Archer's conduct "taken as a whole": "refusal to move," "linking arms with the crowd yelling 'fuck you,'" "moving throughout the area," "calling for others to join," "coordinating efforts to barricade exits,"[3] "planning for the risk of arrest," and engaging for "over 9 hours." Opp. 20. But all those actions are consistent with an intention to express vociferous opposition to and nonviolently resist ICE's actions in Spokane. Perhaps that is why the government argues Archer's actual intention was to "pressure federal agents to release the detainees." *Id*. Nothing about *that* intention requires fear of injury or bodily harm. Officers can be pressured by the disapproval of their community, the difficulty of coordinating with state and local government, or a simple need to allocate resources elsewhere. Not one piece of evidence showed that Archer intended to pressure officers specifically by placing them "in fear of bodily harm or death." *See Black*, 538 U.S. at 360. The government thus failed to prove intimidation.

### C. Application of § 372 to Archer Fails Intermediate Scrutiny.

Archer's motion explained that their prosecution failed intermediate scrutiny, because even a content-neutral law must burden no more speech than necessary to serve a significant governmental interest. Mot. 19-22 (citing *McCullen v. Coakley*,

---

[3] The evidence showed the opposite. Far from "coordinating efforts to barricade exits," Opp. 20, Archer *removed* objects others placed against the gates. Mot. 5.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

573 U.S. 464, 486 (2014)). The government nowhere denies it could have served its interest in protecting officers with "less intrusive tools." *McCullen*, 573 U.S. at 492. For more than a century, § 372 prosecutions were rare. The protest at the Cataldo building was not an unprecedented encounter between demonstrators and federal officers. What changed was the government's instruction that prosecutors pursue and *publicize* charges against protestors. Mot. 21 & n.4. The First Amendment prohibits the government from jumping to felony prosecution, which has the greatest chilling effect of any action the government can take. Mot. 22.

## II. The Government Failed to Prove § 372 Conspiracy.

Putting the First Amendment aside, the government failed to prove a § 372 conspiracy. It offered no evidence that Archer knowingly and intentionally joined an agreement to use "force, intimidation, or threat." *Ehmer*, 87 F.4th at 1120-21.

The government's opposition underscores the point. It urges Archer intended to "make sure that nobody was getting out that gate," ECF 446 at 32, that their "goal was to impede officers" and pressure them to "release the detainees." Opp. 17, 20. But § 372 requires the government to prove a "culpable mental state" with respect to the use of "force, intimidation, or threat." *Ehmer*, 87 F.4th at 1120. The government focuses on Archer's intent to achieve a *goal* because it lacks evidence of their intent to use the *means* required by § 372. That requires acquittal. Mot. 24.[4]

---

[4] The government repeatedly asserts that demonstrators sought to prevent officers from "being able to leave." Opp. 2, 8. But other statutes target the means of



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## III. Archer Cannot Be Convicted of § 372 Conspiracy to Injure Property.

Archer's conviction for conspiracy to injure property cannot stand.

### D. The Government Constructively Amended the Indictment.

The indictment specified the "Objects of the Conspiracy." ECF 1 at 2. They included "force," "threats," and "intimidation," but not injury to property. *Id.* The government urges that other parts of the indictment allege injury to property. Opp. 12. But when an indictment specifies a conspiracy's alleged "Objects," it is limited to the objects specified. *See Howard v. Daggett*, 526 F.2d 1388, 1390 (9th Cir. 1975) (even where "general allegation" would suffice, specification of details limits charge "brought by the grand jury"). In *Stirone v. United States*, the Supreme Court prohibited the government from charging one method of "interference with interstate commerce" and proving a different method at trial. 361 U.S. 212, 217 (1960). The same standard applies to a conspiracy's objects.

The government wrongly contends that defendants cannot raise constructive amendment on a Rule 29 motion. Opp. 12. It is well established that the "appropriate method to raise the claim of . . . constructive amendment is by moving . . . for judgment of acquittal." Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 516 (5th ed. 2026) (collecting cases). The government cannot retry Archer on a charge the grand jury never endorsed.

---

"obstruct[ing] or imped[ing] ingress or egress." 18 U.S.C. § 1752(a)(3). Section 372 does not. The government had to prove force, intimidation, or threat, not obstruction.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

### E. Archer Did Not Conspire to Injure Property.

No evidence even suggested that Archer intended to injure property. The white bus? Painted by a “rando” Archer never met. GX78; Vol. VI Tr. 1751:21-1752:3. The south gate? Undamaged. And regardless, Archer *removed* the objects placed against it. Vol. VI Tr. 1804:8-11; *id.* 1660:10-1661:23. Every other alleged injury? Archer was far away. Nothing showed Archer intended to injure property. And the First Amendment principles described above apply equally here, requiring proof of “specific intent to further” property injury. *Claiborne*, 458 U.S. at 925-26. There was none.

## CONCLUSION

“[T]his government was founded on protest.” *Newsom v. Trump*, 811 F. Supp. 3d 1086, 1107 n.21 (N.D. Cal. 2025) (quoting Hon. Thurgood Marshall, *Civil Rights & Race Relations: A Seminar* 18 (1966)). Much of that protest “risked arrest.” But it also moved the country toward justice. That is why the First Amendment demands “breathing room” for speech, even when it “comes at a cost.” *Counterman*, 600 U.S. at 76; *Snyder*, 562 U.S. at 460-61.

Archer continued one of our nation’s most important traditions. They should not be branded a felon and potentially deprived of their liberty as a result. If nonviolent protestors can face felony conviction for the actions of others that they never intended, a founding pillar of our democracy will be chilled. The First Amendment demands robust debate on even our most divisive and impassioned issues. Only acquittal will sustain the necessary breathing room.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

RESPECTFULLY SUBMITTED this 9th day of November, 2026.

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.

By: /s/ *Andrew M. Wagley*
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007

LOWELL & ASSOCIATES, PLLC

By: /s/ *Caleb Hayes-Deats*
Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)

*Attorneys for Defendant Jac Archer*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 9th day of November, 2026 in Washington, D.C.

By: *__/s/ Caleb Hayes-Deats__*
Caleb Hayes-Deats