Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007
ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
carl@ettermcmahon.com
awagley@ettermcmahon.com

Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
Phone: (202) 964-6110
chayes-deats@lowellandassociates.com
sstandley@lowellandassociates.com
areilly@lowellandassociates.com

*Attorneys for Defendant Jac Dalitso Archer*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAC DALITSO ARCHER, *et al.*,<br><br>Defendants. | No. 2:25-CR-00113-RLP-9<br><br>**DEFENDANT JAC DALITSO ARCHER'S REPLY IN SUPPORT OF RULE 33 MOTION FOR A NEW TRIAL**<br><br>HEARING DATE<br>November 24, 2026, at 10:00am PT |

# TABLE OF CONTENTS

INTRODUCTION .....1

ARGUMENT .....2

I. Evidentiary Rulings Denied the Right to Present a Complete Defense. .....2

A. Archer Was Barred from Explaining Key Evidence .....3

B. Archer Was Barred from Offering Evidence on Official Duties. .....5

C. The One-Sided Exclusion of "Politics" Prejudiced Archer. .....6

II. The Government Offered Improper Lay Opinion Testimony .....7

III. Jury Instructions Omitted Specific Intent, Incitement, and Association. .....9

IV. The Government's Closing Misstated the Law and Evidence. .....12

V. The Evidence Weighs Heavily Against the Verdict. .....15

VI. The Cumulative Errors and Weak Evidence Require a New Trial. .....16

CONCLUSION .....16



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

# TABLE OF AUTHORITIES

## Cases

*Boos v. Barry*,
485 U.S. 312 (1988)........ 6

*Boyde v. California*,
494 U.S. 370 (1990)........ 13

*Brandenburg v. Ohio*,
395 U.S. 444 (1969)........ 12

*Gulliford v. Pierce County*,
136 F.3d 1345 (9th Cir. 1998)........ 12

*Jones v. Davis*,
8 F.4th 1027 (9th Cir. 2021)........ 2

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
957 F.3d 943 (9th Cir. 2020)........ 2

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)........ 1, 9, 12

*Ocasio v. United States*,
578 U.S. 282 (2016)........ 9

*Rock v. Arkansas*,
483 U.S. 44 (1987)........ 7

*Santopietro v. Howell*,
73 F.4th 1016 (9th Cir. 2023)........ 9, 12

*United States v. Alston*,
974 F.2d 1206 (9th Cir. 1992)........ 1, 2, 16

*United States* v. *Bailey*,
444 U.S. 394 (1980)........ 11

*United States v. Ehmer*,
87 F.4th 1073 (9th Cir. 2023)........ 9



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*United States v. Evans*,
728 F.3d 953 (9th Cir. 2013) .......... 3, 5

*United States v. Feola*,
420 U.S. 671 (1975) .......... 9

*United States v. Figueroa-Lopez*,
125 F.3d 1241 (9th Cir. 1997) .......... 7, 8

*United States v. Frederick*,
78 F.3d 1370 (9th Cir. 1996) .......... 2, 16

*United States v. Gracidas-Ulibarry*,
231 F.3d 1188 (9th Cir. 2000) .......... 10, 11

*United States v. Jennings*,
438 F. Supp. 2d 637 (E.D. Va. 2006) .......... 7

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) .......... 15

*United States v. Kim*,
65 F.3d 123 (9th Cir. 1995) .......... 9

*United States v. Kvashuk*,
29 F.4th 1077 (9th Cir. 2022) .......... 2

*United States v. Leon-Reyes*,
177 F.3d 816 (9th Cir. 1999) .......... 15

*United States v. Lincoln*,
630 F.2d 1313 (8th Cir. 1980) .......... 1

*United States v. Pineda-Doval*,
614 F.3d 1019 (9th Cir. 2010) .......... 3

*United States v. Poocha*,
259 F.3d 1077 (9th Cir. 2001) .......... 14

*United States v. Preston*,
873 F.3d 829 (9th Cir. 2017) .......... 7



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*United States v. Rundo*,
990 F.3d 709 (9th Cir. 2021) ........ 12

*United States v. Smith-Baltiher*,
424 F.3d 913 (9th Cir. 2005) ........ 5

*United States v. Stever*,
603 F.3d 747 (9th Cir. 2010) ........ 3

*United States v. U.S. Gypsum Co.*,
438 U.S. 422 (1978) ........ 9, 10

*United States v. Velazquez*,
1 F.4th 1132 (9th Cir. 2021) ........ 13

*United States v. Vera*,
770 F.3d 1232 (9th Cir. 2014) ........ 9

*United States v. Weatherspoon*,
410 F.3d 1142 (9th Cir. 2005) ........ 13

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........ 12

**Statutes**

18 U.S.C. § 372 ........ *passim*

**Rules**

Fed. R. Evid. 403 ........ 4

Fed. R. Evid. 701 ........ 7



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## INTRODUCTION

Under 18 U.S.C. § 372, the government bore the burden of proving that Defendant Jac Archer conspired to use "force, intimidation, or threat." That was always going to be a tall order. The trial evidence showed Archer practiced nonviolence and beseeched others to do the same. Vol. VI Tr. 1751:1-8 (ECF 431-6); *id.* 1657:16-20. To obtain a conviction, the government relied on inadmissible evidence and improper argument, while excluding evidence that supported Archer. It invoked Archer's statement about "risking arrest," but suppressed DOJ policies that showed the risk Archer perceived had nothing to do with intent to use force or threats. It prohibited Archer from explaining their belief that ICE officers acted outside of the scope of their duties, but adduced improper lay opinion testimony from officers that demonstrators acted from a "mob mentality" and were "ready for riots." ECF 430 ("Mot.") at 7. It proposed jury instructions that omitted First Amendment protections and the requirement of specific intent. Finally, it urged in closing that the jury could convict Archer based on knowledge of other demonstrators' use of force, in direct disregard of the First Amendment. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982).

Each misstep prejudiced Archer and would individually require a retrial. Collectively, they show that "'a serious miscarriage of justice may have occurred.'" *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). Given the lack of evidence that Archer intended the use of force, threat, or intimidation, the Court should enter judgment of acquittal. ECF 429. But in all events, the Court should order a new trial



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

to redress the significant risk that Archer's conviction rested entirely on guilt by association and conduct protected by the First Amendment.

## ARGUMENT[1]

The Court should grant a new trial on three independent bases. First, prejudicial trial errors individually require a new trial. Mot. 3-19. Second, the evidence preponderates so strongly against the verdict that "a serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211; Mot. 19-21. Third, the cumulative effect of the trial errors merits a new trial, particularly in light of the weak evidence introduced at trial. *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); Mot. 21.[2]

### I. Evidentiary Rulings Denied the Right to Present a Complete Defense.

The Fifth and Sixth Amendments guarantee Archer the right to "put before a jury evidence that might influence the determination of guilt." *United States v. Kvashuk*, 29 F.4th 1077, 1090 (9th Cir. 2022) (quoting *Jones v. Davis*, 8 F.4th 1027, 1035 (9th Cir. 2021)). A deprivation of this right requires a new trial "unless the

---

[1] Exhibits referenced herein are primarily attached to the Declaration of Andrew Wagley, ECF 431. Counsel has filed a further declaration today with two additional transcript excerpts.

[2] The government does not respond to either of the latter two grounds for relief and therefore forfeits any response. *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020).



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

Government convinces [the Court] that the error was harmless beyond a reasonable doubt." *United States v. Stever*, 603 F.3d 747, 757 (9th Cir. 2010).

**A. Archer Was Barred from Explaining Key Evidence.**

"'[I]ncorrectly exclud[ing] evidence that was necessary for the defendant to refute a critical element of the prosecution's case'" violates "the constitutional right to present a defense." *United States v. Evans*, 728 F.3d 953, 966 (9th Cir. 2013) (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1033 (9th Cir. 2010)). The government had to prove Archer's specific intent to use force, threat, or intimidation. 18 U.S.C. § 372. To do so, it repeatedly invoked Archer's statements about "risking arrest." Mot. 4-5. But Archer had explanations for those statements that had nothing to do with an intention to use force, threat, or intimidation. Days before June 11, 2025, a DOJ official announced: "I don't care who you are—if you impede federal agents, you will be arrested and prosecuted." *Id.* 4-5 n.2. The same weekend, more than seventy people were arrested at protests of federal immigration policy. *Id.* But the Court barred Archer from referencing DOJ's public statements, excluding evidence "referenc[ing] the Department of Justice Policy [and] media statements regarding the Department of Justice's priorities[.]" ECF 297 at 5-6. That unduly limited Archer's ability to explain key evidence on the central issue of intent.

The government asserts that "[t]he federal government made zero arrests on June 11th." ECF 448 ("Opp.") at 3. But what matters is Archer's understanding at the time the statements about "risking arrest" were made. DOJ's public statements were relevant to that understanding. DOJ's *later* conduct on June 11 cannot undo the impression those statements created (particularly given its conduct *after* June 11).



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

The government next urges that Archer could have simply testified that they "believed improper arrests were sometimes made" "without delving into . . . the inner workings of DOJ." Opp. 4. But there is a world of difference between testifying to an unsupported, generalized belief, on the one hand, and to specific knowledge of a policy announced days earlier, on the other. Archer was barred from raising DOJ's threats of mass arrests at immigration protests mere days before the Spokane protest. Those were public statements, not "inner workings." Confronting DOJ with its own public statements is not prejudicial, and even if it were, such prejudice would not "substantially outweigh[ ]" the probative value of allowing Archer to explain that the perceived "risk" of arrest had nothing to do with any intention to further force, threat, or intimidation. Fed. R. Evid. 403. The Court's order barred Archer from using clear, recent, and public announcements by DOJ to explain the statement that the government repeatedly invoked as evidence of Archer's state of mind.[3] It is no response to

---

[3] Archer's testimony about "risking arrest" does not show, as the government contends, that they "knew" they were somehow "violating the law." Opp. 3. Archer testified that "all protests carry a risk of arrest," and that preparing for such risk was standard practice for organizers. Vol. VI Tr. 1742:15-25. The government concedes that Archer was told they were subject to arrest while sitting in front of the white bus, ECF 446 at 4, where the government admits conduct "was not violent and there was no force," ECF 447 at 6. Moreover, even assuming Archer knew they were violating the law in some way, that would still be a far cry from conspiring to use force, intimidation, or threats, which Archer denied. Vol. VI Tr. 1743:1-1745:16.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

argue that Archer was "not believed by the jury," Opp. 3, because the jury never heard the full story. Barring Archer from providing that story prejudiced Archer's defense and requires a new trial. *Evans*, 728 F.3d at 967.

**B. Archer Was Barred from Offering Evidence on Official Duties.**

Every theory of § 372 submitted to the jury required the government to prove that the officers were discharging their official duties. ECF 361 at 19. The Court nonetheless blocked Archer from "present[ing] evidence, or argu[ing] to the jury, that the law enforcement officers in this case were not engaged in the execution of their duties." ECF 297 at 7-8. "[B]arring a defendant from presenting all evidence in support of a cognizable defense, or from challenging an element of the crime, is structural error," *United States v. Smith-Baltiher*, 424 F.3d 913, 922 (9th Cir. 2005), so harmless error analysis does not apply. *Id.* A new trial is required.

The government initially characterizes the order as limited to "the exclusion of mention of Joswar Torres' deportation proceedings," Opp. 4, but then admits that the order barred Defendants from claiming "the officers were unlawfully engaged in their duties," *id.* The order's actual text was far broader than the government's cramped reading. ECF 297 at 7-8. It prohibited Defendants from "present[ing] evidence," not just argument, that "the law enforcement officers in this case were not engaged in the execution of their duties." *Id.*

The government urges that "there was mention throughout trial of what officers were doing." Opp. 4. But it cites nothing in the record to support this point. Even if it had, the order allowed only one side, the government, to present that evidence.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

**C. The One-Sided Exclusion of "Politics" Prejudiced Archer.**

The Court barred Archer from testifying about politics—their belief that Torres and Rodriguez were unlawfully detained—while permitting government witnesses to offer testimony that was no less political regarding their opinions about Torres's and Rodriguez's safety and demonstrators' penchant for violence. Mot. 7-8.

The Court's ban on "politics" was not confined to jury selection. *Contra* Opp. 5-6. On the third day of trial, the Court stated that its rulings "are and continue to be" that there were "not to be appeals to politics or broader policy issues," because such appeals "could be perceived by the jury as an improper request for nullification." Vol. III Tr. 845:24-846:3 (Ex. 19). On the fourth day, the Court warned Forral's counsel that any violation would be punished as contempt. Vol. IV Tr. 862-63 (Ex. 20). It also required that anything that "could appear to touch on politics," including "mens rea issues that could be perceived as political," be raised with the Court "beforehand." *Id.*

These restrictions disproportionately impacted Defendants. Protest is "classically political speech," *Boos v. Barry*, 485 U.S. 312, 318 (1988), so a rule against "politics" falls hardest on Defendants explaining their activities and intent. Because Archer's intent was a central issue of the case, the government cannot dismiss the excluded testimony that clarifies intent as mere "personal opinions." Opp. 6.

Nor can the need to avoid a "political circus," *id.*, justify a blanket ban on any testimony about politics. Any concerns about a circus could have been addressed by narrow restrictions on inflammatory statements. *See Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987) ("[R]estrictions of a defendant's right to testify may not be arbitrary or



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

disproportionate to the purposes they are designed to serve”). Such concerns could not justify a rule that bars relevant mens rea testimony absent advance clearance, under threat of contempt, and operates in practice as a bar on evidence contesting a central element of the charge.

## II. The Government Offered Improper Lay Opinion Testimony.

A lay witness may not offer an opinion “based on scientific, technical, or other specialized knowledge within the scope of Rule 702.” Fed. R. Evid. 701(c); *see United States v. Preston*, 873 F.3d 829, 836 (9th Cir. 2017). The Ninth Circuit has applied that rule to law enforcement witnesses testifying to their training and experience. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1245-46 (9th Cir. 1997). When Agents Hawks, Tomaso, McIntosh, Gonsalves, and Morgan relied on their specialized training and experience to speculate that demonstrators had a “mob mentality” and were likely to do “violent things,” they strayed far beyond proper lay opinion testimony and prejudiced Archer’s defense. *See* Mot. 9.

The government asserts that Agent Tomaso’s testimony “simply” described “what he saw happening[.]” Opp. 7. But Tomaso cannot see a “mob mentality,” much less demonstrators’ “purpose.” Mot. 9.[4] In *Figueroa-Lopez*, agents testified based on

---

[4] Defendants’ counsel objected on several occasions to irrelevant, speculative lay opinion testimony. *See, e.g.*, Vol. III Tr. 617:9-11 (counsel for Archer objecting to witness’s characterization that people were “bracing for somebody to move them,” which the Court sustained in part and instructed the witness not to “try to attribute what other people might have been trying to do”); *see also* Vol. II Tr. 522; Vol. V



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

their training and experience that a defendant's driving reflected the techniques of an experienced drug trafficker. 125 F.3d at 1245-46. The court held that the testimony drew on specialized knowledge and could come in only as expert opinion. *Id.* The same is true for officers who explain intent and motivation based on their training and experience in protest tactics.

The government describes Agent Tomaso's testimony as answering why "he did not feel it safe" to enter the crowd. Opp. 7. But the question asked was: "Based on your training and experience, is it safe for officers to enter into a crowd like this?" Vol. III Tr. 589:12-13 (ECF 431-3). His answer, that a "mob mentality… takes over" in large crowds, was psychological speculation about the crowd's state of mind. *Id.* 589:12-19. His testimony to the "purpose" of protesters' "technique" reflects the same type of inference. *Id.* 590:18-24. So did his testimony that, "through [his] training and experience," a protester's conduct showed "pre-assault indicators." *Id.* 591:23-592:5. And the government does not address similar testimony by other agents. Mot. 9.

The government argues that Archer was "free to cross-examine" officers, which cures any prejudice from their improper expert testimony. Opp. 7. But "cross-examination might be inhibited" where testimony about officers' "training and experience" lends them "unmerited credibility." *United States v. Vera*, 770 F.3d 1232,

---

Tr. 1417. Regardless, even absent objection, courts apply "Rule 33's 'interest of justice' standard, not the plain error standard that applies at the appellate stage." *United States v. Jennings*, 438 F. Supp. 2d 637, 641 n.10 (E.D. Va. 2006).



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

1241-42 (9th Cir. 2014). Officers' improper testimony regarding demonstrators' intent was key evidence. In a trial that otherwise suggested the lack of any intention by Archer to support force, intimidation, or threats, the prejudice from officers' improper expert testimony is acute. *Id.* at 1243-44.

## III. Jury Instructions Omitted Specific Intent, Incitement, and Association.

***Specific intent***. The law of conspiracy requires that each defendant "specifically intend[]" that some member of the conspiracy "commit each element of the substantive offense." *Ocasio v. United States*, 578 U.S. 282, 292 (2016); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978) (conspiracy requires both "the basic intent to agree" and "the more traditional intent to effectuate the object of the conspiracy"); *United States v. Feola*, 420 U.S. 671, 686 (1975) ("[T]he Government must prove at least the degree of criminal intent necessary for the substantive offense itself."). This is a separate requirement from the mens rea requirement for agreement, which is "knowingly." *See United States v. Kim*, 65 F.3d 123, 126 (9th Cir. 1995). "Force, intimidation, or threat" is "the crucial element separating legal innocence from wrongful conduct" under § 372, *United States v. Ehmer*, 87 F.4th 1073, 1120 (9th Cir. 2023), and must be specifically intended under *Ocasio*, 578 U.S. at 298. In a protest case, the First Amendment independently requires "a specific intent to further [the group's] illegal aims." *Claiborne*, 458 U.S. at 920; *Santopietro v. Howell*, 73 F.4th 1016, 1026 (9th Cir. 2023).

The government urges that the Ninth Circuit model jury instructions counsel against distinguishing between "specific" and "general intent." Opp. 10. But the First Amendment does not yield to model jury instructions. Where precedent requires a



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

finding of specific intent, the Court must instruct the jury regarding such intent to avoid conviction on an unconstitutional basis. Specifying and defining "specific intent" gives the precision that the First Amendment requires. But the Court declined to include such an instruction here. Vol. VI Tr. 1513:24-1514:1.

That omission prejudiced Archer. Specific intent means purpose. *Gypsum*, 438 U.S. at 445; *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc) (defining specific intent as "the purpose, i.e., conscious desire," to bring about the prohibited result). In closing, the government told the jury that "knowingly" is "the intent": "You're aware of the act … You're aware of pushing someone." Vol. VII Tr. 1868:15-20 (ECF 431-7). It urged conviction for co-conspirators' "reasonably foreseeable" acts, which it deemed "attributed" to Archer *regardless* of Archer's purpose if they "join[ed] the conspiracy knowing of its object." *Id.* 1868:10-14. That encouraged the jury to convict based on mere *knowledge* of force, threat, or intimidation by others. Such argument improperly conflates the mens rea required for agreement with the separate, necessary finding of a purpose to use force, threat, or intimidation, which is required to convict by both § 372 and the First Amendment.

The government argues the prosecutor was merely "reading through" Instruction 16. Opp. 9 n.1. But that compounds the problem. "Knowingly" was the only mental state defined for the jury. ECF 361 at 21. And the definition required only that the defendant "is aware of the act and does not act through ignorance, mistake, or accident." *Id.* That instruction does not supply the "heightened mental state" that "separates criminality itself from otherwise innocuous behavior." *United States* v.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

*Bailey*, 444 U.S. 394, 405 (1980). If the jury applied the definition of "knowingly" to the terms "intent" or "intend" in the instructions, a protester who was merely *aware* of linking arms with another could be convicted of criminal conspiracy.

The government concedes that the instructions here did not follow those of the district court in *Ehmer*, Opp. 9, which required that the defendant join the conspiracy "specifically intending to help accomplish" the unlawful objective, and defined specific intent as "a purpose or conscious desire," Mot. 18. The instructions here did neither. Instruction 16's requirement of "intent" for "threat" and "intimidation" does not cure the broader failure to instruct the jury of the need to find "specific intent" to further a conspiracy. *Contra* Opp. 9.

Archer did not personally make any threatening comments or engage in any intimidating conduct. The combination of the conspiracy instructions and the government's arguments, however, misled the jury to believe that it could convict Archer entirely based on knowledge of others' conduct. Because Archer's mens rea was contested throughout trial, the error was not harmless. *See Gracidas-Ulibarry*, 231 F.3d at 1198. Archer was tried on the wrong instructions regarding the mental state required for conspiracy. That requires a new trial.

***First Amendment.*** The First Amendment protects advocacy of force or violation of the law unless it is directed to and likely to produce imminent lawless action. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *United States v. Rundo*, 990 F.3d 709, 716 (9th Cir. 2021). "Peaceful speech, even speech that urges civil disobedience, is fully protected." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). Nor may liability rest on association alone. *Claiborne*, 458 U.S. at 919. The jury instructions



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

did not convey the First Amendment's limits. They said nothing about advocacy of civil disobedience, or about whether protected advocacy alone can show an agreement or intent. Because the government used Archer's calls to "thoughtfully risk arrest" and organizing activities as proof of agreement and intent, Vol. VII Tr. 1891:1-22, omission of the incitement standard and the standard protecting association was prejudicial error. The instruction need not be a "treatise," Opp. 11, but omitting an instruction that separates protected from unprotected speech is error, *see Gulliford v. Pierce County*, 136 F.3d 1345, 1350 (9th Cir. 1998).

The government urges that "[t]he required lawless action was defined" through the definitions of force, threat, and intimidation. Opp. 11. Those definitions track the First Amendment's true threats doctrine. They do not address incitement. The government also points to Instruction 14's statement that associating with conspirators does not make one a conspirator. *Id.* That language addresses passive association. It does not tell jurors that concerted expressive activity cannot support an inference of criminal conspiracy. *See Santopietro*, 73 F.4th at 1025-26.

Without instructions on incitement and association, the jury could not assess whether the First Amendment protected Archer's advocacy, organizing, and protest. The jury expressed confusion about the "difference between the legal definition of a conspiracy versus a person's First Amendment rights of assembly." Vol. VII Tr. 1840:20-25. The Court's lack of instruction on that issue requires a new trial.

## IV. The Government's Closing Misstated the Law and Evidence.

In a close case, uncorrected misstatements of law during closing warrant a new trial. *United States v. Velazquez*, 1 F.4th 1132, 1136, 1140 (9th Cir. 2021). Here,



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

the government redefined "property," misstated the meaning of "force," argued that profanity constituted threats and intimidation, equated knowledge with specific intent, and made inflammatory accusations. Mot. 15-19. These misstatements "materially affected the verdict," *Velazquez*, 1 F.4th at 1136, requiring a new trial.

The government first urges that the jury instructions cured any misstatements at argument. Opp. 12 (citing *Boyde v. California*, 494 U.S. 370, 384 (1990)). They did not. The instructions did not define property or intent, and they nowhere explained the requirements for the government's inflammatory accusation of hostage-taking. The government's uncorrected argument on these issues was "among the last things the jury heard before they began deliberations." *Velazquez*, 1 F.4th at 1140.

The government further claims it asked jurors to consider "the totality of the evidence." Mot. 15. But if generic statements about considering all evidence cured prejudicial arguments, no closing statement would ever require a new trial. *Cf. United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) (improper arguments not cured by "later generalized jury instruction reminding jurors that a lawyer's statements during closing argument do not constitute evidence").

Each argument was improper and prejudicial.

***Property***. The government does not defend the definition of "property" it advanced in closing: "stuff used by federal agents to do their job." Vol. VII Tr. 1958:14-21. Instead, it offers a new definition: items in officers' "possession or custody and control." Opp. 14. The government cannot resist a new trial based on a definition the jury never heard. Because the verdict sheet did not specify *which* property the jury believed demonstrators intended to injure, ECF 367 at 2, Archer's conviction may



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

rest on a bus or van that the jury believed *a contractor* possessed and controlled, *e.g.*, ECF 446 at 3 (noting GEO employee "would drive" white bus).

***Force***. The government urged the jury to convict demonstrators for "forcing" officers to use violence. Mot. 16-17; Vol. VII Tr. 1879:18-22. The government now contends that it "summarized the testimony." Opp. 15. But that is no response at all. Testimony that does not describe demonstrators' use of force cannot be "summarized" to argue that demonstrators used force.

***Threats and Intimidation***. Profane criticism of officers is protected speech. Mot. 17-18. Even "aggressive gestures" do not remove that protection. *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001). The government's closing repeatedly treated "profanity" as "threatening." Vol. VII Tr. 1879:5-9. Its opposition offers no defense of those arguments. Opp. 12-16. Nor can it defend against a new trial by urging that officers "felt threatened," *id.*, because what matters is Archer's intent, p. 9, *supra*.

***Intent***. The government's closing conflated acting "knowingly" with the "intent" required by § 372 and the First Amendment. *See* pp. 9-11, *supra*. The government's opposition underscores the prejudice by asserting that the "purpose of the conspiracy was to prevent the transport and force the release of the detainees, as Defendant testified they had seen others successfully accomplish in other cities." Opp. 16. Archer testified that ICE had "released" detainees in other cities so that they could "seek their legal counsel and make sure their case was taken care of." Vol. VI Tr. 1785:13-19. It had *nothing* to do with force, intimidation, or threat.



Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

***Hostage Taking***. The government accused protesters of conspiring to "hold people hostage inside a building." Vol. VII Tr. 1889:17-18; Mot. 18-19. It now defends that accusation as "not unreasonable" given the "evidence presented." Opp. 16. But the evidence showed officers "going in and out of the building," even leaving the front door "completely open" for "six hours." Vol. VI Tr. 1783:16-23. The government cannot bolster a weak case by accusing demonstrators of a completely different crime, particularly when it lacks any foundation in the evidence. *See United States v. Leon-Reyes,* 177 F.3d 816, 822 (9th Cir. 1999).

**V. The Evidence Weighs Heavily Against the Verdict.**

On a Rule 33 motion, the Court does not defer to the jury. It may "weigh the evidence" and "evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000). The evidence and testimony point decisively to acquittal. The government had the burden to prove that Archer, an advocate of nonviolence, had the purpose or conscious desire to use force, intimidation, or threat. *See* pp. 9-11, *supra*. It offered no such evidence. Instead, it offered improper opinion testimony from officers and misstated both law and fact.

The government responds only that the evidence does not show that "a serious miscarriage of justice occurred." Opp. 16. That misstates the standard, which requires only the possibility that a "miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211. It also fails to identify the evidence showing Archer's specific intent to use force, intimidation, or threat, much less address the possibility that the jury convicted without finding specific intent, based on knowledge alone.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## VI. The Cumulative Errors and Weak Evidence Require a New Trial.

Each error above is sufficient for this Court to order a retrial. Cumulatively, they compel it. The Court must consider "the overall effect of *all* the errors in the context of the evidence introduced at trial." *Frederick*, 78 F.3d at 1381 (emphasis added). Here, each error built on the last. Archer could not explain their statements based on policy and politics. Officers then supplied their own opinion testimony on Archer's meaning and demonstrators' motives. The instructions never told the jury that § 372 and the First Amendment require proof of a purpose to use force or threats, or that the First Amendment protects association and advocacy of civil disobedience. And the government's closing exploited gaps in the instructions to urge conviction based on Archer's knowledge of other demonstrators' conduct.

Due process requires a new trial where the government must prove Archer's specific intent and Archer has the opportunity to present their full defense.

## CONCLUSION

Since the founding, people willing to risk arrest have secured our most important rights. Archer continued this tradition. But they were convicted based on inadmissible evidence and improper argument, by a jury unequipped to distinguish protected association from criminal conspiracy. The Court should enter a judgment of acquittal, ECF 429, and further grant a new trial for the reasons explained above.



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

RESPECTFULLY SUBMITTED this 9th day of November, 2026.

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.

By: */s/ Andrew M. Wagley*
Carl J. Oreskovich, WSBA #12779
Andrew M. Wagley, WSBA #50007

LOWELL & ASSOCIATES, PLLC

By: */s/ Caleb Hayes-Deats*
Caleb Hayes-Deats (*pro hac vice*)
Schuyler Standley (*pro hac vice*)
Angela Reilly (*pro hac vice*)

*Attorneys for Defendant Archer*



LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
(202) 964-6110

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 9th day of November, 2026 in Washington, D.C.

By: */s/ Caleb Hayes-Deats*
Caleb Hayes-Deats